

1920 L Street, NW, Suite 835, Washington, DC 20036
(202) 629-3530 | sparacinopllc.com

June 16, 2025

**BY CM/ECF**

Honorable Jeannette A. Vargas
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 703
New York, NY, 10007-1312

RE:   *Troell, et al. v. Binance Holdings Ltd., et al.*, No. 1:24-cv-7136 (JAV)

Dear Judge Vargas:

The Supreme Court's decision in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. ----, 2025 WL 1583281 (June 5, 2025), does not support dismissal. That case—which analyzed the contours of criminal aiding and abetting—involved a different statute with a distinct legal standard applied to distinguishable facts. To the extent the criminal standard in *Smith & Wesson* and the civil standard in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), overlap, both support aiding and abetting liability here. And of course, *Smith & Wesson* says nothing about plaintiffs' conspiracy and primary liability claims.

*Smith & Wesson* involved the Protection of Lawful Commerce in Arms Act (PLCAA), enacted "to halt a flurry of lawsuits attempting to make gun manufacturers pay for the downstream harms resulting from misuse of their products." 2025 WL 1583281, at *9. PLCAA preempted all such suits, except where a manufacturer commits certain predicate violations—one of which is criminally aiding and abetting a federal gun crime pursuant to 18 U.S.C. § 2. In *Smith & Wesson*, the Court held that the gun manufacturers committed no such crime when they made lawful sales to wholesale distributors who resold guns to dealers, a "small minority" of whom then illegally sold them to straw purchasers or without background checks. *Id*. at *4. As in *Twitter*, the allegations against the manufacturers sounded in "passive nonfeasance," *i.e.*, failure to do more to prevent downstream misuse of products—which was not enough to constitute aiding and abetting "[a]bsent an 'independent duty to act.'" *Id.* at *6, 8.

That case is the polar opposite of this one. Unlike the gun manufacturers, who made lawful, routine sales to their distributors (who were themselves removed from downstream unlawful activity), defendants here actively broke many laws while knowingly enabling terrorist finance and were successfully prosecuted for doing so. As detailed in plaintiffs' opposition to the motions to dismiss, defendants coached bad actors (including terrorist financiers) about how to evade detection, deliberately sabotaged their own internal controls to facilitate criminal transactions, actively encouraged users to evade their geofencing restrictions using VPNs, violated established duties to identify and block unlawful transactions, refused to file required suspicious activity reports, courted high-risk customers like cryptocurrency mixers, and systematically lied to governments and regulators. This enabled tens of millions of dollars to flow directly to violent

terrorist organizations including Hamas, Hezbollah, PIJ, and the IRGC—and billions of dollars in benefits to Iran's Terrorist Sponsors.

Defendants' selective quotations of *Smith & Wesson* only demonstrate why they cannot escape liability here. Defendants assert that "the defendant must 'participate in' the alleged crime 'as in something that he wishes to bring about' through 'misfeasance rather than nonfeasance.'" ECF No. 106. The full quote, however, reads: "[A]iding and abetting ***usually*** requires misfeasance rather than nonfeasance. ***Absent an 'independent duty to act,'*** a person's 'failure[s],' 'omissions,' or 'inactions'—even if in some sense blameworthy—will rarely support aiding-and-abetting liability." 2025 WL 1583281, at *6 (emphasis added) (quoting *Twitter*, 598 U.S. at 489, 500). Here, of course, plaintiffs allege that defendants violated a litany of independent duties enshrined by statute and regulation to block terrorists' foreseeable use of the global financial system to commit further violence. Even had defendants' behavior only consisted of a series of failures or omissions—which is false—liability would still attach due to the independent duties to act. The present case is thus far different than *Smith & Wesson*, where "Mexico's prime examples, recall, are bans on bulk sales or sales from homes—permitted under federal law[.]" *Id.* at *8.

Moreover, unlike the PLCAA, which Congress enacted to broadly preempt liability against gun manufacturers by "halt[ing] a flurry of lawsuits attempting to make gun manufacturers pay," *id.* at *9, JASTA reflects Congress's repeated efforts to "provide civil litigants with the broadest possible basis" to seek relief from those who aid terrorists "directly or indirectly," JASTA § 2(b), Pub. L. No. 114-222, 130 Stat. 852 (2016). Indeed, Congress recently reaffirmed the "long-standing policy of the United States that civil lawsuits against those who support, aid and abet, and provide material support for international terrorism serve the national security interests of the United States by deterring the sponsorship of terrorism and by advancing interests of justice, transparency, and accountability." Sudan Claims Resolution Act, Pub. L. No. 116-260, div. FF, tit. XVII, § 1706(a)(1), 134 Stat. 3294 (2020).

*Smith & Wesson* also applied a more demanding legal standard than the one that governs here. The predicate offense in *Smith & Wesson* was *criminal* aiding and abetting under 18 U.S.C. § 2, and so *Smith & Wesson* applied "principles of aiding and abetting from the criminal law," 2025 WL 1583281, at *4, which requires a showing of intent, *see Smith & Wesson* Argument Tr. 29:14-16 (Justice Gorsuch: "aiding and abetting in the criminal arena generally requires intent"). But JASTA does not always require intentional participation in a criminal act. Instead, the statute applies to anybody who "*knowingly* provid[es] substantial assistance," 18 U.S.C. § 2333(d)(2) (emphasis added), and Congress explained that this includes those who "*knowingly or recklessly* contribute material support or resources, directly or indirectly, to persons or organizations that pose a significant risk of committing acts of terrorism that threaten the security of nationals of the United States," JASTA § 2(a)(6) (emphasis added). Thus, JASTA, as interpreted by *Twitter*, eschews an intent standard and instead employs the *Halberstam* sliding-scale analysis "balancing … the nature and amount of assistance on the one hand and the defendant's scienter on the other." *Twitter*, 598 U.S. at 492-93. Indeed, *Twitter* acknowledged "daylight between the rules for aiding and abetting in criminal and tort law," *id.* at 493, and *Smith & Wesson* does not collapse that long-established distinction. On the contrary, the "canonical" case *Smith & Wesson* cites for the criminal standard explains that "a civil case" requires only that the tort be "a natural consequence of [the defendant's] original act," *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (Hand, J.), a holding echoed both in *Halberstam* and in *Twitter*'s admonition that when "the provider of routine services does so in an unusual way," that "could constitute aiding and abetting a foreseeable terror

attack," 598 U.S. at 502. *Smith & Wesson's* interpretation of PLCAA's criminal standard thus does not displace *Twitter*'s interpretation of JASTA's civil standard, which controls here. Under that standard, defendants' motion should be denied because terrorist attacks are a natural consequence of knowingly and culpably enabling millions of dollars in illicit terrorist finance.

   To be sure, the civil and criminal standards articulated in *Twitter* and *Smith & Wesson* overlap in some particulars—but for the reasons explained in the opposition to the motions to dismiss, defendants are liable under both standards. For example, both emphasize that "aiding and abetting is most commonly 'a rule of secondary liability for *specific* wrongful acts.'" *Smith & Wesson*, 2025 WL 1583281, at *6 (quoting *Twitter*, 598 U.S. at 494) (emphasis in *Smith & Wesson*). But neither case supports—and *Twitter* expressly rejects—any requirement for a "direct nexus between the defendant's acts and the tort." *Twitter*, 498 U.S. at 506. Plaintiffs have already explained how defendants' misconduct enabled the attacks that injured them. In addition, both *Smith & Wesson* and *Twitter* confirm that while "aiding and abetting is most commonly liability for specific wrongful acts," "broader liability for a category of misconduct is possible if a wrongdoer's participation is correspondingly 'pervasive, systemic, and culpable,'" 2025 WL 1583281, at *6 (quoting *Twitter*, 598 U.S. at 502)—which is exactly what the plaintiffs allege here based on the duration, value, and blameworthiness of defendants' assistance.

   Defendants' motions to dismiss should accordingly be denied.

Sincerely,

*/s/ Matthew J. Fisher*

| | |
|---|---|
| Vincent Levy | Matthew J. Fisher |
| Ian Miller | Ryan R. Sparacino |
| HOLWELL SHUSTER & GOLDBERG LLP | Geoffrey P. Eaton |
| | Tejinder Singh |
| | Adam J. Goldstein |
| | SPARACINO PLLC |

*Counsel for Plaintiffs*