**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| JOCELYN TROELL, individually and for the estate of STEPHEN TROLL, et al., |
| *Plaintiffs,* |
| v. |
| BINANCE HOLDINGS LIMITED, et al., |
| *Defendants.* |

Case No.1:24-cv-07136 (JAV)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**MR. CHANGPENG ZHAO'S MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................3

I.     The FAC Fails Under Rule 8(a)(2) ....................................................................3

II.    The Court Lacks Personal Jurisdiction Over Mr. Zhao .....................................3

     A.     Proper Service Neither Occurred Nor Is Authorized ...............................3

     B.     The Court Lacks Personal Jurisdiction Over Mr. Zhao ...........................5

           1.     Personal Jurisdiction Cannot Rest on Mr. Zhao's Personal Contacts with the Forum ...............................................................6

           2.     Personal Jurisdiction Over Mr. Zhao Cannot Rest on Alter Ego Doctrine...............................................................................9

           3.     Personal Jurisdiction Over Mr. Zhao Cannot Rest on Conspiracy Doctrine..........................................................................13

III.    The FAC Does Not State a Claim for Aiding-and-Abetting (Count One) ........14

     A.     The FAC Does Not Plead Intentional Participation in Terrorist Acts .................15

     B.     The Alleged Nexus with Attacks Is Too Remote to Be Cognizable.....................17

     C.     Regulatory Failings Do Not Create Aiding-and-Abetting Liability .....................20

IV.    The FAC Does Not State Claims for Conspiracy (Counts Two, Three, and Four)...........23

V.    The FAC Does Not State a Claims for Primary Liability (Count Five) ...........................25

CONCLUSION.......................................................................................................................27

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aiken v. Interglobal Mergers & Acquisitions*,
    No. 05 Civ. 5503, 2006 WL 1878323 (S.D.N.Y. July 5, 2006) .............................................21

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)..........................................................................................................................22

*Arizona v. United States*,
    567 U.S. 387 (2012)...................................................................................................................22, 23

*Armstrong v. Am. Pallet Leasing Inc.*,
    678 F. Supp. 2d 827 (N.D. Iowa 2009)...............................................................................21

*Averbach v. Cairo Amman Bank*,
    19-cv-0004, 2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022) ...................................................26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................16, 24

*Bernhardt v. Islamic Republic of Iran*,
    47 F.4th 856 (D.C. Cir. 2022).............................................................................................24, 25

*Bernhardt v. Islamic Republic of Iran*,
    No. 18-2739, 2020 WL 6743066 (D.D.C. Nov. 16, 2020) ...................................................9, 24

*Bittner v. United States*,
    598 U.S. 85 (2023)..............................................................................................................................4

*Bonita Fabrics, Inc. v. Anand*,
    No. 12 Misc. 408, 2014 WL 406837 (S.D.N.Y. Jan.29, 2014)...............................................6

*Budhani v. Monster Energy Co.*,
    No. 20-CV-1409, 2021 WL 5761902 (S.D.N.Y. Dec. 3, 2021) .............................................13

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018)......................................................................................................13, 14

*Convergen Energy LLC v. Brooks*,
    No. 20-cv-3746, 2020 WL 4038353 (S.D.N.Y. July 17, 2020)................................................4

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).........................................................................................................................5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021).................................................................................................5

*Freeman v. HSBC Holdings PLC*,
    57 F.4th 66 (2d Cir. 2023) ...................................................................................23

*Fuld v. Palestine Liberation Org.*,
    No. 24-20, No. 24-151, 2025 WL 1716140 (U.S. June 20, 2025).....................6, 7

*George v. McDonough*,
    596 U.S. 740 (2022)..............................................................................................5

*Glob. Gaming Philippines, LLC v. Razon*,
    No. 21 Civ. 2655, 2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) ....................10, 11

*Great Lakes Overseas, Inc. v. Wah Kwong Shipping Grp., Ltd.*,
    990 F.2d 990 (7th Cir. 1993) ...............................................................................11

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) .......................................................................19, 24

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)....................................................................................1

*Hofschutle v. SunTrust Banks, Inc.*,
    No. 1:20-cv-01676, 2021 WL 5230732 (N.D. Ga. Mar. 4, 2021) ........................22

*Holder v. Humanitarian L. Project*,
    561 U.S. 1 (2010).................................................................................................26

*Honickman v. BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ...................................................................................26

*Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*,
    No. 5:17-cv-00052, 2020 WL 5258313 (N.D.N.Y. Sept. 3, 2020).........................7

*In re Agape Litig.*,
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) .................................................................21

*In re Bass*,
    No. 10-01101, 2011 WL 722384 (Bankr. W.D. Tex. Feb. 11, 2011).....................11

*In re Platinum & Palladium Antitrust Litig.*,
    61 F.4th 242 (2d Cir. 2023) ...............................................................10, 11, 12, 13

*In re Terrorist Attacks on Sept. 11, 2001*,
    538 F.3d 71 (2d Cir. 2008)................................................................................8, 9

*In re Terrorist Attacks on Sept. 11, 2001*,
   718 F. Supp. 2d 456 (S.D.N.Y. 2010).........................................................................9

*In re Tyson*,
   433 B.R. 68 (S.D.N.Y. 2010)...................................................................................11

*James v. Heritage Valley Fed. Credit Union*,
   197 F. App'x 102 (3d Cir. 2006) ............................................................................22

*Jeffries v. Barr*,
   965 F.3d 843 (D.C. Cir. 2020) ..................................................................................3

*Kaplan v. Lebanese Canadian Bank, SAL*,
   405 F. Supp. 3d 525 (S.D.N.Y. 2019).....................................................................27

*Kelley. v. BMO Harris Bank N.A.*,
   No. 19-cv-1756, 2022 WL 4547022 (D. Minn. Sept. 29, 2022)..............................22

*Kemper v. Deutsche Bank AG*,
   911 F.3d 383 (7th Cir. 2018) ..................................................................................24

*Kiobel v. Royal Dutch Petroleum Co.*,
   569 U.S. 108 (2013).................................................................................................23

*Langer v. Paysafe Partners LP*,
   CV 19-4388, 2020 WL 7684885 (E.D.N.Y. May 22, 2020) .....................................7

*Levin v. Bank of New York Mellon*,
   No. 09 CV 5900, 2013 WL 5312502 (S.D.N.Y. Sept. 23, 2013) ............................22

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012).........................................................................................5

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018)........................................................................1, 20, 25

*Marlin v. Moody Nat. Bank, N.A.*,
   No. H-04-4443, 2006 WL 2382325 (S.D. Tex. Aug. 16, 2006).............................21

*Marnavi S.P.A. v. Keehan*,
   900 F. Supp. 2d 377 (D. Del. 2012).........................................................................12

*McIlwee v. ADM Indus., Inc.*,
   17 F.3d 222 (7th Cir. 1994) .......................................................................................7

*O'Sullivan v. Deutsche Bank AG*,
   No. 17 CV 8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019).......................24, 25

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987) ...................................................................................................3

*Raanan v. Binance Holdings Ltd.*,
    No. 24-cv-697, 2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) ..................................22

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ...................................................................................................3

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988) .........................................................................................3

*Sanchez-Espinoza v. Reagan*,
    770 F.2d 202 (D.C. Cir. 1985) ..................................................................................22

*Santos v. State Farm Fire & Cas. Co.*,
    902 F.2d 1092 (2d Cir. 1990) .....................................................................................4

*Schrier v. Qatar Islamic Bank*,
    632 F. Supp. 3d 1335 (S.D. Fla. 2022) ...................................................................4, 6

*Siegel v. HSBC Holdings, PLC*,
    No. 17cv6593, 2018 WL 501610 (S.D.N.Y. Jan. 19, 2018) .......................................9

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    No. 23-1141, 2025 WL 1583281 (U.S. June 5, 2025) ..................................... *passim*

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) .................................................................................................23

*Soundkillers LLC v. Young Money Ent., LLC*,
    No. 14cv7980, 2016 WL 4990257 (S.D.N.Y. Aug. 2, 2016) .......................................6

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ....................................................................................... *passim*

*United States v. Stewart*,
    590 F.3d 93 (2d Cir. 2009) .......................................................................................26

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...............................................................................................5, 8

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) .........................................................................4, 7, 8, 9

*Weiss v. Nat'l Westminster Bank*,
    993 F.3d 144 (2d Cir. 2021) .....................................................................................26

*Weiss v. Nat'l Westminster Bank PLC*,
  381 F. Supp. 3d 223 (E.D.N.Y. 2019) ...................................................................20

*Wells Fargo Bank, N.A. v. Konover*,
  No. 3:05-CV-1924, 2011 WL 1225986 (D. Conn. Mar. 28, 2011) ........................12

*Zapata v. HSBC Holdings PLC*,
  414 F. Supp. 3d 342 (E.D.N.Y. 2019) ...................................................................27

*Zapata v. HSBC Holdings PLC*,
  No. 1:16-CV-030, 2017 WL 6939209 (S.D. Tex. Sept. 14, 2017) .......................7, 9

*Zobay v. MTN Grp. Ltd.*,
  695 F. Supp. 3d 301 (E.D.N.Y. 2023) ...................................................................24

**Statutes**

18 U.S.C. §2331 ......................................................................................................26

18 U.S.C. §2333 .................................................................................................. *passim*

18 U.S.C. §2334 ........................................................................................................4

18 U.S.C. §2339A ....................................................................................................26

18 U.S.C. §2339B .................................................................................1, 20, 24, 26

31 U.S.C. §5318 ......................................................................................................21

31 U.S.C. §5322 ......................................................................................................20

31 U.S.C. §5330 ......................................................................................................21

**Rules**

Fed. R. Civ. P. 4 .................................................................................................4, 6

Fed. R. Civ. P. 8 ............................................................................................3, 9, 17

Fed. R. Civ. P. 12 ....................................................................................................3

N.Y.C.P.L.R. §308 ...................................................................................................5

N.Y.C.P.L.R. §318 ...................................................................................................5

**Other Authorities**

31 C.F.R. §1022.210 ...............................................................................................21

4A Charles A. Wright, et al., Fed. Prac. & Proc. §1097 (4th ed.) ....................................................4

*United States v. Binance Holdings Ltd*,
    No. 2:23-cr-00178 (W.D. Wash. Nov. 14, 2023), ECF.1 .......................................................21

*United States v. Binance Holdings, Ltd.*,
    No. 2:23-cr-00178 (W.D. Wash. Nov. 21, 2023), ECF.23 ........................................................2

*United States v. Zhao*,
    No. 2:23-cr-00179 (W.D. Wash. Nov. 14, 2023), ECF.1 .......................................................21

## PRELIMINARY STATEMENT

This piggyback lawsuit improperly seeks to convert alleged banking-law violations—which have been fully resolved with the federal government—into treble damages under the Anti-Terrorism Act (ATA), 18 U.S.C. §2333, as amended by the Justice Against Sponsors of Terrorism Act (JASTA), Pub. L. No. 114-222, 130 Stat. 851 (2016). Changpeng Zhao is a Canadian entrepreneur who cofounded Binance Holdings, Ltd. (BHL), which operates an international virtual currency exchange. The operative pleading (FAC) alleges that the exchange grew rapidly and now hosts more than 100 million users. ¶26.[1]

The U.S. government saw in this novel and highly successful business a chance to extend U.S. policies promoting banking transparency into emerging international cryptocurrency markets. The government insisted that Mr. Zhao should have registered BHL as a "money service business" under the Bank Secrecy Act (BSA) and implemented anti-money laundering (AML) and Know Your Customer (KYC) systems to curtail user privacy. The outcome of this—in addition to international-sanctions enforcement by the Office of Foreign Assets Control (OFAC) against BHL—was sizeable settlements and plea deals. The government, however, never charged anyone involved with "knowingly provid[ing] material support or resources to a foreign terrorist organization," 18 U.S.C. §2339B(a)(1), and never even alleged that Mr. Zhao provided assistance to a foreign terrorist organization (FTO) with "knowledge of [an] organization's connection to terrorism." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 330 (2d Cir. 2018). Moreover, the government

---

[1] Absent contrary context, paragraph citations refer to FAC paragraphs. This memorandum takes well-pleaded allegations as true but accepts neither conclusory allegations nor legal conclusions and admits nothing for purposes beyond the present motion. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

acknowledged that, under Mr. Zhao's leadership, BHL had "taken significant steps to remediate its AML and sanctions compliance programs."[2]

The merits of the government's theories are not at issue. The question instead is whether alleged regulatory failings under statutes enforceable only by the government can create strict liability under the ATA for virtually every terrorist attack in the Middle East since 2017. The answer is no. The ATA creates claims for victims of "international terrorism," and JASTA added claims for secondary liability (aiding and abetting and conspiracy). 18 U.S.C. §§ 2333(a) and (d)(2). The legal standard governing the FAC's principal claim (for abetting) requires well-pleaded allegations that the defendant "knowingly provided substantial assistance" to "an act of international terrorism." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 495 (2023). Regulatory failings fall well short of that. And that is particularly clear where Plaintiffs do not (and could not) allege that any defendant "*intended* to aid terrorism," ECF.69 at 21, and where the sprawling FAC alleges substantial assistance to so many different terrorist groups that Plaintiffs' briefing must reference them in illustrative lists. *See* ECF.69 at 1. The Supreme Court recently rejected an effort to hold gun manufacturers liable for "some number of unidentified rogue gun dealers in making a host of firearms sales in violation of various legal bars," *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, No. 23-1141, 2025 WL 1583281, at *7 (U.S. June 5, 2025), and this case is not materially different.

Mr. Zhao condemns terrorism in all its forms and expresses heartfelt condolences to all its victims. But this suit is misguided. Mr. Zhao's status as founder and chief officer of a foreign company does not subject him to jurisdiction in New York, and Plaintiffs are mistaken in their

---

[2] *See, e.g.*, Plea Agreement at ¶8(g), *United States v. Binance Holdings, Ltd.*, No. 2:23-cr-00178, (W.D. Wash. Nov. 21, 2023), ECF.23.

effort to transform BSA claims settled with the government into ATA claims belonging to private persons. All claims should be dismissed.[3]

## ARGUMENT

### I.    The FAC Fails Under Rule 8(a)(2)

BHL demonstrated that the FAC fails to provide a short, plain statement of claims as Rule 8(a)(2) mandates. ECF.35 at 10-12. Plaintiffs are incorrect in responding that the FAC "provides adequate notice to Defendants of the nature of the claims" and "enables them to prepare a response." ECF.69 at 28. The FAC improperly compels the defendants and the Court "to select the relevant material from a mass of verbiage," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted), "like pigs, hunting for truffles" and doing Plaintiffs' "lawyering for them," *Jeffries v. Barr*, 965 F.3d 843, 861 (D.C. Cir. 2020) (citation omitted). This memorandum provides specific, illustrative examples throughout. The FAC should be dismissed on this basis alone.

### II.    The Court Lacks Personal Jurisdiction Over Mr. Zhao

Plaintiffs do not justify personal jurisdiction over Mr. Zhao. Personal jurisdiction "is 'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citation and alteration marks omitted). That power is lacking here.

#### A.    Proper Service Neither Occurred Nor Is Authorized

Service is a "prerequisite[] to … personal jurisdiction," *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105 (1987), but Mr. Zhao was not lawfully served. While this Court authorized service by alternative means, ECF.94, this motion properly contests service. *See* Fed. R. Civ. P. 12(b)(4) and (5). The Court invoked a rule providing means of serving "an individual .

---

[3] Mr. Zhao joins the motion-to-dismiss arguments of BHL and BAM Trading Services Inc. (BAM), ECFs.35, 62, 76, and 79, and has striven to minimize overlap.

. . at a place not within any judicial district of the United States." Fed. R. Civ. P. 4(f)(3). Mr. Zhao was not served at a place outside the United States; the summons prominently lists the New York address of Baker & Hostetler as the place of service. ECF.97.

Service on lawyers of a foreign person does not satisfy Rule 4(f)(3). First, Rule 4(f) refers to the "place" where the defendant is "served," rather than the defendant's residence, so service in New York cannot be transformed into service abroad based on agency doctrine. *Convergen Energy LLC v. Brooks*, No. 20-cv-3746, 2020 WL 4038353, at *7 (S.D.N.Y. July 17, 2020). Second, Rule 4(f) does not even authorize service on an agent. Unlike Rule 4(e), which expressly authorizes service on an authorized "agent" for defendants in the United States, Fed. R. Civ. P. 4(e)(2)(C), Rule 4(f) requires service on the "individual" defendant, Fed. R. Civ. P. 4(f). *See Bittner v. United States*, 598 U.S. 85, 94 (2023) (explaining that "particular language in one section . . . but omit[ted] from its neighbor" "normally . . . convey[s] a difference in meaning"). Third, even if Rule 4(f) did recognize service on agents, "service of process on an attorney not authorized to accept service for his client is ineffective." *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990). Baker & Hostetler was not authorized to accept service for Mr. Zhao.

For the same reason, there is no "statutory basis for personal jurisdiction that renders such service of process effective," as is essential. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). Plaintiffs point to the ATA, which authorizes service "in any district where the defendant resides, is found, or has an agent." 18 U.S.C. §2334; *see* ECF.69 at 24. Mr. Zhao neither resides nor was found nor appointed an agent in a federal district. Because an agent is a person authorized to accept service, *Santos*, 902 F.2d at 1095, service is ineffective under the ATA if the recipient "lacked authority." *Schrier v. Qatar Islamic Bank*, 632 F. Supp. 3d 1335, 1346 (S.D. Fla. 2022). The requirement that a person be "appointed to receive process" is settled, 4A Charles A.

Wright, et al., Fed. Prac. & Proc. §1097 (4th ed.), and supplies the meaning of "agent" in the ATA. *See George v. McDonough*, 596 U.S. 740, 746 (2022) (explaining the relevance of "a robust regulatory backdrop" under the "old soil" canon). Because no such agent was served, the ATA's process provision is unsatisfied.[4]

### B.    The Court Lacks Personal Jurisdiction Over Mr. Zhao

An exercise of jurisdiction over Mr. Zhao would not "comport with constitutional due process principles." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 60 (2d Cir. 2012). Mr. Zhao lacks the "minimum contacts" with New York and the United States necessary to satisfy "traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citation omitted).

Mr. Zhao, who is alleged to be "a dual citizen of Canada and the United Arab Emirates," ¶28, is not amenable to general jurisdiction in New York. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). That leaves specific jurisdiction, which requires "a relationship among the defendant, the forum, and the litigation." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021). Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* at 359. Plaintiffs must establish both "purposeful availment"—active assumption of "the privilege of conducting activities within the forum"—and "an affiliation between the forum and the underlying controversy" by way of an "activity or an occurrence." *Id.* (citations omitted). This test "incorporates real limits." *Id.* at 362.

The inquiry counts only contacts with New York. While Plaintiffs invoke the due process standard of the Fifth Amendment, *see* ECF.69 at 24, it applies only when personal jurisdiction is

---

[4] So is New York's service-of-process rule. *See* N.Y.C.P.L.R. §308(3) (requiring that agent be "designated under rule 318"); N.Y.C.P.L.R. §318 (requiring designation to occur in a "writing … filed in the office of the clerk").

"authorized by a federal statute." *Fuld v. Palestine Liberation Org.*, No. 24-20, No. 24-151, 2025 WL 1716140, at *6 (U.S. June 20, 2025) (citation omitted). This Court deemed service accomplished outside the United States. ECF.94 at 10. Assuming that was correct, *but see supra* §II.A, service was not achieved under the ATA. *See Schrier*, 632 F. Supp. 3d at 1349 (explaining that service abroad under Rule 4(f)(3) does not qualify as service under the ATA). Plaintiffs—at best—have recourse to personal jurisdiction under New York law, *see id* at 1353-54, and the Fourteenth Amendment governs, *see Fuld*, 2025 WL 1716140, at *6. Regardless, the FAC fails to establish personal jurisdiction under any plausibly applicable test.[5]

### 1.    Personal Jurisdiction Cannot Rest on Mr. Zhao's Personal Contacts with the Forum

Plaintiffs make a limited effort to establish minimum contacts based on Mr. Zhao's personal actions. ¶¶1575-77. This fails both aspects of the specific-jurisdiction test.

First, the FAC does not establish contacts by Mr. Zhao with the forum. The "mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents and employees are suable locally as well." *Bonita Fabrics, Inc. v. Anand*, No. 12 Misc. 408, 2014 WL 406837, at *4 (S.D.N.Y. Jan.29, 2014) (citation omitted); *accord Soundkillers LLC v. Young Money Ent., LLC*, No. 14cv7980, 2016 WL 4990257, at *6 (S.D.N.Y. Aug. 2, 2016), *report and recommendation adopted*, 2016 WL 4926198 (Sept. 15, 2016). Nevertheless, Plaintiffs

---

[5] The due process standard of the Fifth Amendment would also be offended by the exercise of jurisdiction over Mr. Zhao. In *Fuld*, the Supreme Court recently upheld a statute specifically subjecting the Palestine Liberation Organization (PLO) and the Palestinian Authority (PA) to personal jurisdiction in the United States based on "activities on U.S. soil," including maintenance of U.S. offices and payments to individuals convicted of committing terrorism that killed a U.S. national. 2025 WL 1716140, at *4-5. The Court upheld the law based on Congress's broad authority over foreign affairs and its narrow reach to just two entities. *Id.* at *10-13. By contrast, Rule 4(f)(3) lacks any of the features of the law upheld in *Fuld* and could not be applied consistent with the Fifth Amendment absent a close nexus between Mr. Zhao, the claims, and the United States. The FAC does not plead this.

vaguely state that Mr. Zhao was "responsible for all major strategic decisions" for BHL, ¶1575, and then conclude that "Binance's [purported] purposeful availment of New York and the United States" is "attributable" to Mr. Zhao, ¶1577. This simply portrays Mr. Zhao as an active CEO. But "[a] general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction." *Langer v. Paysafe Partners LP*, No. CV 19-4388, 2020 WL 7684885, at *4 (E.D.N.Y. May 22, 2020) (citation omitted), *report and recommendation adopted*, 2020 WL 7041085 (Nov. 30, 2020). The FAC's allegations concerning Mr. Zhao "are too vague and generalized to allow the Court to conduct this necessary defendant-specific inquiry." *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, No. 5:17-cv-00052, 2020 WL 5258313, at *6 (N.D.N.Y. Sept. 3, 2020).

The only two marginally specific allegations about Mr. Zhao fail to show "conduct" that "creates a substantial connection with the forum." *Waldman*, 835 F.3d at 335.[6] The FAC vaguely blames Mr. Zhao for a "failure to implement and enforce anti-money laundering controls and Know Your Customer procedures." ¶1575. The minimum-contacts test, however, requires "conduct," *Waldman*, 835 F.3d at 335, not "inaction," even if it is "systemic." *Zapata v. HSBC Holdings PLC*, No. 1:16-CV-030, 2017 WL 6939209, at *4 (S.D. Tex. Sept. 14, 2017). Founding federal jurisdiction on omissions would impermissibly rope in everyone worldwide not presently implementing U.S.-oriented compliance programs. *See McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 224 (7th Cir. 1994). Next, the FAC alleges "a substantial role" by Mr. Zhao in "efforts to exploit

---

[6] The holding of *Waldman* with respect to the PLO and PA was superseded by the Promoting Security and Justice for Victims of Terrorism Act (PSJVT) as described in *Fuld*, 2025 WL 1716140, at *4. However, *Fuld* did not overrule *Waldman's* application of the minimum-contacts test in cases like this where that test otherwise applies.

the U.S. market" by BHL, ¶1576, but this again is too conclusory. It is a mystery what "substantial role" means, and the FAC shows no concrete action of Mr. Zhao reaching into the forum.

Second, even if the FAC somehow pinned forum-based contacts on Mr. Zhao, it fails to plausibly allege anything "suit-related." *Walden*, 571 U.S. at 284. In an ATA case, the "relevant 'suit-related conduct'" is that which can subject the defendant "to liability under the ATA." *Waldman*, 835 F.3d at 335. For example, *Waldman* found that the PLO's terrorist acts abroad lacked the requisite U.S. nexus and that its U.S. lobbying was insufficiently connected to the ATA claims. *Id.* at 335-44. Likewise, the Second Circuit found no jurisdiction from donations of Saudi princes "knowing that their money would be diverted to al Qaeda" and "foresee[ing] that recipients of their donations would attack targets in the United States," as this chain was "far too attenuated to establish personal jurisdiction in American courts." *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 94-95 (2d Cir. 2008), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010).

The claims against Mr. Zhao are equally infirm. Plaintiffs theorize that BHL "avoided taking any measures to prevent users in sanctioned jurisdictions, including Iran, from accessing the Binance platform," ¶750; *see also* ¶¶751-816, which enabled those users to reap profits "to directly or indirectly sponsor terrorist attacks targeting the United States and its allies in the Middle East," ¶817; *see also* ¶¶818-829. But this theory could not subject anyone "to liability under the ATA," *Waldman*, 835 F.3d at 335, given that it merely claims "assistance to a transcendent 'enterprise,'" *Twitter*, 598 U.S. at 495; *see infra* §III.B. That aside, and even assuming material actions by Mr. Zhao in connection with this theory, it depends entirely on conduct abroad. The "users in sanctioned jurisdictions" were outside the United States, as was the exchange and all acts (and omissions) that supposedly support ATA liability. ¶¶750, 817. This theory is at least as

"attenuated" as the one rejected in *In re Terrorist Attacks*, 538 F.3d at 94-95. Other courts have held that jurisdiction does not arise from the alleged provision of platforms to help bad actors "avoid U.S. sanctions." *Bernhardt v. Islamic Republic of Iran*, No. 18-2739, 2020 WL 6743066, at *3 (D.D.C. Nov. 16, 2020), *aff'd*, 47 F.4th 856 (D.C. Cir. 2022), *cert denied*, 144 S. Ct. 280 (2023); *see also Zapata*, 2017 WL 6939209, at *4; *Siegel v. HSBC Holdings, PLC*, No. 17cv6593, 2018 WL 501610, at *4 (S.D.N.Y. Jan. 19, 2018); *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 482 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 109 (2d Cir. 2013).

Meanwhile, the conduct supposedly related to the forum is too remote from the ATA claims to pass muster. Plaintiffs assert jurisdiction based on lobbying activities, ¶¶1580-81, despite Circuit precedent, *Waldman*, 835 F.3d at 344. And, even assuming the FAC plausibly alleged forum-based contacts by Mr. Zhao in vague "efforts to exploit the U.S. market," ¶1576, the U.S. users of BHL's exchange are not alleged to be terrorists, nor are they alleged to have made transfers to terrorists. This case presents an especially stark mismatch for case-related contacts with the forum because the FAC alleges a bifurcation of users through BAM's U.S.-based exchange that was "fully compliant with all U.S. laws, regulations, and other obligations." ¶683. The types of "users in sanctioned jurisdictions" whose participation is alleged to create ATA liability, ¶750, were *excluded* from the U.S.-based exchange. None of Mr. Zhao's acts plausibly connect the claims with the forum.

### 2.    Personal Jurisdiction Over Mr. Zhao Cannot Rest on Alter Ego Doctrine

Plaintiffs' recourse to the alter ego doctrine also fails. *See, e.g.*, ¶¶688-697; ECF.69 at 9, 24-25. As an initial matter, their non-compliance with Rule 8(a)(2) is damning. While they claim the meandering document can be understood by its "organized . . . subject headings," ECF.69 at 28, the alter ego allegations are scattered. *See, e.g.*, ¶¶30-34, 688-697, 1577. The only relevant

subject heading declares that "Binance US Effectively Functioned as Binance and Zhao's Alter Ego," *id.* p.239 (section heading 2), not that BHL was Zhao's alter ego or that acts of BAM or BHL can be attributed to Mr. Zhao. This suggests Plaintiffs do not wield alter ego doctrine to obtain jurisdiction over Mr. Zhao.

Elsewhere, however, the FAC vaguely asserts that "Zhao's dominance of Binance" renders acts of multiple unnamed "entities" of "the Binance enterprise" "legally attributable to Zhao and Binance and vice versa." ¶34. This is incomprehensible; plaintiffs should know if they seek "to extend personal jurisdiction over the parent company" based on a subsidiary's contacts or "seek to do the reverse." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 274 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024). Plaintiffs' novel "vice versa" approach does little more than scatter flexible words on a page that Plaintiffs can manipulate to suit the needs of the moment and that leave the defendants and the Court guessing. Responding has consumed significant time, attorney fees, and briefing space—prejudices the Court should not ratify. In any event, insofar as a mosaic can be discerned from the FAC's rubble, no alter ego theory emerges.

**BHL.** The FAC provides no basis to impute to Mr. Zhao BHL's suit-related contacts—assuming any exist. Just one paragraph asserts "Zhao's domination of Binance" with no substantiation. ¶34. This fails.

BHL is incorporated in the Cayman Islands, ¶26, where courts analyze veil-piercing under English common law. *Glob. Gaming Philippines, LLC v. Razon*, No. 21 Civ. 2655, 2022 WL 836716, at *7 (S.D.N.Y. Mar. 21, 2022). Under English law, veil-piercing is "vanishingly rare," *id.* (citation omitted), and possible "only where special circumstances exist indicating that the relationship of one corporation to another is a mere facade concealing the true facts." *In re Platinum & Palladium*, 61 F.4th at 275 (citation omitted). Moreover, veil-piercing is available

10

only when a corporation is created to evade a preexisting liability. *In re Bass*, No. 10-01101, 2011 WL 722384, at *9 (Bankr. W.D. Tex. Feb. 11, 2011) (finding that "courts in the U.K. will pierce the veil when a company is set up to allow members of the company to get out of legal obligations owed to third parties"); *In re Tyson*, 433 B.R. 68, 88-89 (S.D.N.Y. 2010) (similar). Meanwhile, federal common law requires well-pleaded allegations—at a minimum—that "the corporation is merely a shell." *In re Platinum & Palladium*, 61 F.4th at 276 (citation omitted). Because neither standard is met, the Court need not decide which applies. *See id.* at 275 (taking this approach).

BHL is not Mr. Zhao's alter ego. The FAC alleges that BHL operates "a web-based virtual currency exchange" with "over 100 million customers throughout the world, in volumes equivalent to trillions of U.S. dollars," and that it has held "intellectual property, including trademarks and domain names, employment contracts for certain employees operating Binance.com, and has employed at least certain individuals who perform work on behalf of the Binance platform." ¶26. That describes a *bona fide*—and massive—enterprise, not one individual's façade or shell. While the FAC alleges that Mr. Zhao "had ultimate control over all of Binance's business activities," ¶28, that is consistent with separate personhood. *See In re Platinum & Palladium*, 61 F.4th at 275-76 (finding no plausible basis for veil-piercing despite allegations that owner "conducted" subsidiary's "day-to-day operations," and subsidiary "had no function other than to implement" owner's unlawful purpose (citation omitted)); *Global Gaming*, 2022 WL 836716, at *7 (similar); *Great Lakes Overseas, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 990 F.2d 990, 996-97 (7th Cir. 1993) (similar). In fact, Plaintiffs admit Mr. Zhao worked alongside "a core senior management group" and that, when he left BHL, it continued as a going concern. ¶¶28-29. BHL was no mere extension of Mr. Zhao. Nor does the FAC show that BHL came into existence after Mr. Zhao incurred liabilities and was created to evade them.

11

**BAM.** The FAC attempts to establish jurisdiction over BAM based on U.S. contacts "alleged as to Zhao and Binance," ¶1578, which fails where jurisdiction is lacking over Mr. Zhao. *See supra* §II.B.1. Moreover, Plaintiffs certainly cannot establish jurisdiction over Mr. Zhao based on BAM's U.S. contacts when they admit they need his supposed forum-based contacts even to attempt to establish jurisdiction over BAM. This circularity underscores the problem with jurisdiction by "vice versa." ¶34.

In any event, BAM is no alter ego. ECF.62 at 3-4; ECF.79 at 4-6. As noted, veil-piercing is improper under federal law unless—at minimum—an entity is a "shell," i.e., "no more than a telephone number and stationery." *In re Platinum & Palladium*, 61 F.4th at 276 (citation omitted). The standard in Delaware, where BAM is incorporated, ¶31, is higher, requiring a "façade" showing plus proof of "an inequitable use of the corporate form itself as a sham." *Marnavi S.P.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) (citation omitted). Neither standard is met because the FAC cannot reduce BAM to stationery. It is a highly profitable exchange with its own customer base, accounts, officers and directors, and corporate identity. ECF.62-1. It is insufficient for Plaintiffs to claim BHL and Mr. Zhao "controlled" BAM. *In re Platinum & Palladium*, 61 F.4th at 275-76. Indeed, the allegation that *multiple* corporate entities separated Mr. Zhao from BAM, ¶32, rules out veil-piercing, since the FAC does not justify disregarding *each* entity. *See, e.g.*, *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-CV-1924, 2011 WL 1225986, at *5 (D. Conn. Mar. 28, 2011) (Droney, J.), *on reconsideration in part*, No. 3:05-CV-1924, 2011 WL 4396509 (D. Conn. Sept. 21, 2011), and *aff'd sub nom. Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46 (2d Cir. 2015). It does not move the needle for the FAC to claim Mr. Zhao and others established BAM with an ulterior motive to distract regulators from BHL. ¶691. An ulterior motive does not make an otherwise profitable corporation—with its own property, capitalization, accounts

and so forth—a façade or shell. Nor do allegations of illegality do the trick: a complaint *always* alleges unlawful conduct. That has never justified veil-piercing absent well-pleaded allegations that no independent entity existed. And this would be an especially poor case to improvise such a novelty because the FAC admits BAM was "fully compliant with all U.S. laws, regulations, and other obligations." ¶683.

### 3. Personal Jurisdiction Over Mr. Zhao Cannot Rest on Conspiracy Doctrine

Plaintiffs' prior opposition brief claims jurisdiction over BAM based on a conspiracy doctrine, ECF.69 at 26, which again reveals pleading failures. None of the FAC's "organized . . . subject headings," *id.* at 28, references jurisdiction by conspiracy, and the allegations in Plaintiffs' prior brief cited do not attempt to establish this doctrine, *see id.* at 26 (citing ¶¶1551-52, 1566-73, 1553-64, 1574, which allege contacts of BHL).[7] No one could tell that the unreadable FAC claimed jurisdiction by conspiracy before Plaintiffs' briefing said so. *See* ECF.62 at 5-9 (challenging jurisdiction without anticipating a conspiracy theory); *but see Budhani v. Monster Energy Co.*, No. 20-CV-1409, 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021) ("A plaintiff cannot amend his or her complaint through their briefing."). And it is unclear even from Plaintiffs' briefing whose alleged contacts they would impute to whom. *See* ECF.69 at 26.

BAM has explained why the FAC does not allege a conspiracy. ECF.79 at 8; *see also infra* §IV. Even if it did, "the mere existence of a conspiracy is not enough." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018). Jurisdiction by alleged conspiracy is a dubious doctrine that the Second Circuit has acknowledged may contravene due-process guarantees. *In re Platinum & Palladium*, 61 F.4th at 271-72. The court has cabined the doctrine to require "overt

---

[7] BAM's reply brief cites different paragraphs, reflecting confusion among skilled lawyers about which are relevant. ECF.79 at 8.

acts in furtherance of the conspiracy ha[ving] sufficient contacts with [the forum] state." *Charles Schwab*, 883 F.3d at 87. A supposed conspiracy to abet foreign actors in terrorism through a foreign exchange—which is not properly alleged—does not in any event meet this requirement.

### III.    The FAC Does Not State a Claim for Aiding-and-Abetting (Count One)

The FAC fails to state an ATA claim for aiding-and-abetting claim under JASTA, which states that, in an action based on "an injury arising from an act of international terrorism committed, planned, or authorized by" a foreign terrorist organization (FTO), "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance" to "such an act of international terrorism." 18 U.S.C. §2333(d)(2).

In *Twitter*, the Supreme Court construed this provision against the common law, explaining that it requires well-pleaded allegations "that the defendant consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed.'" 598 U.S. at 493 (citation omitted). JASTA demands "intentional participation," i.e., "some 'affirmative act' 'with the intent of facilitating the offense's commission.'" *Id*. at 490 (citation omitted). The Court found this standard unmet by allegations that social media companies "knew that ISIS was uploading . . . content" to "generally available" internet platforms "but took insufficient steps to" exclude them. *Id.* at 498. "None of those allegations suggest that defendants culpably 'associated themselves with the [relevant] attack, participated in it as something that they wished to bring about," or sought "by [their] action to make it succeed." *Id.*

More recently, the Supreme Court reaffirmed that, "[w]hen a company merely knows that 'some bad actors' are taking 'advantage' of its products for criminal purposes, it does not aid and abet," even if it "could adopt measures to reduce their users' downstream crimes." *Smith & Wesson*, 2025 WL 1583281, at *6. The Court rejected a complaint asserting that gun manufacturers "supply firearms to retail dealers whom they know illegally sell to Mexican drug traffickers," and

"failed to impose" adequate "controls on their distribution networks that would prevent illegal sales." *Id.* at *4-5. To incur liability, a person must do "more than sell a product to a known lawbreaker, as it would to all others." *Id.* at *7. Because the FAC—at most—alleges sales to lawbreakers, it too falls short.

## A.    The FAC Does Not Plead Intentional Participation in Terrorist Acts

The FAC lumps the defendants together, alleges BHL operated an exchange with "over 100 million customers throughout the world," ¶26, and finds numerous, repetitive ways to allege that "terrorist-linked persons were able to transact on Binance's platform," ¶691. But a complaint does not show culpable assistance through allegations that defendants "took insufficient steps to ensure that" terrorist-linked persons "were removed from . . . platforms" that are "generally available." *Twitter*, 598 U.S. at 498. Under the "canonical formulation, an aider and abettor must 'participate in' a crime 'as in something that he wishes to bring about' and 'seek by his action to make it succeed.'" *Smith & Wesson*, 2025 WL 1583281, at *5 (citation omitted). Accordingly, sales to "a known lawbreaker" are not abetting. *Id.* at *7. The FAC's many efforts to show that a few of the 100 million users were "terrorist-linked persons" fail to plead a claim. ¶691.

To begin, the FAC does not even show that Mr. Zhao dealt with any "known lawbreaker." *Smith & Wesson*, 2025 WL 1583281, at *7. Plaintiffs do not allege that BHL's CEO knew all or even many of "over 100 million" user identities. ¶26. And, where Plaintiffs claim substantial assistance to more terrorist groups than their briefing can list, they cannot allege Mr. Zhao knew persons affiliated with each were on the exchange (assuming even that is alleged). Knowledge is a necessary (but not sufficient) threshold to participation in terrorism "as in something [the defendant] wishes to bring about." *Twitter*, 598 U.S. at 490. Rather than allege knowledge—itself insufficient—Plaintiffs claim merely a "general awareness of the terrorist-financing risks posed by cryptocurrency," ¶540, devoting inordinate space to general "warnings" to the "entire financial

15

sector" "from the U.S. government, international authorities, . . . blockchain analysts, and terrorism scholars" that "financial transactions" with actors in sanctioned jurisdictions may aid terrorism. ¶536; *see* ¶¶537-628. This is an extremely long-winded way of noting "the risk that [d]igital currencies are vulnerable to money laundering and terrorist financing." ¶542 (alteration marks omitted). But appreciation of endemic risk is not knowing assistance. *Smith & Wesson*, 2025 WL 1583281, at *8 ("The manufacturers cannot be charged with assisting in criminal acts just because Mexican cartel members like those guns too.").

Plaintiffs fault Mr. Zhao for failing to implement mechanisms that may, in turn, exclude bad actors from the exchange. *See, e.g.* ¶¶505, 639. But allegations of "deliberate indifference," ¶679, are insufficient because abetting does not arise from failure to "impose constraints . . . to reduce the possibility of unlawful conduct." *Smith & Wesson*, 2025 WL 1583281, at *8; *see also Twitter*, 598 U.S. at 498 (finding insufficient allegations that defendants "took insufficient steps to ensure that ISIS supporters and ISIS-related content were removed from their platforms"). Nor is it factually plausible that Mr. Zhao's alleged failings amount to culpable assistance. Read fairly, the FAC alleges that he and others permitted customer privacy (against the dominant current of U.S. law) in setting policy at BHL and seeks (without basis) to insinuate into this goal "support [for] the . . . wrongdoing" of exchange customers, *id*. at 505, a category including more than terrorist-linked persons. *See, e.g.*, ¶¶634, 643 (suggesting "drug money" on the exchange). That is a *non-sequitur*. Declining to actively identify users and file reports does not mean someone "wishes to bring about" bad acts of a small subset of users who commit crimes or torts. *Twitter*, 598 U.S. at 490; *see also Smith & Wesson*, 2025 WL 1583281, at *7. In any event, the FAC has "not nudged" its longwinded assertions "across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

16

Plaintiffs' past briefing has improperly tried to repurpose allegations of passivity as activity, asserting for example "that Binance actively invited and facilitated terrorist finance." ECF.69 at 35. Because the FAC neither supports nor implicates Mr. Zhao in such statements, this approach only underscores the Rule 8 offense. The term "invite" and its derivations appear only in irrelevant contexts, ¶¶98, 659, 1471, 1502, 1574, 3102, and sections addressing knowing assistance show merely passive failures to implement controls at the company level, ¶¶631-73. For example, a heading claiming "Consciousness of Guilt" refers not to invitations but to "violation[s] of U.S. law." ¶640. Another heading alleging that "Defendants Deliberately Enabled Billions . . . in Illicit Cryptocurrency Transactions . . . Including [to] IRGC Members, Affiliates, and Fronts" prefaces quite different allegations that "Defendants deliberately avoided taking any measures to prevent uses in sanctioned jurisdictions . . . from accessing the Binance platform," ¶750. These prolix allegations show, at most, failure to exclude, not active invitation.

Rather than point to "organized . . . subject headings" identifying Mr. Zhao's intentional participation in terrorism, ECF.69 at 28, Plaintiffs' prior briefing presents "*e.g.*" cites of scattered paragraphs that refer vaguely to all "Defendants" or to "Binance," *see id.* at 10-13, 35-39. This is particularly prejudicial when Plaintiffs' alter ego allegations are themselves indecipherable and insufficient. For reasons stated above (§II.B.2), allegations about BHL and BAM—against whom JASTA claims are also not stated—do not qualify as allegations about Mr. Zhao.

## B.    The Alleged Nexus with Attacks Is Too Remote to Be Cognizable

Plaintiffs effectively acknowledge their inability to show that any defendant knowingly assisted terrorist acts as something they wished to bring about, but seek to compensate with interrelated contentions claiming a "nexus" between assistance and attacks. *See* ECF.69 at 39-44. These points are unpersuasive.

17

First, Plaintiffs' contention that there is a cognizable nexus between BHL's exchange and the 64 attacks is legally and factually flawed. ECF.69 at 40-41. Plaintiffs err legally in decoupling the inquiry's objective and subjective elements, where they must be viewed "as working in tandem." *Twitter*, 598 U.S. at 491. The Supreme Court explained that "less substantial assistance required more scienter before a court could infer conscious and culpable assistance" and "vice versa." *Id.* at 492. Accordingly, "direct and extraordinary" assistance can lighten the plaintiff's load in showing intent. *Id.* But that is *not* because an intent showing becomes unneeded but rather because "a court might more readily infer conscious participation" from such exceptional assistance. *Id.* Simply put, extraordinary assistance becomes circumstantial evidence of intent to assist acts of terrorism in such rare cases. But the FAC incorrectly focuses on assistance from the terrorists' point of view, going to inordinate lengths to show that access to the exchange helped them. *See, e.g.*, ¶¶716-48, 830-1148. Intent cannot be imputed to Mr. Zhao on that basis. Indeed, the Court warned against examining "factors" in the aiding-and-abetting inquiry in a manner "disparate" and "unrelated" from "a common conceptual core." *Twitter*, 598 U.S. at 504. Plaintiffs have improperly done that here.

Plaintiffs then erroneously construe their own pleading, which does not show a nexus between Mr. Zhao and any attack. The FAC fails to link profits reaped from the exchange—much less any action of Mr. Zhao—to any attack. Moreover, the FAC explains "that terrorist attacks are inexpensive" and typically cost on "the low end of [a] spectrum" between "$2,000 per attack to around $20,000 per attack," ¶¶742-43, suggesting a modest role of profits reaped from the exchange in attacks as compared to the many other activities of the groups concerned. While the FAC goes on to propose that "more money means more attacks," ¶746, that merely reflects fungibility, i.e., that any money to an enterprise with multiple functions means more money for all

functions. But the Supreme Court explained that "it is not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Twitter*, 598 U.S. at 495. Accordingly, fungibility cannot establish the requisite nexus—especially where principal violators include *de jure* and *de facto* sovereigns with large budgets for all types of endeavors. The "failure to allege any definable nexus" between Mr. Zhao and any attack—"at a minimum—drastically increases [Plaintiffs'] burden" to show intent. *Id.* at 503.

Second, Plaintiffs rely on a theory of foreseeability, noting that "people who aid and abet a tort can be held liable for other torts that were 'a foreseeable risk' of the intended tort." *Twitter*, 598 U.S. at 496. The foreseeability doctrine renders a person who aids a burglary liable for the resulting murder. *See Halberstam v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983); *Twitter*, 598 U.S. at 495. By extension, someone who aids a terrorist in one attack may be liable for a second as well if the aid facilitates it. But where Mr. Zhao aided no attack, Plaintiffs cannot make him liable for *every* attack in the Middle East for nearly a decade.

Third, Plaintiffs similarly fail in asserting a "pervasive, systemic, and culpable" participation that makes one "liable for *all* that group's attacks." ECF.69 at 41. Plaintiffs are correct that *Halberstam* provides a useful example, where Hamilton lived with the principal violator, Welch, such that "any time that Welch left the house to burglarize, he would have relied on Hamilton's assistance in laundering the stolen goods and transforming them into usable wealth." *Twitter*, 598 U.S. at 495 (discussing *Halberstam*, 705 F.2d at 488). No amount of prolixity in the FAC can make it show that every time a terrorist attack occurs in the Middle East, it happens with Mr. Zhao's assistance.

### C.       Regulatory Failings Do Not Create Aiding-and-Abetting Liability

Rather than plausibly allege "some 'affirmative act' 'with the intent of facilitating the offense's commission,'" *Twitter*, 598 U.S. at 490 (citation omitted), the FAC emphasizes the government's determination that BHL and Mr. Zhao failed to comply with U.S. statutory obligation obligations governing all money services businesses. *E.g.*, ¶5. But if the government believed that anyone involved had provided "material support or resources to a foreign terrorist organization" it could have brought criminal charges under the ATA's material support provision, 18 U.S.C. §2339B(a)(1), which requires proof that a defendant provide such support with "knowledge of [an] organization's connection to terrorism." *Linde*, 882 F.3d at 330. The government never brought such a charge, even after scrutinizing BHL and Mr. Zhao and showing a strong willingness to bring charges against them. That fact is significant because the material support standard (requiring knowing support to an organization connected to terrorism) is lower than JASTA's standard (requiring conscious support to acts of terrorism), so it would have been more straightforward for the government to make the material-support showing than for Plaintiffs here to make the requisite showing under JASTA. *Id.* at 329-30; *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 239 (E.D.N.Y. 2019) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."), *aff'd*, 993 F.3d 144 (2d Cir. 2021). In this way, the government's past actions—which form the crux of Plaintiffs' theory—actually undermine it.

This context also highlights the error in Plaintiffs' reliance on provisions the government did enforce against Mr. Zhao, which are even further removed from JASTA's standard. Mr. Zhao was charged under the Bank Secrecy Act (BSA), which does not require proof of any (1) FTO involvement, (2) intent to aid terrorism, or (3) violation of international sanctions. Instead, Mr. Zhao was charged with failure to implement an AML program, 31 U.S.C. §§ 5322(b), (c), and (e);

*id.* §5318(h); 31 C.F.R. §1022.210, and with failure to register an institution under his control as a money service business, 31 U.S.C. §5330; Information at 1, 8-9, *United States v. Zhao*, No. 2:23-cr-00179 (W.D. Wash. Nov. 14, 2023), ECF.1. No element of JASTA is within these charges. Notably, while the government also charged BHL for business with persons in sanctioned jurisdictions (including Iran) without an OFAC license, Information at 30-31, *United States v. Binance Holdings Ltd*, No. 2:23-cr-00178 (W.D. Wash. Nov. 14, 2023), ECF.1, it brought no such charge against Mr. Zhao. Thus, the international-sanctions components of the FAC cannot reach him (and do not work anyway), and the government's choice not to claim Mr. Zhao even did business with sanctioned persons undermines Plaintiffs' contention that he actively aided a small subset of sanctions persons (FTOs).

Nor does *Twitter* bless Plaintiffs' effort to enforce the BSA through the ATA by noting that the claims in that case "might have more purchase if [the plaintiffs] could identify some independent duty in tort that would have required defendants to remove ISIS' content" from websites. 598 U.S. at 501. The BSA regime enforced against BHL and Mr. Zhao, and the OFAC regime enforced only against BHL, do not provide duties in tort. *Twitter* emphasized that JASTA tracks the "clear guideposts" of "common law," *id.* at 506, which holds that a court may not "impose a duty of care based upon a statute that does not permit a private right of action." *Aiken v. Interglobal Mergers & Acquisitions*, No. 05 Civ. 5503, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006). Because "[t]he obligation[s] under" the BSA are "to the government rather than some remote victim," *Marlin v. Moody Nat. Bank, N.A.*, No. H-04-4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006), *aff'd*, 248 F. App'x 534 (5th Cir. 2007), courts "have uniformly rejected [the] argument" that it can provide a standard of care, *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874 (N.D. Iowa 2009); *see Aiken*, 2006 WL 1878323, at *2; *In re Agape Litig.*, 681

21

F. Supp. 2d 352, 360 (E.D.N.Y. 2010); *Kelley. v. BMO Harris Bank N.A.*, No. 19-cv-1756, 2022 WL 4547022, at *17 (D. Minn. Sept. 29, 2022); *Hofschulte v. SunTrust Banks, Inc.*, No. 1:20-cv-01676, 2021 WL 5230732, at *4 (N.D. Ga. Mar. 4, 2021); *see also James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3d Cir. 2006), *cert denied*, 550 U.S. 939 (2007). OFAC regulations (were they relevant) also create no private rights that could support a duty of care. *Levin v. Bank of New York Mellon*, No. 09 CV 5900, 2013 WL 5312502, at *17 (S.D.N.Y. Sept. 23, 2013).[8]

To enable private enforcement of the BSA and OFAC regimes through JASTA would contravene all statutes concerned. BSA liability arises on considerably less than "assistance to a transcendent 'enterprise,'" and would conflict with JASTA's core policies if the statutes were equated as Plaintiffs propose. *Twitter*, 598 U.S. at 495. Doing that would also distort the BSA and international-sanctions regimes, which are not privately enforceable. This was no slip of the pen. *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). Means of enforcement present a question as policy-laden as the choice of substantive standards, given the "discretion" involved in bringing, managing, and settling cases. *Arizona v. United States*, 567 U.S. 387, 396 (2012); *see Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 210 (D.C. Cir. 1985) (Scalia, J.) (finding it "doubly difficult to find a private damage action" where "this would have the practical effect of eliminating prosecutorial discretion"). Here, to glom onto amounts the government achieved in settlements with Mr. Zhao and BHL untold additional treble damages under JASTA would create an improper shadow enforcement system that will deter future defendants from settling with the government

---

[8] Without considering how duties owed to the government can create a tort duty to plaintiffs, the court in *Raanan v. Binance Holdings Ltd.*, No. 24-cv-697, 2025 WL 605594, (S.D.N.Y. Feb. 25, 2025), treated the BSA and similar statutes a sufficient basis for such duties. *Id.* at *21. It is an unpersuasive outlier.

out of fear of effectively admitting JASTA liability. That concern is enhanced because this case implicates the national government's "inherent power as sovereign to control and conduct relations with foreign nations." *Arizona*, 567 U.S. at 395; *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004) (explaining that courts must be "particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs"); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013) (describing how "the danger of unwarranted judicial interference in the conduct of foreign policy is magnified in the context of the [Alien Tort Statute], because the question is not what Congress has done but instead what courts may do"). Where the BSA is not privately enforceable by its own terms, and imposes no duties owed to private persons, treating it as enforceable under JASTA is improper.

## IV.    The FAC Does Not State Claims for Conspiracy (Counts Two, Three, and Four)

Plaintiffs' conspiracy claims also fail. JASTA created liability for a defendant who "conspires with the person who committed … an act of international terrorism." 18 U.S.C. §2333(d)(2). Plaintiffs allege conspiracies to (1) "degrade, deter, and destroy Iran-facing economic pressure supported by persons in the United States," and to "secure windfall profits" by evading U.S. sanctions against Iran (Count Two); (2) maintain terror groups' "ability to access the payments they receive in connection with" terror acts like "hostage-taking, human trafficking, ransomware, and protection payment schemes" (Count Three) and (3) to "provid[e] material support" to ISIS" (Count Four). ¶¶3053-55; 3133-66; 3167-78. Each claim fails on multiple fronts.

First, the FAC fails to plead "the requisite agreement," conspiracy's defining feature. *Twitter*, 598 U.S. at 496; *see Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 79 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 83 (2023) ("a plaintiff must plead '*an agreement*'" (citation omitted)). As in *Freeman*, the FAC does not plead that Mr. Zhao "intended to kill or injury" anyone in an act of international terrorism and thus does not show a "common intent." *Id*. at 80 (citation omitted).

Moreover, "parallel conduct does not suggest conspiracy," *Bell Atl.*, 550 U.S. at 557, but the FAC fails to allege anything beyond independent actions of Mr. Zhao and FTO-linked persons. This is *the* paradigmatic pleading failure. *See id.* at 564 (rejecting complaint based "on descriptions of parallel conduct and not on any independent allegation of actual agreement"); *cf. Halberstam*, 705 F.2d at 481 (explaining that courts ask whether "the alleged joint tortfeasors are pursuing the same goal . . . and are in contact with one another").

Second, even if an agreement were alleged, the statute requires that it be to commit "an act of international terrorism." 18 U.S.C. §2333(d)(2). Under this clear text, "the overt act must be the act of international terrorism that injures the plaintiff." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022); *see Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 354 (E.D.N.Y. 2023) (citing 18 U.S.C. §2333(d)(2)); *Bernhardt*, 2020 WL 6743066, at *7(citation omitted). The FAC does not allege this but merely that Mr. Zhao intended to "position [himself] as the first mover in Iran and hope[d] to monopolize the market as it skyrockets up," ¶3101, to make "more money through increased churn and greater fees after the IRGC and its allies escalated terrorist violence," ¶3146, and to "profit from each ISIS-related transaction that flowed through the Binance exchange and supplied material support to ISIS," ¶3175. This does not establish an agreement to engage in terrorism. Nor do Plaintiffs' assertions about intent to create "alternative financial systems," (Count One) and evade U.S. sanctions (Count Two). *O'Sullivan v. Deutsche Bank AG*, No. 17 CV 8709, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019); *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018) (not enough to allege defendant "joined a conspiracy to evade sanctions."); *Bernhardt*, 47 F.4th at 873 (similar).

Third, while Count Four alleges a conspiracy to provide material support under 18 U.S.C. §2339B, "it is not necessarily sufficient in and of itself to constitute an act of international terrorism

under the ATA." *O'Sullivan*, 2019 WL 1409446, at *7; *see Linde*, 882 F.3d at 326. The nature of Mr. Zhao's alleged support for ISIS is not shown in Count Four. Even assuming Plaintiffs can claim liability against Mr. Zhao based on BHL's financial services, these "are not inherently violent or dangerous" and cannot "be considered as acts dangerous to human life, particularly because the factual allegations delineating relationships between those services and the terrorist attacks at issue are so attenuated." *O'Sullivan*, 2019 WL 1409446, at *8.

Even if such conspiracies did satisfy JASTA (they do not), Plaintiffs have not alleged that Mr. Zhao intended to evade sanctions or create alternative financial systems *for terrorists* or their ends. Plaintiffs have not alleged that Mr. Zhao shared their political and world-power goals. *See, e.g.*, ¶3072 (Count Two) (listing Iran's "Ends" as including, "Expand Iran's influence/reach," "Ensure regime survival," "Become region's dominant power," "End U.S. influence in the Middle East," and "Eliminate Israel"); ¶3170 (Count Four) (listing ISIS's goals of "intimidation" and "coercion" to "affect the conduct" of government actors). There is no common pursuit. *See Bernhardt*, 47 F.4th at 873 (deeming conspiracy claim "inadequate" because the "complaint states that [defendant] was trying to make substantial profits by evading sanctions, whereas [terrorist principal] sought to terrorize the U.S. into retreating from the world stage" (internal quotation marks omitted)).

**V.    The FAC Does Not State a Claims for Primary Liability (Count Five)**

The Court should dismiss Plaintiffs' claim for primary ATA liability based on supposed material support to an entity called "Wizard Spider" that committed a ransomware attack on an Alabama hospital. ¶¶3023-24. Primary ATA liability arises only against a defendant who personally commits "an act of international terrorism," which means "violent acts or acts dangerous to human life that are a violation of the criminal laws" and appear intended "to intimidate or coerce a civilian population," "influence the policy of a government by intimidation

25

or coercion," or "affect the conduct of a government by mass destruction, assassination, or kidnapping." 18 U.S.C. §§ 2331(1) and 2333(a). That the FAC additionally fails to allege predicate criminal violations under §§ 2339A and 2339B, is no surprise where the government brought no such charges despite incentive and opportunity.

The FAC does not allege that Mr. Zhao did *anything* in connection with the ransomware attack, let alone anything violent. While the FAC alleges that "processing payments to Wizard Spider" somehow meet the test, ¶3181, Mr. Zhao processed no payments. The scattered paragraphs on this topic show no "activities" by Mr. Zhao, as the statute demands. 18 U.S.C. §2331(1); *see* ¶¶777-81; 1532-48. Even if allegations about BHL could be attributed to Mr. Zhao (they cannot), BHL has sufficiently explained that payment processing does not meet the statutory definition of terrorism. ECF.35 at 14-15; *see also Weiss v. Nat'l Westminster Bank*, 993 F.3d 144, 162-63 (2d Cir. 2021). Indeed, Congress enacted JASTA to address "aiding-and-abetting liability claims," and Circuit precedent excludes efforts to expand primary liability into the domain of secondary liability. *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 n.14 (2d Cir. 2021). That defeats Plaintiffs' reliance on contrary out-of-circuit precedent. ECF.69 at 54.

The FAC does not allege that Mr. Zhao had "knowledge and intent" of any "underlying purposes" of terrorism, for purposes of §2339A, *United States v. Stewart*, 590 F.3d 93, 113 n.18 (2d Cir. 2009), or knowledge of material support, for purposes of §2339B, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16-17 (2010). The FAC is too conclusory to support a plausible inference of either state of mind. *See* ¶¶1525-26. And no allegation of objective terroristic intent is plausible under the FAC's payment-processing theory. *See Averbach v. Cairo Amman Bank*, 19-cv-0004, 2022 WL 2530797, at *19 (S.D.N.Y. Apr. 11, 2022).

Finally, the FAC fails the additional proximate-cause element because it does not show that Wizard Spider "would not have been able to carry out the attack[] absent those specific" payment-processing services. *See Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 532-33 (S.D.N.Y. 2019), *vacated in part on other grounds*, 999 F.3d 842 (2d Cir. 2021); *see also Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 356-57 (E.D.N.Y. 2019). No attempt, much less success, at this showing is evident in the FAC.

<u>**CONCLUSION**</u>

For these reasons, the Court should dismiss all claims against Mr. Zhao for insufficient service of process and lack of personal jurisdiction or, in the alternative, for failure to state a claim.

Dated: June 24, 2025
     New York, New York

Respectfully submitted,

*/s/ Joanna F. Wasick*

**BAKER & HOSTETLER LLP**

Joanna F. Wasick
Marco Molina
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
jwasick@bakerlaw.com
mmolina@bakerlaw.com

Teresa Goody Guillén (*pro hac vice*)
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1500
tgoodyguillen@bakerlaw.com

*Counsel for Defendant Changpeng Zhao*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1 and Section 5(a) of the Court's Individual Rules and Practices in Civil Cases, I hereby certify that the foregoing memorandum of law complies with the word count limitation as set forth therein. As measured by the word processing system used to prepare it, the foregoing memorandum of law contains 8,711 words.


Dated: June 24, 2025                    */s/ Joanna F. Wasick*
                                        Joanna F. Wasick