UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOCELYN TROELL, individually and for the estate of STEPHEN TROLL, et al., *Plaintiffs,* v. BINANCE HOLDINGS LIMITED, et al., *Defendants.* | Case No.1:24-cv-07136 (JAV) **ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF
MR. CHANGPENG ZHAO'S MOTION TO DISMISS
<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

I.   The FAC Fails Under Rule 8 ...............................................................................................1

II.  The Court Lacks Personal Jurisdiction Over Mr. Zhao ......................................................1

    A.   Proper Service Neither Occurred Nor Is Authorized ...............................................1

    B.   The Court Lacks Personal Jurisdiction Over Mr. Zhao ...........................................2

III. The FAC Does Not State a Claim for Aiding-and-Abetting................................................5

    A.   The FAC Does Not Plead Intentional Participation in Terrorist Acts .....................5

    B.   The Alleged Nexus with Attacks Is Too Remote to Be Cognizable........................9

    C.   Failure to Create BSA-Compliant AML and KYC Policies Does Not Create Aiding-and-Abetting Liability ................................................................................10

IV.  The FAC States No Claims for Conspiracy or Primary Liability......................................12

CONCLUSION..............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashley v. Deutsche Bank Aktiengesellschaft*,
  __F.4th__, 2025 WL 2025448 (2025) ............................................................................... *passim*

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
  46 F.4th 226 (5th Cir. 2022) ..................................................................................................... 4

*Fuld v. Palestine Liberation Org.*,
  145 S. Ct. 2090 (2025) .................................................................................................. 2, 3, 4, 5

*In re Platinum & Palladium Antitrust Litig.*,
  61 F.4th 242 (2d Cir. 2023) ...................................................................................................... 5

*Kaplan v. Lebanese Canadian Bank, SAL*,
  999 F.3d 842 (2d Cir. 2021) .................................................................................................... 11

*Landy v. FDIC*,
  486 F.2d 139 (3d Cir. 1973) ................................................................................................. 9, 12

*Lelchook v. Lebanese Canadian Bank*,
  2024 WL 967078 (S.D.N.Y. Mar. 6, 2024) .............................................................................. 8

*Linde v. Arab Bank, PLC*,
  882 F.3d 314 (2d Cir. 2018) .................................................................................................... 11

*Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co.*,
  484 U.S. 97 (1987) .................................................................................................................... 1

*Raanan v. Binance Holdings Ltd.*,
  2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) ....................................................................... 3, 12

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ..................................................................................................... 8

*Santos v. State Farm Fire & Cas. Co.*,
  902 F.2d 1092 (2d Cir. 1990) ................................................................................................... 2

*Silge v. Merz*,
  510 F.3d 157 (2d Cir. 2007) ..................................................................................................... 2

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
  145 S. Ct. 1556 (2025) .............................................................................................................. 6

*Trump v. CASA, Inc.*,
　145 S. Ct. 2540 (2025) ............................................................................................................4

*Twitter, Inc. v. Taamneh*,
　598 U.S. 471 (2023) ....................................................................................................5, 6, 9

*United States v. Hill*,
　48 F.3d 228 (7th Cir. 1995) ...................................................................................................1

*Washington State Inv. Bd. v. Odebrecht S.A.*,
　2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018) ......................................................................2

*Willy v. Coastal Corp.*,
　503 U.S. 131 (1992) ...............................................................................................................3

*Woodward v. Metro Bank of Dall.*,
　522 F.2d 84 (5th Cir. 1975) ..........................................................................................9, 11

**Statutes**

15 U.S.C. §7903 ............................................................................................................................6

18 U.S.C. §2334 ........................................................................................................................2, 3

18 U.S.C. §2339B .................................................................................................................10, 11

**Rules**

Fed. R. Civ. P. 4 ..............................................................................................................1, 2, 3, 4

Fed. R. Civ. P. 8 .......................................................................................................................1, 9

N.Y.C.P.L.R. §302(a) ..................................................................................................................3

**Other Authorities**

U.S. Const. amend. V ..........................................................................................................3, 4, 5

U.S. Const. amend. XIV .....................................................................................................2, 3, 5

**PRELIMINARY STATEMENT**

Plaintiffs allege that Mr. Zhao violated the BSA, nothing more.[1] But the Second Circuit recently reaffirmed that the failure to create BSA-compliant AML programs does not translate into ATA liability. *Ashley v. Deutsche Bank Aktiengesellschaft*, __F.4th__, 2025 WL 2025448 (2025). Because Plaintiffs cannot allege, as Second Circuit and Supreme Court precedent requires, that Mr. Zhao intended to aid any (much less all) of 64 different alleged attacks, and because Mr. Zhao is not amenable to suit in this forum, his motion should be granted.

**ARGUMENT**

**I.  The FAC Fails Under Rule 8**

Mr. Zhao demonstrated that the FAC's mass of verbiage cannot be fairly interpreted. MTD.3. Plaintiffs' opposition only proves this point by stringing FAC paragraphs together in unforeseeable ways, *see, e.g.*, 2d.Opp.17 (linking ¶¶23, 641, and 687), and resting on prior briefing where the FAC is incomprehensible, *see, e.g.*, 2d.Opp.20-21.

**II.  The Court Lacks Personal Jurisdiction Over Mr. Zhao**

**A.  Proper Service Neither Occurred Nor Is Authorized**

1.  Service is a prerequisite to personal jurisdiction. *Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105 (1987). Plaintiffs claim service was accomplished under Rule 4(f)(3), but admit that service was accomplished in the United States and that Rule 4(f)(3) applies "outside the United States." 2d.Opp.6-7. To excuse this contradiction, Plaintiffs assert a "consensus" of district-court rulings, 2d.Opp.6, that neither exists, *see* ECF.63 at 15-16, nor could be binding if it did. The Court in any event is "not merely to count noses," *United States v. Hill*,

---

[1] This brief carries forward defined terms from Mr. Zhao's motion-to-dismiss brief (MTD) and cites Plaintiffs' response as "2d.Opp.," given their prior motion-to-dismiss opposition.

48 F.3d 228, 232 (7th Cir. 1995), and the Rules should be afforded "their plain meaning," *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007).

        2.       Plaintiffs' alternative argument that service complies with New York law, 2d.Opp.6, fails for reasons Mr. Zhao identified, ECF.63 at 16-17, and would trigger the Fourteenth Amendment's minimum-contacts test for this Court's personal jurisdiction inquiry, which Plaintiffs assert is inapplicable. *See infra* §II.B.1. Plaintiffs' other argument, that service is valid under the ATA's service provision, fails because, as this Court has held, service occurred abroad. ECF.94 at 10. ATA service is domestic. 18 U.S.C. §2334. Plaintiffs nonsensically claim that service can occur in the United States even if it is completed abroad. 2d.Opp.7. However, Plaintiffs' preferred precedent deems "the relevant circumstance [to be] where the defendant is, and *not* the location of the intermediary." *Washington State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018) (emphasis added). Plaintiffs cannot have it both ways.

    Besides, precedent forbids service on unauthorized agents, *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990), and that cannot be overridden by contravening court orders. Otherwise, Rule 4 would be superfluous as written. Under Plaintiffs' view, courts could avoid *any* rules by ordering service on anyone globally by delivery to anyone else. This is unprincipled and unpersuasive.

        B.       **The Court Lacks Personal Jurisdiction Over Mr. Zhao**

        1.       Plaintiffs' claim (2d.Opp.10-14) that *Fuld v. Palestine Liberation Org.*, 145 S. Ct. 2090 (2025), supports personal jurisdiction reflects their misreading of the case. *Fuld* concerned the constitutionality of the Promoting Security and Justice for Victims of Terrorism Act (PSJVTA), a federal statute that served as the predicate for personal jurisdiction over defendants, Palestine Liberation Organization and Palestinian Authority. The *Fuld* Court found that whether

2

the PSJVTA comported with due process was determined by the Fifth Amendment, not the Fourteenth Amendment's minimum-contacts test.

Plaintiffs cite *Fuld* to argue that a minimum-contacts test does not apply here, but *Fuld* made clear that a minimum-contacts test continues to apply to federal cases where state law (not a federal statute like the PSJVTA) supplies the basis of jurisdiction. *Id.* at 2101. Here, where service occurred (if at all) under Rule 4(f), the basis for personal jurisdiction remains the New York long arm statute, MTD.6. *See* N.Y.C.P.L.R. §302(a). The Fourteenth Amendment's minimum-contacts test thus applies. 145 S. Ct. at 2102. Plaintiffs' focus on the substantive "ATA cause of action" is inapposite. 2d.Opp.9.

Plaintiffs' other argument that the Fourteenth Amendment minimum contacts test is inapplicable because personal jurisdiction is proper under Rule 4(k) (which, unlike Rule 4(f)(3), addresses both service *and* personal jurisdiction) is also wrong. Rule 4(k)(1)(C), which permits jurisdiction when service is effected via a federal statute, is unavailable when service is effected via Rule 4(f), not the ATA (which requires U.S. service). 18 U.S.C. § 2334. Rule 4(k)(2) is unavailable because Plaintiffs cannot certify that Mr. Zhao is "not subject to suit in any state court of general jurisdiction," as they attempt to do, 2d.Opp.7. *Raanan v. Binance Holdings Ltd.*, 2025 WL 605594, at *5 (S.D.N.Y. Feb. 25, 2025) (finding plaintiffs could not rely on Rule 4(k)(2)). Plaintiffs directly contradict that certification by asserting service under New York law and alleging N.Y. contacts, *compare* 2d.Opp. at 14-15 (alter ego assertions) *with* ECF.69 at 26 (N.Y. contacts of supposed alter ego). Further, Rule 4(k)(2) demands proper service, which has not occurred, and can be applied only "consistent with the United States Constitution," *id.* 4(k)(2)(A) and (B), which in turn requires a legislative delegation of power that does not exist (in the absence of a state long-arm statute), *see Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992) ("federal courts,

3

in adopting rules, [are] not free to extend or restrict the jurisdiction conferred by a statute"). After Plaintiffs persuaded the Court to use Rule 4(f)(3)—in a manner its text forbids—their buyer's remorse does not justify their outcome-oriented improvisation.

Even if Rule 4(k) was the personal jurisdiction predicate here (it is not), *Fuld* did not endorse an "unbounded jurisdictional theory," and Rule 4(k) does not trigger the same federal concerns as the PSJVTA, which "reflects the political branches' balanced judgment of competing concerns over 'sensitive and weighty interests of national security and foreign affairs' and fairness" to two particular entities. *Id.* at 2107. Rule 4 was promulgated by the judiciary, which has no role in foreign affairs and no freedom to define its own jurisdiction without limits. *See Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 234 (5th Cir. 2022) (explaining that Rule 4(k) must be read as "just a procedural rule about issuing summonses"). It was not tailored to presidential and congressional prerogatives or limited in defendants or claims. Construing Rule 4 to permit unbounded judicial orders compelling individuals globally to defend U.S. suits—freed from constitutional constraints—would create "an imperial [j]udiciary." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2561 (2025). The separation-of-powers underpinnings of *Fuld* run in the opposite direction here.

Because of the diminished federal interest underpinning the personal jurisdiction predicate, a far greater showing of U.S.-based "activities" and "reasonableness" is needed here than in *Fuld*, which maintained these as relevant considerations. *See* 145 S. Ct. at 2108, 2109. Mr. Zhao's individual interests far exceed those of the *Fuld* defendants, who have boldly taken credit for terrorism against Americans. *Id.* at 2099. All Mr. Zhao's contentions under the minimum-contacts test transfer to this setting and demonstrate why the Fifth Amendment forecloses this case. Mr.

4

Zhao has no suit-related contacts with the United States that could support jurisdiction under *Fuld*. This warrants dismissal.

2.  Plaintiffs' backup minimum-contacts arguments are unpersuasive. 2d.Opp.13-15. Their alter ego position ignores the requirement that they show BHL and BAM were mere "shell[s]" or "stationery" when liability allegedly attached. *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 276 (2d Cir. 2023); MTD.10-13. These highly profitable enterprises are genuine going concerns, even as the FAC describes them. Plaintiffs unsurprisingly steer away from alter ego theory to "key decisions" by Mr. Zhao personally. 2d.Opp.13. They ignore, however, that what Mr. Zhao "decided not" to do, 2d.Opp.14, is not purposeful availment, MTD.6-9. Meanwhile, even if Mr. Zhao "benefit[ed] financially from the U.S. cryptocurrency market," 2d.Opp.14, the terrorists he allegedly assisted were abroad, as was the supposed assistance, and every essential component of the supposed claims. Plaintiffs' arguments describe a half-baked general jurisdiction based on U.S. business, which does not satisfy the Fifth or Fourteenth Amendment.

### III. The FAC Does Not State a Claim for Aiding-and-Abetting

The FAC alleges neither of JASTA's "twin requirements" of "knowing and substantial assistance" to each of 64 attacks by more groups than Plaintiffs can enumerate in briefing. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 491 (2023).

#### A. The FAC Does Not Plead Intentional Participation in Terrorist Acts

1.  Circuit precedent demands that Plaintiffs allege that Mr. Zhao took action "designed or performed with the intent to aid" the underlying terrorist attack. *Ashley*, 2025 WL 2025448, at *16. Plaintiffs admit that Mr. Zhao lacked any such intent and was instead driven solely by economic, "business" aims. 2d.Opp.1 (quoting ¶641). Plaintiffs implicitly concede the FAC does not (and cannot) "plead Zhao's intentional participation in terrorist acts," 2d.Opp.18,

5

by calling for a lower "knowledge" or "willful blindness" standard, 2d.Opp.20,22. But these have been squarely rejected. "[W]e know from *Twitter* that knowledge of one's role in terrorist activities by itself is insufficient," as "a JASTA claim requires 'intent to further [a terrorist organization's] terrorist activities.'" *Ashley*, 2025 WL 2025448, at *11, 15. Circuit precedent rejects liability based on "knowledge, acquiescence, carelessness, indifference, [and] lack of concern." *Id.* at *14 (citation omitted). Plaintiffs must allege that Mr. Zhao "participate[d]" in terrorist acts "as in something he wishes to bring about, that he seek[s] by his action to make it succeed." *Twitter*, 598 U.S. at 490. Plaintiffs improperly try "to collapse" the knowing-assistance test with the distinct "general awareness" element, which is "inappropriate." *Ashley*, 2025 WL 2025448, at *10 n.12.

Plaintiffs' quarrel with precedent leaves them no basis to distinguish it. Mr. Zhao demonstrated that this case is weaker than the one rejected in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, which held that, "[w]hen a company merely knows that 'some bad actors' are taking 'advantage' of its products for criminal purposes, it does not aid and abet," even if it "could adopt measures to reduce their users' downstream crimes." 145 S. Ct. 1556, 1567 (2025); MTD.14-16. Plaintiffs respond that *Smith & Wesson* "applied an inapposite legal standard." 2d.Opp.18. Not so. *Smith & Wesson* drew its standard from *Twitter*, 145 S. Ct. at 1567-69, and *Ashley* looked to *Smith & Wesson*, *see* 2025 WL 2025448, at *14, 16, 17. Nor was *Smith & Wesson* a criminal case. The Mexican government, which cannot prosecute crimes in U.S. court, was a civil plaintiff. *Id.* at 1563. One aiding-and-abetting statute at issue was civil, 15 U.S.C. § 7903(5)(a)(iii), and the Court did not differentiate it from a parallel criminal aiding-and-abetting statute, *see* 145 S. Ct. at 1565-66.

Meanwhile, *Ashley* applied JASTA and leaves Plaintiffs no legal "daylight." ECF.107 at 2. The court dismissed a JASTA complaint against banks, even though the plaintiffs alleged that

6

they aided terrorists (the "Syndicate") by "contribut[ing] to…money laundering operations" through "U.S.-dollar transactions for entities connected to a well-known Syndicate money launderer" and lying "to conceal and sustain" the scheme. 2025 WL 2025448, at *4-5. The court assumed the "aid was pervasive and systemic," but affirmed dismissal because "the complaint does not support the inference that the Banks' money laundering operations were designed or performed with the *intent to aid the Syndicate.*" *Id.* at *16 (emphasis added). Rather than show the intent lacking in *Ashley*, Plaintiffs deny that they need to.

        2.      The FAC's failure to plead intent is dispositive. The FAC provisions they string haphazardly together do not meet even Plaintiffs' preferred knowledge standard, let alone the governing intent test. MTD.15-17. From front to back, their opposition brief falls short.

Plaintiffs begin with a quote from the government concerning Mr. Zhao's knowledge of "users in Iran and other sanctioned countries." 2d.Opp.1 (quoting ¶641). But sanctioned nations and their people are not the same as terrorist groups, *see* ¶773 (alleging IRGC connections of only "three percent" of Iranians), and knowledge falls short under *Ashley*. *See* 2025 WL 2025448, at *4-5, 15-16 (knowledge of involvement in money laundering is insufficient). Next, the background section's first two of four charges against Mr. Zhao are that he "caused Binance to forgo an effective AML program" and "knowingly declined to enforce sanctions restrictions on Iran." 2d.Opp.2-3. This just restates (and double counts) BSA and international-sanctions violations, which are not JASTA violations.[2] *See infra* §III.C. The final two statements of the background section, 2d.Opp.4-5, lead to quadruple counting: they allege efforts to conceal BSA violations from the government by diverting "U.S. users from Binance.com onto the Binance US exchange" and

---

[2] Plaintiffs never confront the fact that the government asserted international-sanctions violations against BHL—not Mr. Zhao. MTD.21.

representing in public that BHL complied with the BSA. In sum, while Plaintiffs deny that they "are attempting to privately enforce the BSA or OFAC sanctions," 2d.Opp.26, their allegations do little else. The background section closes with no citation of plausible allegations satisfying either *Ashley*'s standard or Plaintiffs' contrary standard.

The FAC cites sprinkled in the opposition's argument section likewise show no culpability for Mr. Zhao. The supposed "coaching users to use VPNs," 2d.Opp.19, is not alleged to involve terrorist groups, ¶¶520, 643, extending only as far as users *in* sanctioned jurisdictions, ¶754; *see also* ¶¶751-52 (alleging BHL's knowledge of Iranians, not Mr. Zhao's knowledge of terrorists). Plaintiffs' brief misdescribes the alleged retention of "illicit actors" on the exchange, 2d.Opp.19, which does not implicate Mr. Zhao (but rather BHL's chief compliance officer), ¶¶635-38; *see also* ¶¶633, 1259 (same). The Nobitex and cryptocurrency-mixer allegations also do not plausibly implicate Mr. Zhao. ¶¶479-95, 814 (conclusory references); ¶¶763-65 (no reference); ¶¶530-32 (no reference). From there, Plaintiffs revert to BHL's BSA failings that it did not report suspicious activity, ¶¶527, 631. But broad policymaking is different from the personal acts that may subject an individual to liability. *Compare Lelchook v. Lebanese Canadian Bank*, 2024 WL 967078, at *6 (S.D.N.Y. Mar. 6, 2024). And Plaintiffs do not satisfy the alter ego standard, which is higher for liability than personal jurisdiction. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 139 (2d Cir. 2010).

*Ashley* confirms the FAC's pleading deficiencies. Plaintiffs' high-water-mark allegation is that one account holder "associated with" ISIS and Hamas was permitted to take his funds and exit the exchange. 2d.Opp.3. Setting aside that Mr. Zhao is not alleged to be involved in that episode, ¶1259, it falls short under *Ashley* (and concerns only two groups and hence only a subset of claims). In that case, a bank was asked by the government to cut off clients and refused. 2025 WL 2025448,

at *3. That did not suggest intent to aid terrorism because it was not alleged that the bank "routinely cut off those clients whom the U.S. military asked it to but then refused in the instant case." *Id.* at *14. The FAC likewise identifies no facts suggesting special treatment for terrorists.

Plaintiffs come close to conceding knowledge away in admitting they "may" not have alleged that Mr. Zhao knew "the specific identity of each terrorist user." 2d.Opp.20. This differentiation of terrorist groups is itself fatal. Different groups perpetrated different crimes against different Plaintiffs, so each Plaintiff must allege that Mr. Zhao abetted terrorist acts of the group that harmed *that* Plaintiff.[3] Even if some Plaintiffs arguably showed this, they effectively admit most do not. It violates Rule 8 for Plaintiffs to disguise this with an unwieldy pleading.

### B.     The Alleged Nexus with Attacks Is Too Remote to Be Cognizable

Plaintiffs attempt to compensate for their *mens rea* failing by claiming "a nexus between [Mr. Zhao's] actions" and terrorist attacks. 2d.Opp.23. But Plaintiffs have no answer to Mr. Zhao's opening brief, which explained that, under the sliding-scale approach Plaintiffs invoke, 2d.Opp.18, "direct and extraordinary" "assistance" proves "conscious participation in the underlying tort" only where it says something circumstantial about intent. *Twitter*, 598 U.S. at 492. This is evident in cases *Twitter* cited on this point. *See Woodward v. Metro Bank of Dall.*, 522 F.2d 84, 98 (5th Cir. 1975) (finding evidence of nexus insufficient where it "bears only on the bank's willingness to assume risks; it does not tend to show conscious intent to violate Rule 10b-5"); *Landy v. FDIC*, 486 F.2d 139, 163 (3d Cir. 1973) (finding "assistance" insufficient, "although necessary for the accomplishment of…fraud" because it "was intended to achieve another independent goal—the generation of commissions").

---

[3] For example, ¶1259, discussed *supra*, does not support Plaintiffs' claims based on Hezbollah attacks.

9

Plaintiffs point to their prior briefing on nexus, 2d.Opp.23, which alleges cryptocurrency's utility to terrorists, generally. ECF.69 at 14-18, 22, 40, 43-44. But *Ashley* rejected the approach of focusing "'primarily on the value' of…services to" terrorists. 2025 WL 2025448, at *12. Nothing Plaintiffs say about nexus suggests that Mr. Zhao "associated" himself with terrorist "wrongful actions." *Id.* Moreover, BAM and BHL demonstrated that the FAC links no "specific transactions to the Attacks." ECF.76 at 7; *see also* ECF.79 at 12. Plaintiffs fail in that again, citing allegations merely that terrorists can make use of cryptocurrency—and traditional currency—from *anywhere*. ¶¶588-94; ¶¶598-606; ¶¶621-28; ¶¶817-29; ¶¶1481-85; ¶¶1492-99. Despite their denials, 2d.Opp.24, Plaintiffs' argument is built entirely on a rejected "fungibility" theory. *Ashley*, 2025 WL 2025448, at *15.

### C. Failure to Create BSA-Compliant AML and KYC Policies Does Not Create Aiding-and-Abetting Liability

That reduces Plaintiffs' claim against Mr. Zhao to his plea agreement. Mr. Zhao demonstrated that the government's BSA claims are too far removed from JASTA to support Plaintiffs' claim, and that Plaintiffs effectively seek to enforce the BSA under JASTA, which is improper. MTD 20-23. Plaintiffs' response is noisy in form but weak in substance. 2d.Opp.25-27.

Plaintiffs concede that JASTA creates no BSA right of action and that "JASTA's elements are not coterminous with" the BSA. 2d.Opp.26. Still, they assert that "conduct" may "violate[] the BSA" and "also result[] in substantial assistance to terrorists." *Id*. But that assertion does not make BSA violations "sufficient." *Id.* A JASTA claim demands much *beyond* BSA violations, which are passive—omissions in establishing guardrails Congress believed certain businesses should affirmatively erect—but aiding-and-abetting requires active and purposeful assistance with terrorists. There is an inherent conflict in equating these two notions. This gulf matters for the same reason Circuit precedent emphasizes the difference between JASTA and 18 U.S.C. §2339B.

10

*Compare Ashley*, 2025 WL 2025448, at *15 (making this point) *with* MTD.20 (same point). Because a defendant may violate §2339B by assisting an organization with "knowledge of the organization's connection to terrorism," but fall short of "intent to further its terroristic activities," as JASTA requires, JASTA demands a showing beyond what §2339B demands, *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329-30 (2d Cir. 2018); *Ashley*, 2025 WL 2025448, at *15. That is all the more true here, where the BSA and JASTA claims share no common element. Allegations that Mr. Zhao "caused Binance to forgo an effective AML program," "declined to enforce sanctions restrictions on Iran," "shunted U.S. users from Binance.com onto the Binance US exchange," and made "false" statements about BSA compliance, 2d.Opp.2-5, state only BSA violations. JASTA requires much more.

*Ashley* confirms this point. It found no JASTA liability despite allegations that banks facilitated money laundering that would (if true) mark the "willful violation of U.S. law." 2d.Opp.1 (citation omitted); *see* 2025 WL 2025448, at *4-5, 15-16. This was "insufficient." *Id.* *16. *Ashley* suggests that ancillary legal violations may bear on a JASTA claim only if they go to intent, such as where a company's violations treat terrorists "differently than it treat[s] its other clients." *Id.* at *14, 16. For example, violations in *Kaplan v. Lebanese Canadian Bank, SAL*, amounted to "special treatment," as the defendant bank afforded "special exceptions to its Hizbollah-related customers" from legal duties the defendant otherwise followed. 999 F.3d 842, 850, 862 (2d Cir. 2021); *Ashley*, 2025 WL 2025448, at *12. But the policies Mr. Zhao allegedly promulgated applied evenly across clients.[4] The BSA violations therefore show merely "willingness to assume risks," *Woodward*,

---

[4] The exception here was "VIP market makers," who allegedly "provided critical liquidity" to BHL. ¶1551. But these were "New York-based firms," not oversees terrorists. *Id.*

11

522 F.2d at 98, or an "independent goal" of profit-making, *Landy*, 486 F.2d at 163, not aiding-and-abetting.[5]

### IV. The FAC States No Claims for Conspiracy or Primary Liability

Plaintiffs' lose the benefit of *Raanan* beyond their aiding-and-abetting claim, as the decision rejected the primary-liability arguments Plaintiffs proffer here. 2025 WL 605594, at *16-17. No other precedent supports their claims. Mr. Zhao cited numerous authorities rejecting Plaintiffs' theory at each element, MTD.23-27, and Plaintiffs cite no authority in response, 2d.Opp.27-28.

## CONCLUSION

The Court should dismiss all claims against Mr. Zhao.

Dated: August 5, 2025  
       New York, New York

Respectfully submitted,

*/s/ Joanna F. Wasick*

**BAKER & HOSTETLER LLP**

Joanna F. Wasick  
Marco Molina  
45 Rockefeller Plaza  
New York, NY 10111  
(212) 589-4200  
jwasick@bakerlaw.com  
mmolina@bakerlaw.com

Teresa Goody Guillén (*pro hac vice*)  
Washington Square, Suite 1100  
1050 Connecticut Ave., N.W.  
Washington, D.C. 20036  
(202) 861-1500  
tgoodyguillen@bakerlaw.com

*Counsel for Defendant Changpeng Zhao*

---

[5] *Raanan*, 2025 WL 605594, did not have the benefit of *Ashley*, erroneously treated alleged BSA violations as sufficient, *id.* at *21-22, and did not involve the problems afoot here, where Plaintiffs seek to transfer aiding-and-abetting across different terrorist groups.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1 and Section 5(a) of the Court's Individual Rules and Practices in Civil Cases, I hereby certify that the foregoing memorandum of law complies with the word count limitation as set forth therein. As measured by the word processing system used to prepare it, the foregoing memorandum of law contains 3,491 words.

Dated: August 5, 2025                                    */s/ Joanna F. Wasick*
                                                         Joanna F. Wasick