# EXHIBIT 1



1920 L Street, NW, Suite 835, Washington, DC 20036
(202) 629-3530 | sparacinopllc.com

August 19, 2025

Counsel,

  I write regarding our proposal to select bellwether attacks, which we described in detail in our July 18 letter, during meet and confers, and through subsequent email exchanges. As described in more detail below, this proposal would allow the Court and the parties to proceed with certainty from the August 26 conference with a bellwether structure in place. Because our bellwether structure does not require the parties to reach agreement as to any specific bellwether Plaintiffs, the Court can issue a certain date for the close of discovery from the conference and the case can finally move forward.

  As we have explained, our proposal is consistent with Judge Vargas's instruction to come up with a reasonable, efficient approach to bellwether discovery. *See, e.g.*, July 14 Hearing Tr. 41-42 ("Tr."). She suggested that the parties select a "representative" set of bellwether plaintiffs who would "allow the parties to have some indication as to the strength and weaknesses of various types of claims." *Id.* As she detailed, "the idea would be to have a victim of an attack versus a family member of an attack versus a couple of different types of attacks, and perhaps different terrorist groups so that we have some sampling representative of the wider claims that we don't have to bog down in discovery on 500-plus plaintiffs." Tr. 42:6-11. At bottom, though, the "point of this process is to streamline, to make this efficient, and make this something workable." Tr. 43:21-22. And she explained that focusing on "four, five, maybe six" attacks would be an efficient way to accomplish this. Tr. 41:23.

  Plaintiffs laid out such a proposal in our July 18 letter. To date, Defendants have not presented a counterproposal. Indeed, it was not until August 4 that Defendants responded to our proposal—and even then, raised merely a handful of questions. To be sure, Defendants have continued to seek detailed, plaintiff-specific information and documents. But receipt of those documents is entirely unnecessary for the parties to agree to—or for the Court to order—a bellwether structure. And at no point have Defendants argued that our bellwether attack proposal is inefficient or flawed, especially compared with the alternative of simultaneously conducting discovery into each of the 64 attacks, and the 500-plus Plaintiffs, in the Amended Complaint.

  We continue to believe that the proposal described in our July 18 letter is an efficient way to move this case toward resolution. Our proposal would produce a representative set of attacks, from which a representative set of bellwether plaintiffs could be selected. Thus, our proposal would allow each party to test the strengths and weaknesses of various types of claims.

  We reiterate here the contours of our proposal for selecting Bellwether Attacks, and we propose two options for selecting Bellwether Plaintiffs from these attacks.

**Bellwether Attacks**

As discussed in our July 18 letter, Plaintiffs propose the following six Bellwether Attacks, from which Bellwether Plaintiffs could be selected:

| Attack Date | Attack Geography | Primary Terrorist Groups Involved | Number of Victims | Attack Modality | Amended Complaint Citation |
|---|---|---|---|---|---|
| 2018-2020 | Yemen | Houthis, Hezbollah | 6 | Kidnapping | XIV(C)(1) |
| 1/14/2019 | Afghanistan | al-Qaeda | 5 | Suicide Bombing | XIV(E)(2) |
| 1/16/2019 | Syria | ISIS | 12 | Suicide Bombing | XIV(F)(3) |
| 1/8/2020 | Iraq | IRGC, Hezbollah, Kataib Hezbollah | 193 | Missiles, Rockets | XIV(A)(9) |
| 9/28/2022 | Iraq | Hezbollah, Kataib Hezbollah | 3 | Rockets, UAVs | XIV(A)(24) |
| 10/7/2023 | Israel | Hamas, PIJ | 45 | Complex Attack | XIV(D)(3) |

These are the same attacks noted in our July 18 letter.[1] From these six bellwether attacks, bellwether plaintiffs would be selected according to one of the approaches described below.

These attacks would directly cover more than half of the total number of individual Plaintiffs. Moreover, we believe that these Bellwether Attacks comprise a representative cross-section of the 64 attacks in the Amended Complaint, and we have selected them without regard to the particular associated Plaintiffs (other than to ensure there are at least three associated Plaintiffs, for reasons explained below). Each of the terrorist groups featured most prominently in the Amended Complaint are represented. There are various attack modalities. We have also selected a variety of geographies from within the Greater Middle East, which we view as the most representative attack locations. Moreover, the timing for the attacks is weighted in favor of those years when Binance.US was operating.

---

[1] Because you did you respond to our invitation to select one of two attacks committed by ISIS, we selected one of those attacks for inclusion as a Bellwether Attack. We chose it because it has more Plaintiffs and is from a geography that would not be represented otherwise. We are, however, open to replacing the 1/16/2019 ISIS attack with the 8/26/2021 ISIS attack described in our July 18 letter, if Defendants prefer.

These attacks would allow the parties to select bellwether plaintiffs of various victim types, as Judge Vargas suggested: direct victims who were killed in the attack; direct victims who were wounded in the attack and are still living; and indirect victims who have various familial relationships to the direct victims. Therefore, focusing on these Bellwether Attacks would allow the parties to have the information they need to settle the remaining attacks, by having insight as to liability and damages differ by victim type, group, country, and attack modality.

**Selecting Bellwether Plaintiffs**

Plaintiffs propose two options for selecting Bellwether Plaintiffs:

**Option 1:** Once Bellwether Attacks are selected, the Parties have 20 days to negotiate which types of documents or information should be produced for each Plaintiff involved in a bellwether attack. Plaintiffs would have 45 days to produce the agreed-upon types of documents and information. The agreed-upon discovery would focus on information necessary for selecting Bellwether Plaintiffs; it would not entail full merits discovery.

Following that production, the parties would have 15 days to each select two plaintiffs per Bellwether Attack to serve as Bellwether Plaintiffs.

We propose that across each parties' slate of proposed Bellwether Plaintiffs, there be at least one of each of the following: one Bellwether Plaintiff who is a **direct victim** of their respective Bellwether Attack;[2] one Bellwether Plaintiff who is the **spouse (or widow)** of a direct victim; one Bellwether Plaintiff who is a **parent or step-parent** of a direct victim; one Bellwether Plaintiff who is a **child or step-child** of a direct victim; and one Bellwether Plaintiff who is a **sibling or half-sibling** of a direct victim.[3]

The parties would meet within those 15 days and use a random number generator to randomly select a **third individual** for each attack who would serve as an Alternate Bellwether Plaintiff, to hedge against the risk of a plaintiff leaving the case prematurely (due to, for example, illness or death).[4]

---

[2] "Direct victims" include the Estates of victims who were killed in a Bellwether Attack.

[3] In the event the parties select the same individual to be a Bellwether Plaintiff, the parties would use a random number generator to randomly select a replacement Bellwether Plaintiff.

[4] The Alternate Bellwether Plaintiff selection would occur through random selection from the types of plaintiffs noted above. In other words, the parties would use a random number generator to randomly select one direct victim of their respective Bellwether Attack; one Bellwether Plaintiff who is the spouse (or widow) of a direct victim; one Bellwether Plaintiff who is a parent or step-parent of a direct victim; one Bellwether Plaintiff who is a child or step-child of a direct victim; and one Bellwether Plaintiff who is a sibling or half-sibling of a direct victim, and one Bellwether Plaintiff from the remaining Bellwether Attack entirely at random.

Mechanically, this would mean that all potential Bellwether Plaintiffs are given a number. A direct victim would be chosen at random. Then, for the selection of a spouse or widow, all potential

3

**Option 2:** Alternately, for each Bellwether Attack, the parties would use a random number generator to select two Bellwether Plaintiffs and one Alternate Bellwether Plaintiff.[5] Discovery would then proceed in the ordinary course as to those Plaintiffs.

Both options would allow this case to move forward expeditiously. Discovery would focus on six attacks, twelve Bellwether Plaintiffs, and six Alternate Bellwether Plaintiffs—a dramatic focusing of the case, as compared with conducting discovery into 64 attacks and 533 Plaintiffs.

We invite your prompt feedback on these proposals. We hope to efficiently and promptly resolve this issue, so we can move the case forward as the Court directed.

All the best,

Matthew J. Fisher
Sparacino PLLC

*Counsel for Plaintiffs*

---

Bellwether Plaintiffs from the same attack as the first selection would be eliminated. The selection would proceed until all six alternates are chosen.

[5] This selection would proceed randomly in the same manner as with Alternate Bellwether Plaintiffs for Option 1 (*see supra* n.4).

4