# EXHIBIT 6



1920 L Street, NW, Suite 835, Washington, DC 20036
**(202) 629-3530** | sparacinopllc.com

August 18, 2025

Miles,

We write in response to your August 13 email regarding Defendants' requests for information and documents from Plaintiffs. To be clear, the information and documents below are not necessary for the parties to agree to, or the Court to order, a bellwether *structure*. We have proposed that the bellwether structure consist of six attacks, with one bellwether Plaintiff chosen by each side. Defendants' insistence on receiving all the documents below before even engaging on structure will further delay this case for many months, contrary to the Court's direction for the parties to expeditiously move this case forward.

We also reiterate our objection that all or nearly all of what Defendants request is unnecessary for selecting appropriate bellwether plaintiffs for discovery and trial. Nonetheless, in the interest of compromise, we are willing to provide certain information and documents, as described below. We hope this will help move this case toward an efficient resolution. Our production of certain information and documents does not waive previously raised objections or constitute any waiver of our rights.

Where we have committed to provide information or documents, we will endeavor to do so expeditiously—taking into the account the difficulty, time, and burden of conducting outreach to 533 Plaintiffs. Certain information will be produced on a rolling basis as a result. The bellwether selection process does not have to wait until all the requested information is produced; doing so imposes unnecessary delay.

The requests contained in your August 13 email are reproduced in bold below. Our responses to your requests and the associated questions raised in your email follow.

**(1) We requested that you produce the information that Plaintiffs identified and committed to produce in your July 18th letter (i.e., the victim's date of birth, address, employer at the time of the attack (for direct victims), and Veterans Affairs (VA) disability rating; and whether the victim has had a claim approved by the U.S. Victims of State Sponsored Terrorism (USVSST) Fund).**

We are willing to provide that information—the victim's date of birth, address, employer at the time of the attack (for direct victims), and Veterans Affairs (VA) disability rating (for direct victims); and whether the victim has had a claim approved by the U.S. Victims of State Sponsored Terrorism (USVSST) Fund)—for all Plaintiffs as applicable. We anticipate providing the information in our possession shortly—possibly as early as later this week, likely in tabular format. To the extent we do not currently possess that information about any Plaintiffs, we will continue working to obtain that information, and information will be supplemented on a rolling basis.

**(2) We asked that each Plaintiff provide a basic fact sheet containing the following information:**

**A.      For each victim or represented person, the biographical details you have already agreed to provide for victims plus: legal name and any prior legal names; citizenship/ U.S. National status at the time of the incident and today (if different); and date of death (if deceased).**

We will not produce a "basic fact sheet" for each Plaintiff. We are, however, willing to provide the "biographical details [we] have already agreed to provide for victims plus: legal name and any prior legal names; citizenship/ U.S. National status at the time of the incident and today (if different); and date of death (if deceased)" for all plaintiffs. We anticipate providing the information in our possession shortly—possibly as early as later this week, likely in tabular format. To the extent we do not currently possess that information about any Plaintiffs, we will continue working to obtain that information, and information will be supplemented on a rolling basis.

**B.      Categorization of claimed injuries such as: physical injury; wrongful death; loss of consortium; emotional distress; economic dependency; solatium (emotional harm from the death of a family member); and/or any other injuries (to be explained).**

We are not going to provide a categorization of claimed injuries on a Plaintiff-by-Plaintiff basis. We do not think doing so is necessary to the selection of bellwether plaintiffs; we expect similarly situated Plaintiffs will seek similar categories of damages.

We note, however, that as a general matter, for all "indirect" victims—*e.g.*, family members of the individual who was killed or seriously wounded in a terrorist attack—we anticipate seeking solatium damages. We believe solatium damages encompasses the type of injuries that may be recoverable from other of your listed categories (*e.g.*, wrongful death or loss of consortium).

Also, as a general matter, for all "direct" victims of terrorist attacks (and, where applicable, their estates), plaintiffs anticipate seeking damages for their physical and mental pain and suffering, as well as economic damages, such as lost income.

**C.      A list of any other actions related to the attack in which the Plaintiff or represented person is, or was, a party.**

We will produce a list of cases that pertain to the attack at-issue in this lawsuit in which a Plaintiff was or is involved. Our list will include cases in which neither Sparacino PLLC nor Holwell Shuster & Goldberg LLP represented (or presently represents) Plaintiffs. We anticipate providing the information in our possession shortly—possibly as early as later this week, likely in tabular format. This information may be supplemented on a rolling basis.

**D.      Estimated monetary value of the injuries.**

We are not willing to provide estimates of the monetary value of the injuries for all Plaintiffs at this time. For the purposes of the bellwether selection process, knowing the types of

2

damages that Plaintiffs may seek (as discussed above) is all the information necessary to select representative plaintiffs. This is consistent with the approach of courts in this Circuit. *See Hable v. Metro-North Commuter R.R.*, 2019 WL 4673564, at *4 (S.D.N.Y. Sept. 24, 2019) ("[C]ourts have consistently held that Local Rule 33.3 'presumptively excludes' information such as 'descriptions of the nature and extent of injuries.'" (quoting *Kunstler v. City of New York*, 2006 WL 2516625, at *5 (S.D.N.Y. Aug. 29, 2006))); *see also Nunez v. City of New York*, 2013 WL 2149869, at *8 (S.D.N.Y. May 17, 2013) ("A list of the plaintiffs' alleged injuries and treatment is presumptively excluded by Local Civil Rule 33.3.").

**E.     Whether an application has been filed with the U.S. Victims of State Sponsored Terrorism Fund, and, if not approved, what the current status is, including the reason for denial, if denied.**

We will produce information that shows whether a Plaintiff has received an Eligibility Notice from the U.S. Victims of State Sponsored Terrorism Fund ("Fund"). The Eligibility Notice reveals whether a Plaintiff's claim has been accepted. We may produce that information in tabular format, through documents, or by using a combination of both. We anticipate providing the information in our possession shortly—possibly as early as later this week. This information will be supplemented on a rolling basis. Based on our current understanding, though, a small minority of Plaintiffs have received Eligibility Notices from the Fund.

**F.     Whether the victim has applied for reimbursement or compensation from any other source in relation to their injuries, and the status of any such application.**

We are not presently aware of any Plaintiffs who have applied for reimbursement or compensation from any other sources in relation to their injuries. (Note that we are not interpreting "other sources" as used in your request as including lawsuits or similar claims against other defendants asserted in U.S. or foreign courts.) Regardless, we do not think this information is relevant to the bellwether selection process. We will consider producing this information in the ordinary course of discovery as it relates to those Plaintiffs who are selected as bellwether plaintiffs, subject to an appropriate request and our objections, including on the grounds that such materials are categorically irrelevant under the "collateral source rule" and similar legal doctrines. We reserve all rights regarding the future production of this information, should it exist.

**(3) We asked that you provide the information and materials set forth in the document I attached to my August 9th email, including documents related to each Plaintiff's ability to bring claims under the Anti-Terrorism Act (i.e., documents showing U.S. citizenship and/or the requisite familial relationships), and documents related to the death and/or injury of each Plaintiff (i.e. documents sufficient to show injury or death during an attack; documentation provided by the U.S. government relating to the passing of the principal victim; proof of residency in the country where the attack occurred, materials produced in other cases; and submissions with applications for claims to the USVSST fund or other sources (like Bituach Leumi (The National Insurance Institute of Israel))).**

**(4) We asked that you provide the additional documentation in the attachment that Joanna sent in her August 10th email, i.e., certain verified or certified documents related to each**

**Plaintiff's standing and ability to bring claims under the Anti-Terrorism Act, including but not limited to documents verifying U.S. national status, injury and/or death in a terrorist attack, familial relationship to the victim, capacity to represent a victim's estate, etc.**

Without waiving the general and specific objections made to the same and similar requests in our earlier correspondence and in our previously served responses and objections to Defendants' requests for production, we plan to produce documents related to each Plaintiff's ability to bring claims under the Anti-Terrorism Act and certain documents related to the death and/or injury of each Plaintiff as we have collected them to date. Many of the documents we produce will be "verified," "certified," or otherwise official copies, although we do not think producing "verified" or "certified" versions of each document is necessary at this early phase of discovery. At this stage, the parties are supposed to select bellwether attacks and plaintiffs; you do not need evidence that is considered authenticated under the Federal Rules of Evidence to engage in that selection process.

We do not, however, anticipate producing each type of document listed in your August 9th or August 10th requests for each Plaintiff. Among other reasons, some requests do not apply to certain Plaintiffs. Certain requests are also redundant in light of your other requests. For example, a document showing that a Plaintiff died in Syria would obviate the need to produce proof of Syrian residency. We do not plan to re-produce all materials produced by any Plaintiff in any other case.

We anticipate producing documents in our possession shortly—possibly as early as later this week. We anticipate that the documents that we produce in this first production will be more than adequate to inform the bellwether selection process. Nonetheless, because our collection is ongoing, we expect to produce additional documents on a rolling basis.

**(5) We asked that you produce the analysis referenced in your complaint that purports to identify "Binance transactions" with wallets associated with certain FTOs and other potentially relevant actors.**

We will not produce the blockchain analysis as you have described above, or any materials related to that blockchain analysis. If Plaintiffs' blockchain analysis remains relevant to eventually proving Plaintiffs' claims, the relevant blockchain analysis will be disclosed in the ordinary course of discovery through an expert report, during the expert discovery phase of the case.

Your request that we produce the blockchain analysis now is premature and unnecessary to inform the selection of bellwether plaintiffs. That lack of necessity is undoubtedly why information about said analysis was not even part of the overreaching 25-page bellwether-related questionnaire you provided in June. Your request essentially involves requesting a mini-summary judgment/*Daubert* proceeding as a prerequisite to beginning discovery on a subset of Plaintiffs; that is an extreme deviation from the ordinary path of litigation. There is no question that Plaintiffs are not required to produce this information until the expert discovery phase of the case.

Moreover, Plaintiffs' pre-complaint blockchain analysis and related materials are protected from disclosure by a host of privileges, including the attorney-client privilege and the attorney work-product privilege. Critically, there is no single "blockchain analysis" document Plaintiffs

could produce; the analysis is the result of iterative communications by attorneys and agents, which are core work-product materials and communications, distinguishable from any authority you have cited.

Nor has there been any "at issue" waiver of any such privilege. The blockchain analysis cited in the complaint is one means by which Plaintiffs established a good-faith, Rule 11 basis for making certain allegations in the complaint. The blockchain analysis was not necessary for Plaintiffs' claims, and Plaintiffs may elect to prove their allegations in other ways, anyway. *See Dover v. Brit. Airways, PLC (UK)*, 2014 WL 5090021, at *2 (E.D.N.Y. Oct. 9, 2014) (no at-issue waiver of material underlying statistical analysis cited in complaint; such result "makes good sense" to "enable[] counsel, without fear of waiving work product protection, to do the pre-filing investigation necessary to comply with the duty set forth in Rule 11(b)(3)" and "the 'plausibility' requirement of Rule 8."); *Gen. Motors LLC v. Ashton*, 2022 WL 16817711, at *3 (D.N.J. Nov. 7, 2022) ("simply alleging facts uncovered in an investigation does not put the investigation 'at issue'"); *Ambac Assur. Corp. v. DLJ Mortg. Cap., Inc.*, 939 N.Y.S.2d 333, 335 (1st Dep't 2012) (no at-issue waiver by discussing in complaint third-party consultant's review of loans; discussion supplied "good-faith basis for the allegations made").

The unpublished decision you cite does not mandate disclosure here. Among other reasons, that case did not mandate the disclosure of materials cited in a complaint *prior to the selection of bellwether plaintiffs*; that case is not even in the context of bellwether selection but appears to have taken place several years into the litigation. Also, the mandated disclosure of expert analysis there happened after the court had decided the motion to dismiss. And plaintiffs there, moreover, did not "dispute that [p]laintiffs waived work-product protection as to the analyses specifically referred to in the complaints, as evidenced by [p]laintiffs' willingness to produce those analyses and their supporting documents." *In re Commodity Exchange, Inc. Gold Futures and Options Trading Litig.*, 14-MD-2548, Dkt. No. 377, at 4 (S.D.N.Y. Feb. 25, 2019). Here, there has been no such waiver; Plaintiffs have not selectively produced any blockchain analyses or supporting documents. Finally, unlike here, the materials at issue in the unpublished decision you cite were easily severable from attorney work, involving a discrete analysis done by an already disclosed expert. Here, the work is inextricably intertwined with attorney work and communications.

To be clear, Plaintiffs recognize that, if they choose to rely on those allegations to prove their claims, they will need to substantiate them and subject them to adversarial testing. But the appropriate time to do so is during expert discovery—not during the bellwether-selection process.

All the best,

Matthew J. Fisher
Sparacino PLLC

*Counsel for Plaintiffs*