# EXHIBIT 8

# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Joanna F. Wasick
direct dial: 212.589.4635
jwasick@bakerlaw.com

August 20, 2025

**VIA EMAIL**

Matthew J. Fisher
Sparacino PLLC
1920 L Street, NW, Suite 835
Washington, DC 20036

Re:    *Troell et al. v. Binance Holdings Ltd. et al., No. 24-cv-07136 (S.D.N.Y.)*

Counsel:

Defendants write in response to Plaintiffs' August 18 and 19 letters regarding a bellwether process and information Defendants have requested from Plaintiffs related to the same.

As an initial matter, we need to level-set on the purpose of a bellwether, when to make decisions related to a bellwether, and the type of information necessary for the same. Plaintiffs' position—that a bellwether structure can be decided now, based primarily on complaint allegations and unverified information—runs contrary to the law in this district that directs that bellwether decisions should only occur after verifiable information is available to identify common issues and representative plaintiffs. *Adams v. Deva Concepts, LLC*, 2023 WL 6518771, at *1, 5, 6 (S.D.N.Y. Oct. 4, 2023) (deferring a decision on a bellwether, and ordering further discovery, where there was only "unverified or dubiously verified" information).

**<u>Legal Background</u>**

The goal of a bellwether process is to resolve common issues or claims, enhance prospects of settlement, and "answer troubling causation or liability issues common to the universe of claimants." *In re Chevron U.S.A.*, 109 F.3d 1016, 1019 (5th Cir. 1997). To fulfill this goal, a proper bellwether turns on finding bellwether plaintiffs that are representative of the universe of claimants. *Id.* at 1020. However, selection of representative plaintiffs for bellwethers "**cannot be made in a vacuum**." *Meranus v. Gangel*, 1991 WL 120484, at *1-2 (S.D.N.Y. June 26, 1991) (emphasis added) (ordering limited interrogatory discovery and document productions to determine the suitability of a bellwether). Selection "requires sufficient information on variables such as the plaintiffs' characteristics, the type of injury, the claims brought, the time when claims arose or a case was filed, or the availability of certain defenses." *Adams*, 2023 WL 6518771, at *4-5 (finding unverified information, such as sworn questionnaires, does not suffice). Self-reported and unverified statements by plaintiffs are not "sufficient information." *Id.* at * 6-8.

Atlanta   Austin   Chicago   Cincinnati   Cleveland   Columbus   Dallas   Denver   Houston   Los Angeles
New York   Orange County   Orlando   Philadelphia   San Francisco   Seattle   Washington, DC   Wilmington

Matthew J. Fisher
August 20, 2025
Page 2

The goal of early resolution, however, **must not trump basic justice and fairness**, and courts must take care that a consolidated process does not veer "too far in the interest[] of expediency and [] sacrifice basic fairness in the process." *See In re Repetitive Stress Inj. Litig.*, 11 F.3d 368, 373-74 (2d Cir. 1993) (quoting *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 353 (2d Cir. 1993)), *petition for rehearing granted in part on other grounds*, 35 F.3d 637 (2d Cir. 1994). Case management must keep the litigation moving efficiently, "**without truncating necessary pretrial preparation or distorting the presentation of issues**." MANUAL FOR COMPLEX LITIGATION (Fourth) § 22.2 (Fed. Jud. Ctr. 2004) (emphasis added).

**Plaintiffs' Proposal**

Here, Plaintiffs' proposal—to decide on a "bellwether structure" of six attacks (chosen by Plaintiffs) and 12 victims of those attacks, *while permitting plenary discovery on Defendants*—is untenable, unfair, and fails to fulfill a bellwether process's purpose of "provid[ing] the Parties with useful data points about the strength of their respective cases." *In re Zimmer M/L Taper Hip Prosthesis*, 2021 WL 5963392, at *1 (S.D.N.Y. Dec. 16, 2021) (cleaned up).

First, institution of a bellwether process at this point is premature. As explained further below, certain discovery from each Plaintiff is necessary before any representative plaintiffs can be chosen; otherwise no one—not even the Court—can be certain that the bellwether plaintiffs are representative of the universe of plaintiffs and claims. Indeed, a resolution is not possible until discovery provides sufficient information about the merits of each claim (including whether each Plaintiff even has standing to bring such claim) and which Plaintiff intends to, and can, seriously prosecute their claims. Likewise, discovery is needed to reveal Plaintiffs' theory of causation and identify commonalities (if any) between Plaintiffs.

Neither Defendants nor the Court can begin to decide on a "bellwether structure" without, **at a minimum**, the information Defendants have repeatedly requested and again identified in our August 13 email. *See* Aug. 13 email from M. Wiley, attached hereto as **Ex. A** (earlier messages and decision attachment omitted). The information Plaintiffs offered in their July 18 letter (which they have yet to produce) does not suffice—especially in light of your admissions that Plaintiffs' injuries and their status as eligible ATA plaintiffs have never been adequately verified. *See* Aug. 8, 2025 email from M. Fisher, attached hereto as **Ex. B** (stating that information, such as authenticated death certificates and medical records, was still being collected).

Second, Plaintiffs have failed to show how their bellwether proposal will streamline discovery—aside from excusing them from discovery requirements to which they are otherwise obligated under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1). As Plaintiffs have made clear during our many meet-and-confers, under their bellwether proposal, Defendants would still be obligated to participate in discovery as though there were no bellwether process at all. *See* **Ex. B** (stating that "[b]ecause we allege that Defendants provided pervasive and systemic assistance throughout the period of attacks, and we allege that relevant transactions occurred after the attack itself . . . artificially tying a discovery cut-off to the last-in-time Bellwether Attack could baselessly exclude relevant information from being produced.").

Third, without the information outlined above, Plaintiffs' proposed bellwether process does nothing to promote settlement or early resolution, as the proposal leaves Defendants—and the Court—blind to issues of causation, types of injuries across Plaintiffs, extent to which each Defendant may be implicated, gravity of damages, relevant medical information, and so on. For example, if all but one victim of a specific

Matthew J. Fisher
August 20, 2025
Page 3

attack suffered minor injuries, but Plaintiffs' proposed bellwether proposal allows for the chance that the one gravely injured victim could be selected as the representative bellwether plaintiff—only Plaintiffs would have access to the information to correct this failure of the bellwether process to identify a representative plaintiff. A process that blinds the Court and Defendants to basic discovery as to all Plaintiffs will not produce a representative bellwether plaintiff—at least not a bellwether plaintiff that anyone can rely on for purposes of narrowing the issues before the court or advancing settlement.

As another example, Plaintiffs' assertion of how a victim of a January 14, 2019 Al-Queda attack would be representative of other Plaintiffs in non-bellwether attacks treats "representation" in only the most superficial (and self-serving) way. *Id*. Plaintiff's proposition that a victim of the January 14 attack is (or could be) representative of other victims of other Al-Qaeda attacks (as Plaintiffs maintain), ignores critical issues, such as whether there is support showing a transfer involving the Binance exchange prior to an attack, how close in time a transfer occurs compared to an attack, the amount of time between attacks of the same group, whether there is any support to argue that Defendants intended to support a given attack—to name a few. Likewise, Plaintiffs basing representativeness on country of attack is entirely arbitrary, as liability turns on, among other things, who received the funds at issue, how those funds were used, and Defendants' understanding and intent related to the same.

Fourth, Plaintiffs' selection of attacks (from which a bellwether plaintiff may be chosen) is clearly a case of one side picking the "best" plaintiffs for their case, which has been widely recognized as an improper approach. *See, e.g.*, *In re Chevron U.S.A.*, 109 F.3d at 1019-1020. And, again, such selection ignores that the bellwether selections should be representative claims. *See, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practice & Prods. Liab. Litig.*, 2010 WL 4024778 at *2 (S.D. Ill. Oct. 13, 2010) ("it will be a waste of everyone's time and resources, if cases are selected which do not accurately reflect the run-of-the-mill case"). The only way for Plaintiffs to prove otherwise—to show that the Court and Defendants can rely on the bellwethers as representative—is to provide the requested discovery as to all Plaintiffs. *See* **Ex. A** (providing details).

## Defendants' Proposal

Instead of rushing into a premature bellwether decision that would likely doom its utility, Defendants first insist that **all** of the information outlined in our August 13 correspondence be provided. This includes the analysis referenced in your complaint that purports to identify "Binance transactions" with wallets associated with certain FTOs. The analysis is clearly relevant under Rule 26 of the Federal Rules, would serve to identify variables and common issues related to causation in this matter, and is discoverable. As Defendants have explained, any assertion of work product protection is unfounded given Plaintiffs' reliance on the analysis in both the First Amended Complaint in Plaintiffs' oppositions to Defendants' motion to dismiss. *See generally*, *In re Commodity Exch., Inc. Gold Futures and Options Trading Litig.*, 2019 WL 13046984 (S.D.N.Y. Feb. 25, 2019) (plaintiffs waived any work product protections extending to expert analysis cited in their complaint and related underlying materials). Plaintiffs' refusal to produce the analysis (and even the documents underlying it) is particularly disingenuous given Plaintiffs' continued request for transactional data related to 15,000 wallets Plaintiffs chose because of that analysis.

Once Defendants have the requested information, the Parties can catalogue the entire universe of cases that comprise the litigation, attempt to divide the cases into several discrete categories based on prominent variables, and then determine test cases that, (1) accurately reflect the individual categories of claims in the overall litigation, (2) illustrate the likelihood of success and measure of damages within each respective

Matthew J. Fisher
August 20, 2025
Page 4

category, and (3), illuminate the forensic and practical challenges of presenting certain types of cases to a jury. *See Adams*, 2023 WL 6518771, at *3 (advising that this three-step process be followed for and prior to bellwether selection).

To the extent the parties are unable to decide on a bellwether structure at that point, the Parties should brief the court on whether or how to proceed with a bellwether, including what issues are common to all claimants the bellwether would resolve. This process could proceed currently with other discovery in the case and should therefore pose no delay.

Defendants look forward to addressing this proposal at our upcoming meet-and-confer.


Sincerely,

*s/ Joanna F. Wasick*
Joanna F. Wasick
*Counsel for Defendant Changpeng Zhao*

*s/ Sesi V. Garimella*
Sesi V. Garimella
*Counsel for Defendant Binance Holdings Ltd.*

*s/ Thania Charmani*
Thania Charmani
*Counsel for Defendant BAM Trading Services Inc.*

# EXHIBIT A

| | |
|---|---|
| **From:** | Wiley, Miles C. |
| **To:** | Bansal, Anirudh; "Ian Miller" |
| **Cc:** | Adam Goldstein; Wasick, Joanna F.; Garimella, Sesi V.; Thania Charmani; Torres, Ivan; Daniel Tramel Stabile; Matt Fisher; Tejinder Singh; Raj Parekh; Tony Asuncion; Stacey Wilson; Geoff Eaton; Ryan Sparacino; Vincent Levy; Enzer, Samson; Mortenson, Gregory; McKnight, Katherine L.; Molina, Marco; Goody Guillén, Teresa; Christopher M. Kim |
| **Subject:** | RE: Troell v. Binance ESI Protocol |
| **Date:** | Wednesday, August 13, 2025 11:57:46 AM |
| **Attachments:** | Troell - Bellwether Document Requests (8-9).docx<br>Preliminary Documents from Plaintiffs.docx<br>In re gold fixing, dkt 377.pdf |

Adam, Ian,

Thank you for taking the time on Monday morning to discuss our requests for information and documents from Plaintiffs related to bellwether selection, which Joanna and I summarized in emails to you on August 9th and 10th. As discussed, we believe it is helpful to consider these requests in five categories. Below we have: (i) set forth these categories; (ii) stated our understanding of your positions on the materials (in red font); and (iii) set forth further follow-ups (in bold font). We would appreciate updates to these questions during our meet and confer later today.

Best,
Miles

(1) We requested that you produce the information that Plaintiffs identified and committed to produce in your July 18th letter (*i.e.*, the victim's date of birth, address, employer at the time of the attack (for direct victims), and Veterans Affairs (VA) disability rating; and whether the victim has had a claim approved by the U.S. Victims of State Sponsored Terrorism (USVSST) Fund).

- <span style="color:red">We understand that you are willing to provide information responsive to these requests for each victim of the attacks you propose to use as bellwether attacks and to the extent you already have the information for other Plaintiffs/victims. You indicated you would begin producing materials on a rolling basis, but did not indicate when.</span>

- **Are Plaintiffs willing to provide information responsive to these requests for all Plaintiffs/victims? What percentage of Plaintiffs/victims do you have this information for?**

- **When will your rolling productions begin? When do you estimate that you will complete the productions you have agreed to make?**

(2) We asked that each Plaintiff provide a basic fact sheet containing the following information:
A. For each victim or represented person, the biographical details you have already agreed to provide for victims plus: legal name and any prior legal names; citizenship/ U.S. National status at the time of the incident and today (if different); and date of death (if deceased).

- <span style="color:red">We understand that you are willing to consider providing this information for all Plaintiffs/victims but that there are some instances where you may not be able to obtain the requested information, like prior legal names.</span>

- **Please confirm if you are willing to provide this information for all Plaintiffs/victims and, if so, your estimated timing to provide this information.**

B.  Categorization of claimed injuries such as: physical injury; wrongful death; loss of consortium; emotional distress; economic dependency; solatium (emotional harm from the death of a family member); and/or any other injuries (to be explained).

- You indicated that you needed to get back to us on this request.

- **Are Plaintiffs willing to provide this information for all Plaintiffs/victims? If so, what is your estimated timing to provide this information?**

C.  A list of any other actions related to the attack in which the Plaintiff or represented person is, or was, a party.

- You indicated that you would be able to provide this information in cases where you represent the Plaintiff.

- **Are you willing to collect this information from Plaintiffs with respect to cases where you do not represent them?**

- **Are you aware of any Plaintiffs that are parties in other actions related to the attack in which the Plaintiff or represented person is or was a party where you do not represent them?**

D.  Estimated monetary value of the injuries.

- During our meet and confer you indicated that this information may be more difficult to provide because it is largely for a jury.

- **Obviously a jury may ultimately consider many issues about which we are seeking currently available information; are Plaintiffs willing to provide these estimates for all Plaintiffs?**

E.  Whether an application has been filed with the U.S. Victims of State Sponsored Terrorism Fund, and, if not approved, what the current status is, including the reason for denial, if denied.

- We understand that you can provide us with this information.

- **When will you start providing this information and when do you estimate you will complete your production?**

F.  Whether the victim has applied for reimbursement or compensation from any other source in relation to their injuries, and the status of any such application.

- During our meet and confer you asked for further details about this request.

- Without limiting this request, we understand that, for example, families of those killed

in terrorist acts can seek compensation through Bituach Leumi (The National Insurance

- **Will Plaintiffs produce the analysis referenced in your complaint, documents underlying the same, and any portion thereof?**

Institute of Israel)? Are Plaintiffs willing to provide information regarding these types of appearances, and an apportion thereof?

(3) We asked that you provide the information and materials set forth in the document I attached to my August 9th email, including documents related to each Plaintiff's ability to bring claims under the Anti-Terrorism Act (*i.e.*, documents showing U.S. citizenship and/or the requisite familial relationships), and documents related to the death and/or injury of each Plaintiff (*i.e.* documents sufficient to show injury or death during an attack; documentation provided by the U.S. government relating to the passing of the principal victim; proof of residency in the country where the attack occurred, materials produced in other cases; and submissions with applications for claims to the USVSST fund or other sources (like Bituach Leumi (The National Insurance Institute of Israel))).

(4) We asked that you provide the additional documentation in the attachment that Joanna sent in her August 10th email, *i.e.*, certain verified or certified documents related to each Plaintiff's standing and ability to bring claims under the Anti-Terrorism Act, including but not limited to documents verifying U.S. national status, injury and/or death in a terrorist attack, familial relationship to the victim, capacity to represent a victim's estate, etc.

- For these third and fourth categories, we understand that your position is that bellwether attacks should be selected first, primarily based on allegations in the FAC, and, after that selection has been made, you are willing to produce the requested records for Plaintiffs/victims in proposed bellwether attacks, but that you object to providing the requested documents for Plaintiffs/victims injured in other attacks, except for birth certificates and passports that you already have in your possession.

- **Are Plaintiffs willing to provide the documents requested (or some subset thereof) for all Plaintiffs/victims?**

- **When will Plaintiffs begin productions of the documents that you are willing to provide?**

(5) We asked that you produce the analysis referenced in your complaint that purports to identify "Binance transactions" with wallets associated with certain FTOs and other potentially relevant actors.

- During our meet and confer you explained that this analysis does not constitute a single unified report and that several underlying documents relate to the analysis. We also understand that you are asserting a work product objection in response to this request. As you know, your complaint relies heavily on this analysis and you relied on this analysis in opposing Defendants' motion to dismiss. This placed these materials at issue in the litigation and any work product protections that may have existed have been waived. *See, e.g.*, *In re Commodity Exchange, Inc. Gold Futures and Options Trading Litigation*, 14-MD-2548, Dkt. No. 377 (S.D.N.Y. Feb. 25, 2019) (plaintiffs waived any work product protections extending to expert analysis cited in their complaint and related underlying materials). You are improperly attempting to use the purportedly privileged information as a sword to advance your claims against defendants while relying on the work product doctrine to shield the materials from disclosure. Production of the materials is appropriate.

- **Will Plaintiffs produce the analysis referenced in your complaint, documents underlying the same, or any portion thereof?**

---

**Miles C. Wiley, IV** *(he/him/his)* **| Partner**
**Cahill Gordon & Reindel LLP**
32 Old Slip, New York, NY 10005
**t**: +1.212.701.3395 | **m**: +1.703.203.8361 | MWiley@cahill.com
www.cahill.com

## **Documents from Plaintiffs to Support Bellwether Selection**

**I.     Documents Relating to Plaintiff's Ability to Bring Action (Whether Direct or Representative)**

    A.    Documents showing U.S. citizenship (passport, birth certificate, certificate of naturalization, etc.)

    B.    Documents showing requisite familial relationships, including marriage, adoption, or authority to represent the estate where applicable

**II.    Documents Relating to Death and Injuries (whether physical or emotional)**

    A.    Documents sufficient to show injury or death during particular attack

    B.    Documentation provided by the U.S. government (including the U.S. military) in relation to the passing of the principal victim, including, but not limited to, Consular Reports of Death of an American Citizen Abroad

    C.    Proof of residency in country where attack occurred, if principal victim was residing there

    D.    Any materials produced in other cases

    E.    Packets of any information submitted in connection with applications for claims to USVSST fund, or other sources

## Preliminary Discovery from Plaintiffs

**I.** **Documents Relating to Plaintiff's Ability to Bring Action (Whether Direct or Representative)**

    A.    Documents sufficient to show proof of U.S. citizenship (passport, birth certificate, certificate of naturalization, etc.)

        1.    Certified via seal and signature (FRE 902(1)) or via signature and certification (FRE 902(2))

    B.    Documents showing requisite familial relationship, including marriage, adoption, or authority to represent the estate where applicable

        1.    Birth certificate(s) demonstrating alleged familial relationships

            a)    If U.S.: certified via seal and signature (FRE 902(1)) or via signature and certification (FRE 902(2))

            b)    If foreign: certified via Hague Apostille or consular legalization, depending on country of origin (FRE 902(3))

        2.    Marriage certificate(s) demonstrating alleged familial relationships

            a)    If U.S.: certified via seal and signature (FRE 902(1)) or via signature and certification (FRE 902(2))

            b)    If foreign: certified via Hague Apostille or consular legalization, depending on country of origin (FRE 902(3))

        3.    Adoption papers / certificates demonstrating alleged familial relationships, if relevant

            a)    If U.S.: certified via seal and signature (FRE 902(1)) or via signature and certification (FRE 902(2))

            b)    If foreign: certified via Hague Apostille or consular legalization, depending on country of origin (FRE 902(3))

        4.    Letters of Testamentary, Letters of Administration, or other legal documentation demonstrating authorization to represent the estate of the decedent

            a)    If U.S.: certified via seal and signature (FRE 902(1)) or via signature and certification (FRE 902(2))

            b)    If foreign: certified via Hague Apostille or consular legalization, depending on country of origin (FRE 902(3))

**II.** **Documents Relating to Death and Injuries (whether physical or emotional)**

    A.    Medical records evidencing injury during attack

*Attorney Work Product*
*Privileged and Confidential*

B.     Death certificates of principal victim, if deceased

    1.    If U.S.: certified via seal and signature (FRE 902(1)) or via signature and certification (FRE 902(2))

    2.    If foreign: certified via Hague Apostille or consular legalization, depending on country of origin (FRE 902(3))

C.     Documentation provided by the U.S. government (including the U.S. military) in relation to the passing of the principal victim, including, but not limited to, Consular Reports of Death of an American Citizen Abroad

    1.    Certified via seal and signature (FRE 902(1)) or via signature and certification (FRE 902(2))

D.     Travel records (flights, hotels, etc.) sufficient to show that principal victim was in the location where the attack occurred, when it occurred

    1.    Certified via declaration / affidavit under FRE 902(11) or FRE 902(12), or through testimony of the custodian

E.     Proof of residency in country where attack occurred, if principal victim was residing there

    1.    This could take many forms, but would likely either be a business record or a public record / document.

        c)    If a business record: certified via declaration / affidavit under FRE 902(11) or FRE 902(12), or through testimony of the custodian

        d)    If a U.S. public record / document: certified via seal and signature (FRE 902(1)) or via signature and certification (FRE 902(2))

        e)    If a foreign public record / document: certified via Hague Apostille or consular legalization, depending on country of origin (FRE 902(3))

F.     Any materials produced in other cases

G.     Packets of any information submitted in connection with applications for claims to USVSST fund, or other sources.

# EXHIBIT B

| | |
|---|---|
| **From:** | Matt Fisher |
| **To:** | Wasick, Joanna F.; Torres, Ivan; Mortenson, Gregory; Enzer, Samson; Garimella, Sesi V.; Bansal, Anirudh; "Charmani, Thania"; Stabile, Daniel Tramel; McKnight, Katherine L.; Molina, Marco; Goody Guillén, Teresa |
| **Cc:** | Adam Goldstein; Stacey Wilson; Vincent Levy; "Ian Miller"; Christopher M. Kim; Ryan Sparacino; Raj Parekh |
| **Subject:** | RE: Binance | Bellwether follow up |
| **Date:** | Friday, August 8, 2025 3:53:22 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | 2025-07-18 Troell - Ltr to Defs re Bellwether Proposal.pdf |

Hi Joanna --- Thank you for following up after Tuesday's meet and confer. While we appreciate the summary you provided, several sections omit the corresponding explanation that we provided for our position, and other sections are inaccurate. To help ensure that everyone is on the same page, I have added red text where appropriate to better reflect the conversation and Plaintiffs' position. I also direct you once again to the letter that we sent on July 18 (re-attached here, for convenience) that outlines our proposal in depth.

Thanks,
Matt

-----

Ian and Matt,

To confirm what Plaintiffs informed us at ~~yesterday's~~ Tuesday's meet-and-confer on their proposed bellwether process:

A.  Plaintiffs propose one Bellwether Trial that would encompass all claims arising from 4-6 attacks ("Bellwether Attacks," e.g., those identified in Plaintiffs' July 18 letter to Defendants).

B. A Bellwether Trial would not limit the relevant time period for discovery on/from Defendants.  The end date would aim to include discovery relevant to claims arising from the last attack alleged in the FAC, regardless of whether that end date is later than the last Bellwether Attack.

Because we allege that Defendants provided pervasive and systemic assistance throughout the period of attacks, and we allege that relevant transactions occurred after the attack itself (*e.g.*, martyrs' payments, *see, e.g.*, AC ¶975(b)), artificially tying a discovery cut-off to the last-in-time Bellwether Attack could baselessly exclude relevant information from being produced.

C.  Defendants would not have plenary discovery on Plaintiffs.  Rather, Defendants would have limited, basic discovery, such as addresses, obituary notices, family testimony, etc., from plaintiffs asserting claims arising from the Bellwether Attacks so that the Parties can identify Bellwether Plaintiffs, i.e., 1-2 plaintiffs asserting claims arising out each of the Bellwether Attacks.

As we have explained, conducting full-blown "plenary discovery" (which we assume would include things like medical records) is neither efficient at this stage, nor necessary to inform the Bellwether selection process.

We have proposed collecting and producing several types of documents (listed in your

response above and in our July 18 letter). You have mentioned that you want to be sure you can substantiate your request that we provide documents that could confirm plaintiffs have standing, and that the direct victims were in fact injured or killed as alleged in the Amended Complaint. We believe the information we have proposed producing accomplishes those aims. You have yet to explain what additional information you may need, or what information you think we were ordered to provide at this stage.

To be clear, once Bellwether Plaintiffs are selected, those Bellwether Plaintiffs would be subject to discovery as in a non-bellwether case.

D. Rulings on the Bellwether Trial would have no preclusive effect on claims that do not arise from a Bellwether Attack. That is, if Defendants were found not liable for claims arising from Bellwether Attack No.1 by a specific terrorist group, Plaintiffs would still assert claims arising from other attacks by that same terrorist group.

This may depend on whether a special verdict form is used and the nature of that verdict form. That said, you are likely correct that if Defendants are found not to be liable for "Bellwether Attack No. 1," committed by Hamas, for example, different plaintiffs injured in a different attack by Hamas may not be precluded as a matter of law from seeking to assert claims related to that different attack. Practically, though, a verdict in Defendants' favor on "Bellwether Attack No. 1" could inform whether those other plaintiffs would pursue those claims, and it could inform settlement possibilities.

During the meet-and-confer, you also responded to the questions I sent earlier this week in the email below. Please confirm that I have noted these responses correctly:

1. How would a bellwether plaintiff asserting claims from the 1/14/2019 attack be representative of, say, a plaintiff asserting claims from the 12/12/2023 attack? **It would not.**

As discussed on the call, not every proposed Bellwether Attack (which the 1/14/2019 attack is) will be representative of every other attack in the case. And those two examples are particularly dissimilar attacks, as the chart below makes clearer:

|  | **January 14, 2019** | **December 12, 2023** |
|---|---|---|
| **Primary Terrorist Group Involved** | Al-Qaeda | Hezbollah; Kataib Hezbollah |
| **Attack Modality** | Suicide Bombing | Rocket Attack |
| **Attack Geography** | Afghanistan | Syria |
| **Direct Victim: Killed or Wounded?** | Killed | Wounded |
| **Family Member(s) Asserting Claims** | Yes. Widow; Sons; Brother. | None |

Attacks for which the 1/14/2019 attack could likely be more representative include, at a

minimum, those:
- Involving al-Qaeda;
- Where the attack modality was a suicide bombing;
- That occurred in Afghanistan;
- That occurred in 2019;
- Where the direct victim was killed; and
- Where family members are asserting individual claims.

We do not anticipate that a jury's damages award to, for example, a widow of someone who was killed in a terrorist attack would differ much depending on whether that person was killed by al-Qaeda or Hamas, or in Afghanistan or Israel.

2. Do you see other common variables across plaintiffs besides common attack and whether they have direct/derivative claims? **A damages assessment for a plaintiff bringing a claim based on an injured or deceased family member would be informative as to a damages assessment by another plaintiff with the same type of familial relationship with the injured/deceased attack victim.**

This is largely correct, with the caveat that it's the "same *or similar*" type of familiar relationship. For example, damages awarded to a victim's stepmother would likely be informative as to damages awarded to a victim's biological mother. This issue has come up repeatedly in the FSIA context, so I wanted to flag it.

3. How would your bellwether proposal limit discovery? **It would not materially limit Plaintiffs' discovery on Defendants, but Defendants would have limited discovery on Plaintiffs.**

Plaintiffs' proposal would likely not materially limit Defendant-facing discovery. It would, however, likely limit Defendants' discovery burden by reducing the scope of expert discovery; the parties would likely not need to engage attack-attribution experts for each of the 64 attacks.

Defendants would be able to conduct discovery into the Bellwether Plaintiffs; it would not be "limited discovery." To the extent discovery is "limited," the only limit is that Defendants would not conduct discovery into the non-Bellwether Plaintiffs.

For example, if we were to have the first bellwether trial on the 1/8/2020 attack, would the relevant time period for document production end 1/8/2020? **No.**

Correct; the reasoning is explained above.

4. How would your proposal limit proof at trial? **It would not.**

This is inaccurate. During the meet and confer, we outlined several ways in which Plaintiffs' proposal could limit proof at trial. Plaintiffs' proposal could likely cut down time spent on expert testimony (*e.g.*, attack attribution to an FTO; medical expert testimony); it could likely cut down (or at least focus) proof at trial with respect to connecting Defendants' behavior to particular attacks; and it could of course dramatically reduce the amount of testimony from victims.

And, as we mentioned, despite many invitations, Defendants have never offered a competing bellwether proposal, nor explained why a non-bellwether approach would be efficient for the parties or a good use of judicial resources.

5. If, in a bellwether trial, Defendants were found not liable for injuries arising from the 1/8/2020 attack, would other Plaintiffs' claims arising from different attacks by one or more of the same terrorist groups be precluded? **No.** If not, how do you see such a verdict narrowing issues for non-1/8/2020 claims? **It would not.**

Similar to our response to Point D, above, this may depend on whether a special verdict form is used and the nature of that verdict form. That said, we do not think that the claims of other plaintiffs who were harmed in other attacks could be precluded as a matter of law from asserting those claims. Practically, though, a verdict in Defendants' favor could inform whether those other plaintiffs may decide to pursue those claims, and it could inform settlement possibilities.

6. Similarly, if there was a bellwether trial on the 1/14/2019 attack, and Defendants were found to have liability, what effect would that have on other claims? **It might facilitate settlement.**

Correct; it could serve as a proxy for liability and damages more broadly, which could help facilitate settlement.

During the meet-and-confer, you also stated that you were still collecting information from Plaintiffs related to standing, such as authenticated death certificates and medical records, and that you would try to identify the information that you do have prior to the August 20 conference.

We have collected and are collecting information, as mentioned above. For the avoidance of doubt, we are not planning to collect medical records at this stage, in light of the Court's comment during the last hearing that "choos[ing] appropriate plaintiffs" does not require "document requests seeking all of these people's medical information at the outset." 7/14/25 Hearing Tr. 46:9-12. We will produce these materials on a rolling basis, and we hope to begin productions soon.

Please let me know if this is accurate.

Thank you,
Joanna

**Joanna F. Wasick**
She | Her | Hers
Partner

_____

[                    ]

45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4635
M +1.917.494.5239

jwasick@bakerlaw.com
bakerlaw.com

 

---

**From:** Wasick, Joanna F.
**Sent:** Monday, August 4, 2025 8:55 PM
**To:** Matt Fisher <matt.fisher@sparacinopllc.com>; Torres, Ivan <ITorres@cahill.com>; Mortenson, Gregory <GMortenson@cahill.com>; Enzer, Samson <SEnzer@cahill.com>; Garimella, Sesi V. <SGarimella@cahill.com>; Bansal, Anirudh <ABansal@cahill.com>; 'Charmani, Thania' <ACharmani@winston.com>; Stabile, Daniel Tramel <DStabile@winston.com>; McKnight, Katherine L. <kmcknight@bakerlaw.com>; Molina, Marco <mmolina@bakerlaw.com>; Goody Guillén, Teresa <tgoodyguillen@bakerlaw.com>
**Cc:** Adam Goldstein <adam.goldstein@sparacinopllc.com>; Stacey Wilson <stacey.wilson@sparacinopllc.com>; Vincent Levy <vlevy@hsgllp.com>; Ariella Kahan <akahan@hsgllp.com>; 'Ian Miller' <IMiller@hsgllp.com>; Ryan Sparacino <ryan.sparacino@sparacinopllc.com>
**Subject:** RE: Binance | Bellwether follow up

Hi Matt,

Some questions on the bellwether email below (acknowledging the follow-up 7/18 letter).

Is your proposal that we have 4 (or 6) separate bellwether trials (i.e., one per attack) or 1 trial with all 4/6 you identified?

Can you further describe what effects/efficiencies Plaintiffs think an attack(s)-specific bellwether trial would have?  Specifically:

1.  How would a bellwether plaintiff asserting claims from the 1/14/2019 attack be representative of, say, a plaintiff asserting claims from the 12/12/2023 attack?

2.  Do you see other common variables across plaintiffs besides common attack and whether

they have direct/derivative claims?

3. How would your bellwether proposal limit discovery? For example, if we were to have the first bellwether trial on the 1/8/2020 attack, would the relevant time period for document production end 1/8/2020?

4. How would your proposal limit proof at trial?

5. If, in a bellwether trial, Defendants were found not liable for injuries arising from the 1/8/2020 attack, would other Plaintiffs' claims arising from different attacks by one or more of the same terrorist groups be precluded? If not, how do you see such a verdict narrowing issues for non-1/8/2020 claims?

6. Similarly, if there was a bellwether trial on the 1/14/2019 attack, and Defendants were found to have liability, what effect would that have on other claims?

If possible, any initial responses you could send prior to tomorrow's meeting would be helpful (and if it's too late, we can address them during our call).

Best regards,
Joanna

---

**From:** Matt Fisher <matt.fisher@sparacinopllc.com>
**Sent:** Monday, June 23, 2025 4:35 PM
**To:** Torres, Ivan <ITorres@cahill.com>; Mortenson, Gregory <GMortenson@cahill.com>; Enzer, Samson <SEnzer@cahill.com>; Garimella, Sesi V. <SGarimella@cahill.com>; Bansal, Anirudh <ABansal@cahill.com>; 'Charmani, Thania' <ACharmani@winston.com>; Stabile, Daniel Tramel <DStabile@winston.com>; McKnight, Katherine L. <kmcknight@bakerlaw.com>; Wasick, Joanna F. <jwasick@bakerlaw.com>; Molina, Marco <mmolina@bakerlaw.com>; Goody Guillén, Teresa <tgoodyguillen@bakerlaw.com>
**Cc:** Adam Goldstein <adam.goldstein@sparacinopllc.com>; Stacey Wilson <stacey.wilson@sparacinopllc.com>; Vincent Levy <vlevy@hsgllp.com>; Ariella Kahan <akahan@hsgllp.com>; 'Ian Miller' <IMiller@hsgllp.com>; Ryan Sparacino <ryan.sparacino@sparacinopllc.com>
**Subject:** Binance | Bellwether follow up

[External Email: Use caution when clicking on links or opening attachments.]

Counsel,

As promised during Friday's meet and confer and to ensure all parties are working from the same

starting point for the bellwether discussions, we outline below the tentative contours of Plaintiffs' bellwether proposal.

Plaintiffs believe it would be more efficient for all parties, and for the Court, to adopt a bellwether process for this lawsuit. A bellwether process is the norm for mass tort Anti-Terrorism Act cases.

For example, in *King v. Habib Bank Ltd.*—which featured over 350 plaintiffs alleging claims that a Pakistani bank aided-and-abetted terrorist attacks by terrorist groups operating in Afghanistan—the parties agreed on, and the Court so-ordered, the use of a bellwether approach to discovery and trial. *See King v. Habib Bank Ltd.*, No. 20-cv-4322 (S.D.N.Y.), ECF Nos. 68, 70, 80. In *King*, the bellwether pool was comprised of 12 bellwether plaintiffs who represented a "cross-section of attacks"—*i.e.*, "varying types of attacks and combinations of terrorist groups that allegedly conducted the attack"— over a five-year time span. The bellwether plaintiffs were differently situated; some were primary victims who were wounded in action, others were relatives of those who were killed in action.

Plaintiffs anticipate the parties can similarly reach agreement on the composition of a representative bellwether pool, and after having several preliminary discussions with Defendants (primarily Binance) about the overall approach and process, we think it makes the most sense for the parties to first focus on identifying and eventually agreeing on a set of 12-14 bellwether attacks of the 64 attacks at issue in the Amended Complaint upon which discovery and a first trial would focus. We think that the parties would likely agree that a single trial that directly addresses Defendants' liability for each of the 64 attacks would burden the parties and the Court.

Selecting bellwether attacks would allow discovery and trial to focus on Defendants' alleged liability across representative types of attacks—*i.e.*, attacks by different terrorist groups, using different modalities (*e.g.*, suicide bombing attacks, complex attacks, rocket attacks, hostage-taking, etc.), in different geographies, at different times. Plaintiffs believe that a jury's determination about Defendants' liability for 12-14 bellwether attacks could be a useful proxy as to how a jury might decide Defendants' liability for the non-bellwether attacks.

While the below list is provisional, we believe it would be productive to include the following attacks in the group of bellwether attacks:
- January 14, 2019 Suicide Bombing Attack in Afghanistan (al-Qaeda)
- January 16, 2019 Suicide Bombing Attack in Syria (ISIS)
- January 8, 2020 Attack on Al Asad Air Base in Iraq (IRGC, Hezbollah, Kataib Hezbollah)
- October 7, 2023 Attack in Israel (Hamas, PIJ)

Once bellwether attacks are selected, we can determine an appropriate number of bellwether plaintiffs to select from these attacks. As we pick bellwether plaintiffs, we would similarly strive for diversity in selection—some would be direct victims who were killed or wounded in the attacks, while others would be indirect victims (i.e., family members of direct victims).

We look forward to continuing the discussion with you, and we are open to hearing any proposals you

may have.

Best,
Matt

**Matt Fisher**
Sparacino PLLC

M: 847.529.3912
www.sparacinopllc.com

This email, and any attachment to it, is intended solely for use by the addressee and may contain legally privileged or confidential information. If you are not the recipient of this email, any dissemination, distribution, or copying of this email, and any attachments, is strictly prohibited. If you have received this email in error, please notify Sparacino PLLC by email or phone at (202) 629-3530, and please delete the email in question.

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended recipient
you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted,
lost, destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result of e-mail transmission.



July 18, 2025

Counsel,

I write to continue the parties' discussions about determining an appropriate bellwether process for discovery and trial. As Judge Vargas confirmed during the recent conference, she wants the parties to come up with a reasonable, efficient approach to bellwether discovery. *See, e.g.*, Tr. 41-42. She suggested that the parties select a "representative" set of bellwether plaintiffs who would "allow the parties to have some indication as to the strength and weaknesses of various types of claims." *Id.* As she detailed, "the idea would be to have a victim of an attack versus a family member of an attack versus a couple of different types of attacks, and perhaps different terrorist groups so that we have some sampling representative of the wide claims that we don't have to bog down in discovery on 500-plus plaintiffs." Tr. 42:6-11. At bottom, though, the "point of this process is to streamline, to make this efficient, and make this something workable." Tr. 43:21-22.

Plaintiffs recognize that Judge Vargas expressed concerns that our original proposal—which involved focusing on 12 attacks (and 24 plaintiffs)—was "excessive," Tr. 43:20. And we understand that Judge Vargas believes that focusing on "four, five, maybe six" attacks would be more efficient. Tr. 41:23.

**Picking Bellwether Attacks**

To actualize these goals and to promote efficient discovery (and later trial), Plaintiffs offer the following bellwether proposal for your consideration.

Due to the significant number of attacks in the Amended Complaint, we are inclined to target the high end of the range Judge Vargas suggested. We thus propose that the parties should agree upon **six attacks** from which bellwether plaintiffs could be selected. The bellwether attacks should involve a cross-section of **Foreign Terrorist Organizations (FTOs)** and **attack modalities** that are most prominently featured in the Amended Complaint. There should also be **temporal diversity**; that is, attacks from different years for which the relevant bellwether plaintiffs' claims would cover all three defendants.

To that end, Plaintiffs propose the following be used as bellwether attacks, from which bellwether plaintiffs could be selected:

| Attack Date | Attack Geography | Primary Terrorist Groups Involved | Number of Victims | Attack Modality | Amended Complaint Citation |
|---|---|---|---|---|---|
| 2018-2020 | Yemen | Houthis, Hezbollah | 6 | Kidnapping | XIV(C)(1) |
| 1/14/2019 | Afghanistan | al-Qaeda | 5 | Suicide Bombing | XIV(E)(2) |

| 1/8/2020 | Iraq | IRGC, Hezbollah, Kataib Hezbollah | 197 | Missiles, Rockets | XIV(A)(9) |
| 9/28/2022 | Iraq | Hezbollah, Kataib Hezbollah | 3 | Rockets, UAVs | XIV(A)(24) |
| 10/7/2023 | Israel | Hamas, PIJ | 45 | Complex Attack | XIV(D)(3) |

In addition to these five attacks, we think it makes sense to include one of the following two attacks committed by ISIS. We leave it to Defendants to choose, as we feel they are sufficiently comparable for bellwether representativeness purposes.

| Attack Date | Attack Geography | Primary Terrorist Groups Involved | Number of Victims | Attack Modality | Amended Complaint Citation |
|---|---|---|---|---|---|
| 1/16/2019 | Syria | ISIS | 12 | Suicide Bombing | XIV(F)(3) |
| 8/26/2021 | Afghanistan | ISIS | 10 | Suicide Bombing | XIV(F)(4) |

Focusing on these six attacks would adequately allow the parties to have some indication as to the strength and weaknesses of various types of claims, and would help to narrow discovery.

We believe that these proposed bellwether attacks comprise a representative cross-section of the 64 attacks in the Amended Complaint, and we have selected them without regard to the particular plaintiffs associated with them. Each of the FTOs featured most prominently in the Amended Complaint are represented. There are various attack modalities. We have also selected a variety of geographies from within the Greater Middle East, which we view as the most representative attack locations. Moreover, the timing for the attacks is weighted in favor of those years when Binance.US was operating. These attacks would allow the parties to select bellwether plaintiffs of various victim types: direct victims who were killed in the attack; direct victims who were wounded in the attack and are still living; and indirect victims who have various familial relationships to the direct victims.

Please let us know your position on this approach. If you disagree with this approach, please offer a counter-proposal for us to consider.

**Picking Bellwether Plaintiffs**

Once the bellwether attacks are selected, we would compile and provide to Defendants additional information about *all* of the individual plaintiffs whose claims arise from those attacks. After Defendants have the opportunity to review that information (and conduct whatever supplemental investigation they deem reasonable), the parties would **each pick one plaintiff from each attack, for twelve total trial bellwether plaintiffs, and one plaintiff from each attack would**

**randomly be selected as an alternate**, so that discovery is completed as to those alternates. Selecting two plaintiffs per attack would give better insight into damages and ensure that each side has its own opportunity to select a plaintiff for each attack. One alternate for each attack would hedge against the risk of a plaintiff dying or choosing to voluntarily dismiss their claims at a later stage.

Plaintiffs are working to, and prepared to, provide additional information about the victims who were involved in the bellwether attacks, mindful of Judge Vargas's comment that the "most relevant information would pertain to the damages that each of these individuals suffered." Tr. 45:25-46:1.

Accordingly, we are working to provide the following:
- The victim's date of birth;
- The victim's address;
- The victim's employer at the time of the attack (for direct victims);
- The victim's Veterans Affairs (VA) disability rating;
- Whether the victim has had a claim approved by the U.S. Victims of State Sponsored Terrorism (USVSST) Fund.

We anticipate sharing this information on a rolling basis. If there is additional information you deem necessary, please let us know and we will consider that request. For the avoidance of doubt, the sharing of information does not constitute an admission that the information necessarily bears on the amount of damages that should be awarded; plaintiffs reserve all rights to challenge defendants' attempts to mitigate liability or damages based on information we provide.

If you request additional information, we ask you to follow Judge Vargas's admonition that the purpose of disclosing additional information "at the outset of a bellwether" is to "choose the appropriate scope of discovery"—and not "to replace discovery." Tr. 46:8-16. In particular, "choos[ing] appropriate plaintiffs" does not require "document requests seeking all of these people's medical information at the outset," Tr. 46:9-12, and the previously shared Plaintiff Fact Sheet was "wholly excessive for simply getting a representative sample," Tr. 44:19-20.

**Request To Meet and Confer**

Please let us know when you are available to meet and confer **next week** to discuss our bellwether proposal. We propose meeting for one hour during any of the following timeslots (all times ET):
- July 22 – 10:30am-2:00pm; 3:00-5:00pm
- July 23 – 12:00-2:00pm; 3:00-5:00pm
- July 24 – 10:00-11:45am; 2:00-5:00pm

This discussion is separate from, and in addition to, our request to meet and confer regarding the government productions.

We hope to efficiently and promptly resolve this issue, so we can move the case forward as the Court directed.

All the best,

Matthew J. Fisher
Sparacino PLLC

*Counsel for Plaintiffs*