October 3, 2025

**VIA ECF**
Hon. Jeannette A. Vargas, U.S.D.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 703
New York, NY  10007

> RE:   *Troell et al. v. Binance Holdings Ltd. et al.*, No. 1:24-cv-07136 (S.D.N.Y.)

Dear Judge Vargas:

The Parties respectfully submit this joint letter to update the Court on the status of their meet and confers regarding the government productions.

**Defendants' Position**

As set forth in BHL's September 24, 2025 letter, Defendants are seeking to appropriately balance their production obligations in this case with sufficient consideration for the protection of personal data of Binance employees and third parties (including customers) present in the government productions, including by seeking permission from the Court to take steps to minimize Defendants' exposure to legal risks under foreign data privacy laws.  The parties have exchanged drafts of an addendum to the existing protective order in this case, which would govern all future productions in this action, including the OFAC e-communications and non-e-communications.  The parties have reached agreement on several aspects of that addendum, including the addition of a supplemental layer of protection for materials designated as Attorneys' Eyes Only ("AEO").  However, several points of disagreement as to that protective order addendum—and the corresponding impacts on redactions and protections to documents produced in this action—still remain between the parties, including:

**Information security**.  Because the produced data includes sensitive personal, financial, trade secrets, and subject to statutory or regulatory confidentiality mandates, there is substantial risk of harm if it is disclosed. Therefore, it is essential that Plaintiffs' counsel maintain adequate information technology security ("IT") protections to receive and store the productions. Without strong IT security—such as encryption, restricted access, safeguards against cyber intrusions—there is significant risk of unauthorized disclosure, regulatory violations, and harm to third parties. These protections are particularly important to ensure that material designated as AEO is not inadvertently shared with individuals who are prohibited under the addendum from accessing that information.  Accordingly, Defendants have proposed language in the protective order addendum requiring all parties to maintain any AEO material with appropriate information security, cybersecurity and privacy controls, policies and procedures consistent with an accepted international standard.

**Indemnification obligations**.   Defendants face significant legal risks under foreign data protection and privacy laws by producing sensitive materials (unredacted)—including those subject to strict regulations in the European Union, Singapore, and other jurisdictions. Defendants propose that the protective order addendum include an indemnification clause requiring each party and their counsel to indemnify and hold harmless any Producing Party from damages, penalties, or liabilities that may arise if (i) the Producing Party is subject to legal proceedings based on the disclosure demanded by any Requesting Party, or (ii) the Receiving Party (or its counsel, experts, vendors, or agents) fails to effectively safeguard and protect all produced materials. By placing reciprocal obligations on all parties and their counsel, the indemnification clause ensures accountability, incentivizes compliance, and balances the equities. Defendants' concern is particularly well-founded in light of Plaintiffs' counsel increasing the risk of cyberattacks by promoting on social media their upcoming receipt of these documents.

**Materials subject to redactions**. The parties agree that redaction of certain information in the documents to be produced is appropriate, including information concerning political opinions and affiliations, religious and philosophical beliefs, sexual habits or orientation, genetic data, health information or records, or trade union membership. However, those categories alone are not sufficient to adequately address the foreign data privacy legal risks that have been raised concerning production of documents in this action, and Plaintiffs have not agreed to a sufficient set of categories of information appropriate for redaction based upon sensitive or personal identifying information.

For example, Defendants believe that the foreign data privacy laws identified in its September 24, 2025 letter require redactions for personal identifying information, including physical addresses and locations, written signatures, and customer names and identification documents (such as passports and IDs). Plaintiffs do not agree with those additional categories, and have specifically rejected the proposed redaction of customer information within produced documents. However, the identified foreign data privacy laws (*see* BHL September 24, 2025 Letter (Dkt. No. 144) p. 2) squarely cover customer data, which should therefore be subject to redactions to prevent the disclosure of such personal identifying information. Indeed, as the Court recognized, there is "much more sensitivity" with regard to customers, and for "personal cell phones," the Court "can understand redactions to ensure that that information's protected." (September 26, 2025 Transcript, 18:15-19.)

Accordingly, Defendants have proposed additions to the protective order addendum that provide for further kinds of personal identifying information, including that of customers, may be redacted in produced documents.

**Telephone numbers**. As described to the Court in the September 26, 2025 conference and in BHL's September 15, 2025 letter, disclosing telephone numbers presents significant data privacy and security concerns, particularly (though not exclusively) as to Defendants' employees. Utilizing an automated tool and available metadata in the documents, BHL has been able to quickly and effectively redact employee phone numbers, subject to quality control review and additional review for other individuals' phone numbers. Plaintiffs appear to recognize that some redaction of phone numbers is appropriate here, but have made an unreasonable proposal that the parties may redact only employee phone numbers in the first instance, but upon request of another party, must produce new versions of those documents with only the middle digits of those phone numbers redacted (leaving in place the country/area codes and the final digits of the phone number).

Plaintiffs' proposal is unworkable for a variety of reasons. First, as described above, the data privacy and security concerns are not limited solely to Defendants' employees, but also extend to third parties such as customers. Second, redaction only of certain numbers in a phone number—but leaving in information like the country or area code—may not eliminate or substantially reduce data privacy concerns, if the redacted phone numbers still provide personal identifying information about a person. Third, as a practical matter, producing additional versions of documents redacting only part of the telephone numbers at issue will be logistically complex to implement. Block redactions of the entire number can be done fairly easily through an automated process, but custom redactions for only parts of numbers will require more manual adjustments and alterations. Many of the numbers are not U.S.-based numbers, so the number of digits in the phone numbers vary, including the number of digits in the country codes of those numbers. As discussed with the Court at the September 26 conference, these phone numbers are repeated throughout the chat messages and other OFAC documents, and Plaintiffs' proposal allows them to demand a reproduction of *every* document with a redacted phone number, which will be needlessly burdensome and time-consuming.

Accordingly, Defendants have proposed language in the protective order addendum indicating that the entirety of phone numbers—regardless of the owner's relationship to Defendants as an employee, customer, or third party—shall be redacted in documents produced in this action. Defendants' proposal allows Plaintiffs to challenge redactions or seek further information through the meet and confer process set forth in Paragraph 8 of the addendum.

**Redaction logs and redaction process**. Plaintiffs have suggested an extensive redaction log process to accompany any productions made in this action. While Defendants can appreciate the need for additional information concerning certain redactions in particularly relevant documents, the sheer volume of documents at issue in the government productions make it impractical and unduly burdensome to commit to producing a log of every redaction made. Indeed, Plaintiffs' concern about needing additional information about redacted materials is likely to be unnecessary in many cases, where it will be clear from context what kind of information has been redacted. And the requirement to list specific provisions of foreign law or regulation for each redaction, along with the purported basis for applying that foreign law or regulation, will slow severely discovery. As a practical matter, if ordered to produce such a log within seven days of production of documents, the preparation of that log will need to be done simultaneously with the review of documents in order to comply with that deadline, lengthening the time required to review and produce these documents and logs. Plaintiffs also seek to require Defendants to provide full names of individuals that are identified only by a first name or nickname in the documents, but no party should be obligated to provide such additional information not contained within the document itself.

Instead, it is more efficient to produce the documents with redactions to Plaintiffs, and thereafter meet and confer concerning specific documents and redactions about which Plaintiffs require additional information. As demonstrated by Plaintiffs' response to the recent BAM production, Plaintiffs will almost certainly raise further follow-up questions about each production in this case, so Plaintiffs can raise any concerns about redactions as part of those follow-ups. Accordingly, Defendants have included language in the proposed addendum that requires the parties to meet and confer regarding requests for further information concerning any redactions, in lieu of an obligation to produce redaction logs.

Plaintiffs have also rejected Defendants' suggested process for filing AEO documents that required the parties to meet and confer to try to agree on redacted versions of publicly available documents. Plaintiffs' proposal instead allows a party to file an unlimited number of AEO documents under seal for three days, and requires a counterparty to file letter motions justifying the continued sealing of a potentially massive number of documents. That overly burdensome approach should be rejected.

\* \* \*

Were the Court to so-order Defendants' version of the protective order addendum (attached as **Exhibit A**, with a redline compared to Plaintiffs' version attached as **Exhibit B**), BHL anticipates it can promptly apply needed redactions to the applicable OFAC e-communications and non-e-communications documents, and can begin production of those OFAC documents within *two weeks* of this Court's so-ordering. Given the total volume of the combined OFAC, DOJ and FinCEN documents, BHL anticipates it can substantially complete production of the applicable OFAC, DOJ and FinCEN documents within *sixteen weeks* of this Court's so-ordering. Should the Court order a different version of the protective order addendum, Defendants respectfully request the opportunity to promptly meet and confer with Plaintiffs and then, within one week of the Court's order, propose to the Court a reasonable anticipated deadline for the production of each of those sets of government production documents under the Court's ordered version of the protective order addendum.

**Plaintiffs' Position**

*Binance's Delay Tactics.* At the August 26 conference, the Court ordered, as Binance proposed, that Binance make its initial production of already-produced documents before September 16. To date, Binance has yet to produce a single document. And despite Plaintiffs' repeated queries, Binance still refuses to offer any sense of when it may produce documents (today, Binance told Plaintiffs that they would learn Binance's proposed schedule when this letter is filed). These delays, and Binance's filibuster tactics in the face of Court orders, must end.

The current impasse is due to Binance's late-breaking invocation of a smattering of foreign data-privacy laws. But these laws, as the Court explained, are "not going to insulate Binance from producing basic information to the plaintiffs. I'm actually somewhat baffled at the idea that you think that they can't get employee names, can't get customer information. That's what this case is about." Sept. Tr. 12:20-13:1. Binance was given a "week to meet and confer with the plaintiffs with [the Court's] guidance in mind," *id.* 19:18-19, so the Court could enter an "appropriately crafted protective order," *id.* at 22:8-18.

Binance disregarded the Court's guidance. Instead of compromising, Defendants deployed new roadblocks. During the parties' first meet and confer, Defendants raised entirely new demands, including that Plaintiffs and their counsel *indemnify* Defendants. Then, *at midnight last night*, Binance finally proposed revisions to Plaintiffs' draft Addendum to the Protective Order—revisions which would make this process unworkable. Among other things, Binance still refuses to share basic and critically relevant customer information—including names, physical location, account information, and other KYC information. Worse, Binance demands that each Plaintiff is on the hook financially for any breaches of foreign data-privacy laws. This is untenable.

*The Addendum.* To resolve the impasse—and ensure Plaintiffs finally receive documents this Court has already ordered be produced—the Court should so-order Plaintiffs' proposed Addendum to the Protective Order (attached as Ex. C, with a redline compared to Defendants' version attached as Ex. D). This Addendum adds even stronger data-privacy protections to the already robust Protective Order (ECF 90), including by allowing "Highly Confidential – Attorneys' Eyes Only" treatment for *all* material Defendants designate as such.

Courts in this District routinely hold that protective orders of the type already in place resolve the sort of foreign data-privacy concerns raised by Defendants. *See, e.g.*, *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 252 (2d Cir. 2019) (summary order) (rejecting challenge to Judge Furman's order requiring production because party's "obligations under European Union data privacy laws . . . could be resolved through a protective order"); *Owen v. Elastos Found.*, 343 F.R.D. 268, 288 (S.D.N.Y. 2023) ("Any risk of *unreasonable use* 'can be mitigated by the countervailing factors present in this case,' such as the parties' Protective Order – and the availability of sealing orders for any truly sensitive personal information."); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 7512815, at *11 (S.D.N.Y. Dec. 29, 2017) (Belgium's data-privacy interest "can be mitigated by the countervailing factors present in this case," such as the Protective Order); *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 425 (S.D.N.Y. 2016) ("[T]he UK's interest in protecting the privacy of its citizens is mitigated by the protective order in place in this case, which permits . . . [the] designat[ion of] disclosed materials as 'Highly Confidential'"). *A fortiori*, the even more robust productions in Plaintiffs' proposed Addendum necessarily alleviate any remaining concerns.

Defendants have refused to accept Plaintiffs' Addendum or offer reasonable compromises. Below are the key disagreements.

*Customer Information.* Binance cannot exploit foreign data privacy laws to justify withholding through redactions basic customer information that is directly relevant to Plaintiffs' claims that Defendants deliberately enabled terrorists, their supporters, and users located in sanctioned countries to transact on the Binance platform. One binding Second Circuit case is particularly instructive. Defending against ATA claims, Arab Bank asserted that it could not disclose "account-holder identifying information" of "tens of

thousands" of accounts without violating foreign bank secrecy laws. *Linde v. Arab Bank, PLC*, 706 F.3d 92, 101 (2d Cir. 2013). Arab Bank was sanctioned for standing on that objection: among other sanctions, the district court ruled that Arab Bank could not "argue [at trial] that it had no knowledge a certain Bank customer was a terrorist if it did not produce that person's complete account records." *Id.* at 103.

In affirming severe discovery sanctions, the Second Circuit explained that the ATA was designed to "empower victims with all the weapons available in civil litigation, including: subpoenas for financial records, and banking information of alleged terrorists." *Id.* at 112 (cleaned up). Thus, "[r]ecords concerning accounts held at the Bank . . . [were] directly relevant to whether Arab Bank knowingly provided banking services in support of terrorist operations and are thus essential to plaintiffs' case." *Id.* at 115; *see id.* at 116 (records showing the bank "provided banking services to terrorist organizations could constitute strong circumstantial evidence that it did so knowingly and purposefully"). The Second Circuit emphasized the "important U.S. interests at stake in arming private litigants with the 'weapons available in civil litigation' to deter and punish the support of terrorism." *Id.* Finally, also relevant here, the Second Circuit also noted that Arab Bank never "sought—or even had to seek—waivers for the [prior] disclosures to the OCC or the DOJ or that Arab Bank was ever prosecuted for these disclosures." *Id.* at 114.

Courts in this Circuit deciding ATA cases routinely conclude that foreign states' interests in "banking regulation and data privacy" are "outweighed by the interest of the United States in combatting terrorism, as has been demonstrated in numerous cases in which a country's interest in enforcing its own bank secrecy laws has been outweighed by the need for discovery in an ATA case." *Schansman v. Sberbank of Russia PJSC*, 768 F. Supp. 3d 619, 643 (S.D.N.Y.). In ATA cases where a defendant asserts foreign laws to resist discovery, "the United States' substantial interest in fully and fairly adjudicating matters before its courts … combined with its goals of combatting terrorism … is elevated to nearly its highest point." *Miller v. Arab Bank, PLC*, 2023 WL 2731681, at *11 (E.D.N.Y. Mar. 31, 2023); *see also Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 103 (S.D.N.Y. 2014) (same); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 456 (E.D.N.Y. 2008) ("[T]he mutual interests of the United States and France in thwarting terrorist financing outweighs the French interest in preserving bank customer secrecy.").

Plaintiffs' proposed Addendum strikes the proper balance between disclosure and privacy. Binance may shield from disclosure customers' sensitive personal information, such as gender identity, religious affiliation, and sexual preference. *See* Ex. C. But, to pursue this case in any meaningful way—and to allow terrorism victims to have their day in court—Binance must disclose in unredacted form their customers' names and KYC-related information Binance collected (including email addresses, cryptocurrency wallet addresses, account information, and any other KYC-related information). To be clear: Plaintiffs agree to "Highly Confidential – Attorneys' Eyes Only" treatment for *all* such information. *See* Ex. C. Indeed, these "Attorneys' Eyes Only" protections exceed the protections provided for in the mine-run ATA case.

***Employee Phone Numbers.*** Plaintiffs initially proposed partially redacting employees' phone numbers. After listening to Binance's concerns about the supposed technological difficulty of doing so and the ease of their vendor automatically redacting full phone number, Plaintiffs agreed that Binance could fully redact employee phone numbers in the first instance—so long as partially unredacted numbers are provided upon request.[1] *See* Ex. C (providing for that approach). Nonetheless, Binance balked, arguing that Plaintiffs cannot get even specific, partially redacted phone numbers without a full challenge process and a Court order. That is unreasonable.

***Redaction Log.*** Defendants must provide a redaction log. This is standard and necessary. Without such a log, Plaintiffs cannot adequately assess Binance's redactions, much less challenge them. A log is vital especially vital because Defendants refuse to state with specificity what sensitive information these

---

[1] Plaintiffs compromised on this issue even though numerous employee numbers (including Zhao's) are publicly available on the docket in *SEC v. Binance Holdings Limited*, No. 1:23-CV-01599 (D.D.C.) (*see, e.g.,* ECF Nos. 16-2, 17-4, 17-5, 17-9).

productions actually (versus theoretically) contain, or even specify which country's law requires such redactions.

***Security Measures.*** Defendants' new insistence on requiring the use of "ISO 27001 or equivalent standards" is misplaced. It risks inviting burdensome, time-consuming reviews (and periodic audits) of potential recipients' information-storage policies and procedures. PACER, and systems used by court reporters, clerks, and deposition videographers, would all need to be audited before Plaintiffs could disclose any information. Plaintiffs instead propose requiring "commercially reasonable" information-storage policies and procedures. *See* Ex. C.

***Indemnification.*** Instead of facilitating compromise, Zhao's counsel recently interceded with a poison pill: a demand that Plaintiffs' counsel and each of their 533 clients agree to financially indemnify Defendants for any foreign-privacy law violations. That is absurd. Courts routinely order production relying on protective orders without indemnification provisions, as detailed above; Binance has provided no precedential support for courts ordering indemnification when documents are produced for use in an action in the U.S., much less in the ATA context—where U.S. national interests are near their zenith, and Plaintiffs are resource-constrained victims of terrorist attacks. *See Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 20 (2025) ("Combating terrorism is . . . 'an urgent objective of the highest order,'" and the U.S. "has a strong interest in permitting American victims of international terror to pursue justice in domestic courts.").[2]

***Schedule.*** The Court should reject Binance and Zhao's latest bid for delay by so-ordering Plaintiffs' proposed Addendum, ordering Binance to produce the OFAC documents that were due before September 16 within one week and the remaining OFAC documents within three weeks. While Binance admits its approach will cause further delays, under Plaintiffs' approach, redactions will be tailored, and customer information issues will not hold up the remaining OFAC documents or other government productions. This case was filed more than a year ago, on September 20, 2024, and Binance has yet to produce a single document. Discovery must finally begin in earnest.

Respectfully submitted,

| | | |
|---|---|---|
| /s/ Ian Miller | /s/ Christopher LaVigne | /s/ Thania Charmani |
| Holwell Shuster & Goldberg LLP | Withers Bergman LLP | Winston & Strawn LLP |
| *Counsel for Plaintiffs* | *Counsel for Defendant Binance Holdings Limited* | *Counsel for Defendant BAM Trading Services Inc.* |
| | | |
| /s/ Matthew J. Fisher | /s/ Anirudh Bansal | /s/ Katherine L. McKnight |
| Sparacino PLLC | Cahill Gordon & Reindel LLP | BakerHostetler LLP |
| *Counsel for Plaintiffs* | *Counsel for Defendant Binance Holdings Limited* | *Counsel to Defendant Changpeng Zhao* |

cc: All attorneys via ECF

---

[2] To be sure, Zhao could easily afford any fine that may result from complying with a U.S. court's orders, given his eleven-figure net worth.