

**SPARACINO** PLLC

1920 L Street, NW, Suite 835, Washington, DC 20036
**(202) 629-3530** | sparacinopllc.com

October 20, 2025

**BY CM/ECF**

The Honorable Jeannette A. Vargas
Daniel Patrick Moynihan United States Courthouse

RE:   *Troell, et al. v. Binance Holdings Ltd., et al.*, No. 24-cv-7136 (S.D.N.Y.)

Dear Judge Vargas:

Defendants' October 15 letter (ECF 148) discusses several recent JASTA decisions—none of which supports dismissal of Plaintiffs' aiding-abetting claims or even mentions (much less casts doubt upon) Plaintiffs' conspiracy claims. These decisions are discussed in turn.

**1.**  While the court in *Fraenkel v. Standard Chartered Bank*, 2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025), dismissed aiding-and-abetting claims on the ground that the alleged nexus between the bank's conduct and the attacks was "far too attenuated," *id.* at *9, the allegations in this case are categorically different. Here, Plaintiffs allege that Defendants knowingly and deliberately provided essential financial services to designated Foreign Terrorist Organizations, facilitating their ability to raise, transfer, and spend funds for specific attacks. *See, e.g.*, ECF 27 ¶¶588-94, 598-606, 621-28, 817-29, 1481-85, 1492-99. This is not a case about remote or incidental support to a foreign government or affiliated entity; it is about direct, intentional facilitation of terrorist operations by actors Defendants knew to be terrorists. Here, Defendants' culpability—the "conceptual core" of aiding-and-abetting liability—is readily apparent. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023); *see Raanan v. Binance Holdings Ltd.*, 2025 WL 605594, at *23 (S.D.N.Y. Feb. 25, 2025) (concluding that Binance and Zhao "'consciously and culpability participated' in Hamas's and PIJ's" terrorist attacks (quoting *Twitter*, 598 U.S. at 506)).

Plaintiffs' allegations of the nexus between Defendants' conduct and the terrorist attacks are far more detailed than the allegations found lacking in *Fraenkel*. Plaintiffs' nexus allegations are granular, linking Defendants' misconduct to specific terrorists, geographies, and timeframes. ECF 123 at 23-25; ECF 69 at 14-18, 22, 40, 43-44. Plaintiffs allege on a group-by-group basis how Binance enabled its terrorist customers to use cryptocurrency to carry out terrorist attacks. *E.g.*, ECF 27 ¶¶588-94 (Hamas's military wing and PIJ); *id.* ¶¶598-606 (al-Qaeda); *id.* ¶¶621-28, 817-29 (IRGC); *id.* ¶¶1481-85, 1492-99 (ISIS). Defendants' misconduct allowed these terrorists to raise money worldwide, move it instantly across the world, and spend it in conflict zones to buy weapons, pay fighters, and offer bounties for attacks, all covertly. *Id.* ¶¶720-46.

Defendants, perhaps recognizing the uphill battle on their motions to dismiss, use their letter to smuggle in arguments (at n.4) that Plaintiffs' nexus allegations are plausible only because of Plaintiffs' blockchain analysis. But that analysis is not essential to the nexus allegations. Just as in *Raanan*, myriad other sources are the primary corroboration for Plaintiffs' nexus allegations, such as Defendants' criminal and civil resolutions (*e.g.*, ECF 27 ¶¶13, 502-04), congressional testimony (*e.g.*, *id.* ¶830), Israeli-government cryptocurrency wallet seizures (*e.g.*, *id.* ¶831) and media investigations (*e.g.*, *id.* ¶763). This is yet another reason Plaintiffs' blockchain analysis is protected from disclosure. Defendants' sole in-Circuit precedent regarding expert protections

distinguished cases where "the party asserting the privilege did not need the privileged materials concerning the review to sustain its causes of action," and explained that courts have found "no at-issue waiver from use of [a] consultant report where the complaint could stand even if all references to it were stricken." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 90 (S.D.N.Y. 2016) (cleaned up) (discussed at ECF 146 at 7). Here, Plaintiffs do not need blockchain analysis to avoid dismissal at the pleading stage; their allegations would stand even if all references to their preliminary expert analysis were stricken.

**2.** Defendants (at 2) discuss *Moses v. BNP Paribas, S.A.*, 2025 WL 2780803 (S.D.N.Y. Sept. 30, 2025), a recent decision in which a court in this District permitted JASTA aiding-and-abetting allegations to proceed to discovery. Defendants assert that *Moses* is "distinguishable." ECF 148. That is true only to the extent that the allegations here easily "surpass the ones that succeeded in *Moses*," as Plaintiffs recently explained. ECF 147 at 1.

Here, Plaintiffs explain in exhaustive detail how Defendants' deliberate and pervasive facilitation of FTOs' access to cryptocurrency through Binance's products and services enabled dozens of terrorist attacks. The *Moses* court even explicitly noted the strength of these types of allegations when it highlighted *Raanan* as an example of a well-reasoned JASTA opinion, featuring allegations that were ***even stronger*** than the allegations before the *Moses* court. 2025 WL 2780803, at *12, *14. Notably, the *Moses* plaintiffs' allegations survived without detailed transactional analysis comparable to Plaintiffs' blockchain analysis here, further demonstrating that such analysis is not essential for overcoming a motion to dismiss aiding-and-abetting claims (and must therefore remain fully protected from disclosure, *see supra* at 1-2; ECF 146 at 2-3).

Defendants' other quips about *Moses* are easily dispatched. That court's dismissal of "unidentified and unnamed Iranian entities," *id.* at *1, is irrelevant. Here, Plaintiffs have identified and named FTOs (*e.g.*, IRGC, ECF 27 ¶¶766-81), along with their financiers (*e.g.*, al-Law, *id.* ¶¶1153-58) and fronts (*e.g.*, Nobitex, *id.* ¶¶495, 765), whose cryptocurrency transactions Defendants culpably enabled. Defendants (at 3) retreat to asserting that *Moses* was "incorrect on the law." Not so. While Defendants fault the *Moses* court for explicitly addressing "only four of the six *Halberstam* factors" before finding that the plaintiffs sufficiently alleged knowing and substantial assistance, Defendants' view runs headlong into the Supreme Court's admonition that courts should ***not*** "hew tightly to the precise formulations that *Halberstam* used" or "its exact phraseology"; instead, courts should focus on Defendants' "conscious, voluntary, and culpable participation in another's wrongdoing." *Twitter*, 598 U.S. at 493. That is precisely the approach the *Moses* court correctly took.

**3.** Defendants (at 2) discuss *Finan v. Lafarge S.A.*, 2025 WL 2504317 (E.D.N.Y. Aug. 29, 2025), where a court in the Eastern District of New York largely ***denied*** a motion to dismiss JASTA claims. That case favors Plaintiffs far more than Defendants. *First*, the *Finan* court's personal jurisdiction analysis can guide this Court's exercise of jurisdiction over Defendants Zhao and Binance US.[1] The *Finan* court concluded that it had personal jurisdiction over defendants—foreign building materials suppliers whose primary contacts with the United States involved money transfers through New York bank correspondent accounts. *See id.* at *15-17. The court explained that in light of JASTA's text and purpose, and "under the broader reading of federal jurisdiction for matters concerning the United States as a sovereign embraced by the Supreme

---

[1] Defendant Binance Holdings Ltd. has waived any personal jurisdiction defense.

Court in *Fuld* [*v. Palestine Liberation Org.*, 606 U.S. 1 (2025)], Rule 4(k)(2) provides a proper basis for this court's exercise of personal jurisdiction over Defendants." *Id.* at *16. That is the same justification Plaintiffs here offered for why this Court may exercise jurisdiction over Zhao, *see* ECF 123 at 6-13; those arguments apply equally to Binance US, *see* ECF 69 at 23-27.

*Second*, the *Finan* court permitted JASTA conspiracy claims to proceed, finding plausible allegations of two conspiracies: a "conspiracy with ISIS and [al-Nusrah Front ("ANF")] to provide material support to ISIS and ANF, and [an] alleged conspiracy with ISIS to maintain an ISIS protection racket in the region." 2025 WL 2504317 at *22. The court explained that it did not matter that defendants did not "share[] in ISIS or ANF's terrorist ideologies," as their conspiracies "advanced [d]efendants' economic motives while simultaneously advancing ISIS and ANF's political motives"—*i.e.*, "plan[ning] terrorist attacks on Americans across the world." *Id.*

That reasoning applies with (at least) equal force here. Defendants entered three conspiracies with a host of FTOs and their affiliates. ECF 69 at 46-51; ECF 123 at 27. While Defendants argue that there could be no conspiracy because they did not share the terrorists' ideologies or agree to commit attacks, *e.g.*, ECF 35 at 27; ECF 112 at 24-25, *Finan* dooms that argument. As that court explained, under Second Circuit precedent, an unlawful conspiracy may exist even where the co-conspirators' interests are not identical. *Finan*, 2025 WL 2504317 at *22; *see* ECF 69 at 49-50.[2] Defendants could—and did—unlawfully conspire with FTOs, even if they did not share their terrorist ideologies.

*Third*, after two brief paragraphs, the *Finan* court dismissed an aiding-and-abetting count, finding no nexus between the money defendants gave to terrorists and subsequent attacks committed by the group. 2025 WL 2504317 at *19-20. Even if that analysis were correct, Plaintiffs' nexus allegations here are much stronger. *See supra* at 1-2. And Plaintiffs' nexus allegations are certainly sufficient given the Supreme Court's admonition that plaintiffs need not allege "a strict nexus between the alleged assistance and the terrorist act." *Twitter*, 598 U.S. at 497; *see* ECF 123 at 23-25; ECF 69 at 23, 39.

Moreover, the total financial flows that the Binance Defendants enabled to go to the terrorists responsible for the at-issue attacks is orders of magnitude larger than the amount of assistance from the Lafarge defendants to ISIS. *Compare* ECF 27 ¶12 ("hundreds of millions of dollars") *with Finan*, 2025 WL 2504317 at *4 ("at least $5.92 million but could have paid over $15 million"). Thus, Plaintiffs here plausibly allege that the Binance Defendants provided pervasive, systemic, and culpable aid to terrorists—which is an alternate way to satisfy the nexus requirement. ECF 123 at 25; ECF 69 at 39, 41-42.

**4.** Defendants (at 2) mischaracterize *Long v. MTN Group Ltd.*, 2025 WL 2827899 (E.D.N.Y. Sep. 25, 2025)—another decision from the Eastern District of New York. There, the court dismissed claims that MTN, a telecommunications company, aided-and-abetted the kidnapping of an American journalist in Syria by al-Nusrah Front—an offshoot of al-Qaeda-in-Iraq, which had previously received funds and other resources indirectly (primarily through Afghanistan) from the IRGC. *Id.* at *7. The court first reaffirmed prior holdings that MTN had aided and abetted various types of terrorist attacks in Iraq and Afghanistan by funneling resources

---

[2] Defendants' appreciation for the strength of the *Finan* conspiracy allegations, *see* ECF 148 at n.3, does not call into question Plaintiffs' litany of allegations about the conspiracies Defendants here engaged in, *see* ECF 69 at 46-51; ECF 123 at 27.

to known IRGC fronts in Iran. *Id.* at *4-7; s*ee Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301 (E.D.N.Y. 2023).[3] But the court then concluded that there were not similarly plausible allegations that MTN's support provision of support to those same IRGC fronts also aided and abetted an attack committed by a *different* terrorist group, in a *different* geography (which lacked any meaningful U.S. troop presence), relying on a *different* attack modality. *Long*, 2025 WL 2827899, at *6. That is not an issue here, however, in light of Plaintiffs' extensive allegations that connect Defendants to particular FTOs, geographies, and attack modalities.

**5.** Defendants (at 3) rehash arguments for dismissing Binance US—but nowhere explain why the cited authorities offer new reasons for dismissal. (They don't.) Plaintiffs' earlier briefing addresses Binance US's arguments. *See generally* ECF 69.

Defendants also try to poke at Plaintiffs' allegations against Zhao by commenting that, in some other JASTA lawsuits, no "executives of the defendant entities" were sued. So what? Other plaintiffs' tactical choices are irrelevant. Here, Plaintiffs named Zhao as a defendant because he violated myriad laws and regulations, including JASTA, and courted terrorists and their sympathizers to the Binance exchange to "line his pockets." ECF 123 at 1 (quoting ¶641). Zhao also directed the corporate Defendants' misconduct through his ownership and control of those entities. *Id.* at 2. Indeed, Zhao "publicly claimed that he and the broader Binance enterprise are alter egos of one another: 'Wherever I sit is the Binance office. Wherever I meet somebody is going to be the Binance office.'" *Id.* (quoting ¶688). Zhao's conduct ultimately enabled terrorist attacks. *Id.* at 1-2, 15-25; *see Raanan*, 2025 WL 605594, at *23 (concluding that "Zhao 'consciously and culpably participated' in Hamas's and PIJ's wrongdoing"). For his misconduct, Zhao was charged with federal crimes, pled guilty, and spent time in prison. ECF 27 ¶13. Zhao and his companies now owe restitution to the Americans who were killed, maimed, or buried a loved one because of Defendants' illegal behavior.

\* \* \*

Defendants (yet again) direct this Court's attention to cherry-picked quotes from inapposite cases, and brush aside relevant cases by cavalierly asserting that other courts in this District simply erred in their legal analysis. In reality, the balance of relevant, persuasive authority issued since Defendants filed their motions to dismiss—including *Raanan*, *Fuld*, and *Moses*—confirms Defendants' motions should be denied.

Sincerely,

/s/ Matthew J. Fisher

Matthew J. Fisher
Sparacino PLLC

*Counsel for Plaintiffs*

---

[3] Plaintiffs cite *Zobay* extensively in opposing the motions to dismiss. *See* ECF 69 at 24, 36-37, 40-45; ECF 123 at 26.