January 14, 2026

**VIA ECF**
Hon. Jeannette A. Vargas, U.S.D.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 703
New York, NY  10007

      RE:    *Troell et al. v. Binance Holdings Ltd. et al.*, No. 1:24-cv-07136 (S.D.N.Y.)

Dear Judge Vargas:

The Parties respectfully submit this "joint letter containing a selection, by each party, of 6 proposed representative bellwether attacks."  Dkt. 168.

**Plaintiffs' Position**

Plaintiffs propose the following representative sample of attacks that "spans the terrorist groups, that spans geography, [and] that spans attack type." 12/15 Hrg. Tr. 23:21-22.  This selection is "based on general categories that are representative of the attacks as a whole." *Id.* 26:7-8.  This slate enables the parties to draw "implications" about Defendants' liability for these attacks and other attacks "in the same geography involving the same terrorist group and around the same timeframe."  *Id.* 25:9-11; *see* 7/14 Hrg. Tr. 41:24-42:6 (bellwether should enable parties to understand "strength and weaknesses of various types of claims").

| Attack Date | Primary Terrorist Groups | Attack Geography | Attack Type | Injuries To Direct Victim(s) | Associated Plaintiffs | Amended Complaint Citation (§) |
|---|---|---|---|---|---|---|
| 5/5/2019 | Hamas; PIJ | Israel | Rockets. | Death. | 11 | XIV(D)(1) |
| 1/8/2020 | IRGC; Hezbollah; Kata'ib Hezbollah | Iraq | Missiles; Rockets; Small Arms. | Death; physical and psychological injuries. | 190 | XIV(A)(9) |
| 8/26/2021 | ISIS | Afghanistan | Suicide Bombing. | Death; physical and psychological injuries. | 10 | XIV(F)(4) |
| 12/18/2021 *Through* April 2022 | Al-Qaeda | Afghanistan | Hostage-Taking. | Physical and psychological injuries. | 3 | XIV(E)(9) |
| 11/7/2022 | IRGC; Hezbollah | Iraq | Small Arms; Hostage-Taking. | Death. | 11 | XIV(A)(1) |
| 10/7/2023 | Hamas, PIJ | Israel | Complex Attack. | Death; physical and psychological injuries. | 45 | XIV(D)(3) |

**Two Primary Attacks.** This Court has already selected two of the six attacks. The "two biggest attacks have to stay" in the bellwether slate. 8/26 Hrg. Tr. 70:13-14; *see* 12/15 Hrg. Tr. 25:1 (confirming "we've already picked two"). Those two are the January 8, 2020 attack in Iraq; and the October 7, 2023 attack in Israel. Beyond the number of associated plaintiffs, those attacks feature the terrorist groups and geographies involved in most attacks.

**Number of Associated Plaintiffs.** Plaintiffs' slate includes 270 associated plaintiffs, which is *more than half* of the total number of plaintiffs. Moreover, the October 7 Attack is highly representative of the remainder of follow-on Hamas/PIJ attacks in late 2023 and 2024. Those follow-on attacks include another 57 associated plaintiffs. *See* Compl. XIV(D)(4)-(10). When those plaintiffs are considered alongside the October 7 plaintiffs, Plaintiffs' slate effectively includes 327 associated plaintiffs—*over 60 percent* of the total plaintiff pool. Even apart from the below factors, the sheer number of associated plaintiffs in the proposed bellwether slate demonstrates its representativeness.

Plaintiffs' slate also includes three attacks involving multiple direct victims, while the other three involve only one direct victim. This approach provides representativeness for single-direct-victim attacks.

**Injury Type and Attack Type.** Plaintiffs' slate includes plaintiffs with a variety of injuries from different types of attacks to maximize representativeness. For example, findings on the 12/18/2021 hostage-taking attack where the victim was physically and psychologically wounded provides representativeness for the victims of the other seven hostage-taking attacks. Similarly, the traumatic physical and psychological injuries suffered by victims of missiles, rockets, and suicide bombings in the attacks in Plaintiffs' slate provides representativeness for the similar injuries suffered by other plaintiffs in the same or similar types of attacks.

**Terrorist Groups.** Plaintiffs' slate includes each of the primary terrorist groups involved in the attacks. The slate includes two attacks involving the IRGC/Hezbollah/Kata'ib Hezbollah and Hamas/PIJ because those two groupings account for the vast majority of all attacks. Because al-Qaeda and ISIS account for fewer attacks, one attack per group should suffice. Other groups discussed in the complaint, such as the Houthis and cyberterrorists, were involved in so few attacks that their inclusion would diminish the representativeness of the bellwether slate.

**Timeframe.** Plaintiffs' slate includes attacks that occurred throughout the timeframe of defendants' bad acts. The May 5, 2019 attack, for example, is one of the earliest attacks (ninth-earliest), while October 7, 2023 is one of the latest. Plaintiffs do not include attacks from 2017 or 2018; only five attacks occurred during those years, so a 2017 or 2018 attack would be unrepresentative and diminish the representativeness of the slate as a whole.

**Geography.** The attacks alleged in the complaint occurred primarily in the greater Middle East, with Iraq, Israel, and Afghanistan being the three most common attack locations. Plaintiffs' slate mirrors this geographical concentration. Other geographies—like Kenya, Niger, and the United States—are geographically distant from the common attack locations, and only one or two attacks occurred in these other locations. Those geographies are thus less representative, so including any such attack would diminish the representativeness of the slate.

**Holistic Representativeness.** Defendants have repeatedly approached this process by attempting to focus on outliers—the opposite of a representative slate. Plaintiffs' slate allows the parties and the Court to move forward with a majority of plaintiffs directly represented, with the remainder being fairly represented.

**Defendants' Position**

Defendants submit their position while maintaining their objections and reserving all rights to challenge the bellwether process, which they assert is premature and requires the parties to address critical case issues without sufficient information. Proceeding in this manner risks creating inefficiencies without corresponding benefits at this stage.

First, selecting bellwethers now is prejudicial to Defendants. Bellwether selection "cannot be made in a vacuum." *Meranus v. Gangel*, 1991 WL 120484, at *1-2 (S.D.N.Y. June 26, 1991). Selection should only occur using **verifiable** information that can identify common issues and representative plaintiffs. *Adams v. Deva Concepts, LLC*, 2023 WL 6518771, at *1-6 (S.D.N.Y. Oct. 4, 2023). Here, however, Defendants (and the Court) have only Plaintiffs' unverified Amended Complaint. This Court has already recognized that this information is "not sufficient" and lacks "any degree of specificity that informs this [bellwether] discussion." July 14, 2025 Hr'g Tr. 46:19-23. In contrast, Plaintiffs possess an analysis (which they cite repeatedly in their Amended Complaint) that purportedly links the financial transactions, Defendants' conduct, and the attacks, as well as information bearing on their asserted standing and damages. Requiring Defendants to select attacks under these circumstances—"in a vacuum," and without access to the same information available to Plaintiffs—veers "too far in the interest of expediency" and "sacrifice[s] basic fairness in the process." *In re Repetitive Stress Inj. Litig.*, 11 F.3d 368, 373-74 (2d Cir. 1993) (cleaned up).

Second, selecting bellwethers now will not serve its purpose of addressing causation or liability issues common to the universe of claimants. *In re Chevron U.S.A.*, 109 F.3d 1016, 1019 (5th Cir. 1997). Effective bellwether selection requires sufficient information on variables that affect the claims and defenses of the litigation so that the bellwether claims meaningfully reflect the non-selected ones. *Adams*, 2023 WL 6518771, at *4-5. Important variables here are the types and strength of connection (if any) between a financial transaction, Defendants' conduct, and each attack. These variables bear directly on nexus and the type of assistance required for liability. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 497 (2023). Moreover, JASTA liability is specific to a discrete attack, i.e., Plaintiffs must prove that Defendants aided and abetted a specific terrorist group in conducting a specific terrorist attack. *Id.* This information is not in the Amended Complaint, which lacks the specificity to inform Defendants and the Court about the kinds of specific conduct (such as transaction activity), upon which Plaintiffs base each claim, or whether alleged support was made directly to the FTO conducting the attack, or to an intermediary.

While other variables, such as timing, geography, terrorist group, and attack modality, are discernible from the Amended Complaint, they are insufficient to select representative attacks. A determination that Defendants did not aid and abet one terrorist attack in 2019 will not necessarily resolve causation or liability issues for other 2019 attacks involving different groups and different types of alleged support. Likewise, establishing liability for one attack in Afghanistan will not resolve these issues for another Afghanistan attack at another time, by another group.

Third, bellwether selection should not occur prior to the Court's decision on Defendants' motions to dismiss, which may eliminate claims based on certain (if not all) attacks. There is no point for the parties or the Court to consider attacks that may become moot.

Fourth, while the Court previously observed that a bellwether process could reduce the discovery burden on all parties, May 21, 2025 Hr'g Tr. 17:9-12, it is now clear that bellwether selection will create no material efficiencies. As the Court has recognized, Dec. 15, 2025 Hr'g Tr. 16:5-17, bellwether selection will have no effect on discovery sought from Defendants, who are already required to undertake voluminous document productions. Meanwhile, the lion's share of discovery on individual Plaintiffs is stalled. Premature bellwether selection will exacerbate this asymmetry and, at most, only lessen the discovery

January 14, 2026                                                                 Hon. Jeannette A. Vargas, U.S.D.J.

burden for Plaintiffs, notwithstanding that they voluntarily assumed this burden when they chose to pursue a large, complex action involving hundreds of plaintiffs and over 60 disparate attacks.

For these reasons, and those in Defendants' forthcoming motion to stay bellwether selection, the Court should defer selecting bellwether attacks until Defendants' motions to dismiss and upcoming motion to compel Plaintiffs' blockchain analysis are decided and **both** parties engage in meaningful discovery relevant to bellwether selection. Nonetheless, to comply with the Order, on the basis of the insufficient information they currently possess, Defendants identify the following four attacks to supplement the Oct. 7, 2023, attack in Israel and the Jan. 8, 2020, attack at the Al Asad Air Base in Iraq, which the Court has stated must be included. The below attacks are selected on the unverified allegations in the Amended Complaint and the Court's direction that attacks cover various terrorist groups, geographies, years, and attack types:

(1) October 4, 2017 attack in Niger by ISIS by complex attack (14 Plaintiffs), FAC ¶¶ 2930-2958;
(2) July 8, 2019 attack in the United States by Wizard Spider by ransomware (the sole basis for Plaintiffs' ATA primary liability claims) (two Plaintiffs), *id.* ¶¶ 3023-3040;
(3) December 18, 2021 attack in Afghanistan by Al-Qaeda, Taliban, Haqqani Network by hostage taking (3 Plaintiffs), *id.* ¶¶ 2918-2929; and
(4) July 16, 2024 attack in Iraq by Hezbollah, Kataib Hezbollah, and IRGC by UAV attack (1 Plaintiff), *id.* ¶¶ 2352-2359.

Together with the Oct. 7, 2023 and Jan. 8, 2020 attacks, these attacks include: years 2017, 2019, 2020, 2021, 2023, and 2024; ATA primary and secondary liability claims, eight of the ten primary terrorist groups; four attack modalities; and five locations.

                                                    Respectfully submitted,

/s/ *Ian Miller*                                    /s/ *Christopher LaVigne*
Holwell Shuster & Goldberg LLP                      Withers Bergman LLP
*Counsel for Plaintiffs*                            *Counsel for Defendant Binance Holdings Limited*

/s/ *Matthew J. Fisher*                             /s/ *Thania Charmani*
Sparacino PLLC                                      Winston & Strawn LLP
*Counsel for Plaintiffs*                            *Counsel for Defendant BAM Trading Services Inc.*

                                                    /s/ *Joanna F. Wasick*
                                                    BakerHostetler LLP
cc: All attorneys via ECF                           *Counsel for Defendant Changpeng Zhao*