**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOCELYN TROELL, individually and for the estate of   :
STEPHEN TROELL, et al.   :   No. 1:24-cv-07136-JAV
  :
            Plaintiffs   :
  :
       vs.   :   **ORAL ARGUMENT**
  :   **REQUESTED**
BINANCE HOLDINGS LIMITED d/b/a BINANCE and   :
BINANCE.COM, CHANGPENG ZHAO, and BAM   :
TRADING SERVICES INC. d/b/a Binance.US,   :
  :
            Defendants.   :
  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## MOTION TO STAY BELLWETHER SELECTION

**BAKER HOSTETLER LLP**

Joanna F. Wasick
Marco Molina
45 Rockefeller Plaza
New York, NY 10111
Tel: (212) 589-4200

Teresa Goody Guillén (*pro hac vice*)
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Tel: (202) 861-1500

*Counsel for Defendant Changpeng Zhao*

**WITHERS BERGMAN LLP**

Christopher N. LaVigne
Joseph E. Gallo
Alexander C. Haden
430 Park Avenue, 10th Floor
New York, NY 10022
Tel: (212) 848-9800

*Counsel for Defendant Binance Holdings Limited*

**WINSTON & STRAWN LLP**

Thania Charmani
Daniel T. Stabile
MetLife Building
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700

*Counsel for Defendant BAM Trading Services Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT FACTUAL BACKGROUND................................................................................4

     A.    Plaintiffs' Amended Complaint Does Not Allege a Concrete Nexus Between Defendants' Conduct and the Attacks......................................................4

     B.    Plaintiffs Refuse to Produce Information Necessary for Meaningful Bellwether Selection ............................................................................................5

     C.    Following Months of Meet-and-Confers, Plaintiffs Still Refuse to Provide Their Blockchain Analysis While Using It to Support Their Claims ....................8

ARGUMENT ...............................................................................................................................9

     A.    There is Good Cause for the Requested Stay of Bellwether Selection...................9

     B.    The Court's Decision on Defendants' Pending Motions to Dismiss Will Significantly Impact the Scope and Structure of Any Bellwether Process............10

     C.    Neither the Court nor Defendants Have Information Necessary to Select Representative Bellwether Attacks ......................................................................11

     D.    The Bellwether Process, as Currently Structured, Is Fundamentally One-Sided and Improperly Favors Plaintiffs .................................................................14

          i.    Plaintiffs Alone Possess Information Critical to Their Nexus Allegations and Can Cherry-Pick Attacks Based on It............................14

          ii.    The Current Process Limits Only Plaintiffs' Discovery While Leaving Defendants' Broad Discovery Burdens Intact .............................15

CONCLUSION............................................................................................................................16

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Adams v. Deva Concepts, LLC*,
  Nos. 1:20-cv-9717-GHW, 1:20-cv-9056-GHW, 2023 WL 6518771 (S.D.N.Y.
  Oct. 4, 2023) ..................................................................................................2, 11, 12, 13

*Ashley v. Deutsche Bank Aktiengesellschaft*,
  144 F.4th 420 (2d Cir. 2025) ...................................................................................10

*Bartlett v. Societe Generale de Banque au Liban SAL et al*,
  No. 1:19-cv-00007 (E.D.N.Y.) ..................................................................................14

*Cabrera v. Black and Veatch Special Projects Corp.*,
  No. 1:19-cv-03833-EGS (D.D.C.) ..............................................................................13

*In re Chevron U.S.A.*,
  109 F.3d 1016 (5th Cir. 1997) ..................................................................................11

*Clinton v. Jones*,
  520 U.S. 681 (1997)....................................................................................................9

*Fraenkel v. Standard Chartered Bank*,
  2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025)..........................................................10

*Linde et al. v. Arab Bank, PLC*,
  No. 04 Civ. 2799 (E.D.N.Y.) ......................................................................................5

*Meranus v. Gangel*,
  1991 WL 120484 (S.D.N.Y. June 26, 1991) .........................................................2, 11

*Moses v. BNP Paribas, S.A.*,
  No. 1:24-cv-04938 (S.D.N.Y.).....................................................................................13

*In re Repetitive Stress Inj. Litig.*,
  11 F.3d 368 (2d Cir. 1993)..........................................................................................11

*Schmitz v. Ericsson Inc.*,
  No. 1:22-cv-02317 (D.D.C.) ........................................................................................14

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023)...........................................................................................5, 10, 11

*Zobay v. MTN Grp. Ltd.*,
  No. 1:21-cv-03503 (E.D.N.Y.) .....................................................................................14

**Federal Statutes**

Anti-Terrorism Act ...................................................................................................... *passim*

Justice Against Sponsors of Terrorism Act ..................................................................4, 8

**Rules**

Court's Individual Rule 5(F)...........................................................................................1

Defendants Binance Holdings Limited ("BHL"), Changpeng Zhao, and BAM Trading Services Inc. (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to stay the Court's selection of representative bellwether attacks in this action (the "Motion") pending the Court's decision on both Defendants' Motions to Dismiss[1] and the Motion to Compel Plaintiffs to Produce the Blockchain Analysis and Related Documents and Communications ("Motion to Compel") (Dkt. 173-75).

## PRELIMINARY STATEMENT

On December 15, 2026, the Court ordered the parties to each propose six attacks from Plaintiffs' Amended Complaint ("Amended Complaint" or "AC") (Dkt. 24) so that the Court could select six attacks from those proposed to serve as representative bellwether attacks. (Dkt. 168.) While the parties have complied with the December 15 order, Defendants request that the Court's selection should be stayed until such time that the parties—and the Court—all have the same critical information needed to make a meaningful and equitable selection of a representative cross-section of bellwether attacks.

*First*, the Court's ruling on Defendants' pending Motions to Dismiss will significantly impact the scope and structure of any bellwether process. The Court's forthcoming decision on the Motions to Dismiss may dismiss the case entirely or eliminate claims based on certain attacks, some of which account for multiple Plaintiffs. Any such narrowing necessarily would transform or eliminate the bellwether process, as well as related discovery. The parties will have to revisit

---

[1]    Defendant BHL's Motion to Dismiss (*see* Dkt. 34-36, 69-70, 76-78) and Defendant BAM Trading Services Inc.'s ("BAM") Motion to Dismiss the Amended Complaint (*see* Dkt. 61-62, 69-70, 79-80) were fully briefed on March 25, 2025, and Defendant Changpeng Zhao's Motion to Dismiss Plaintiffs' First Amended Complaint was fully briefed on August 5, 2025 (collectively, "Motions to Dismiss"). (*See* Dkt. 111-12, 123, 128.) Oral argument on the Motions to Dismiss occurred on November 25, 2025. (*See* Dkt. 157; Transcript at Dkt. 163.) Defendants' Motions to Dismiss have been pending for more than 60 days. (*See* Rule 5(F) of the Court's Individual Rules.)

the selection process once the Court clarifies which claims, foreign terrorist organizations ("FTOs"), and attacks, if any, remain viable. A stay avoids this waste and ensures that bellwether selection, if ultimately necessary, takes place within the actual contours of the case the Court determines may proceed.

**Second**, the Court and Defendants have insufficient information, solely from Plaintiffs' unverified Amended Complaint, to choose bellwether attacks. This Court has recognized that this information is "not sufficient" and lacks "any degree of specificity that informs this [bellwether] selection," and "more information needs to be provided to the [D]efendants so that a true discussion about representativeness on the bellwether issue can be had. Simply referring [Defendants] to the complaint is not sufficient." ((Declaration of Christopher N. LaVigne, dated January 16, 2026 ("LaVigne Decl.") Ex. 4 (July 14, 2025 Hearing Transcript ("July Tr.")) 46:19-23; 45:9-11.)

In contrast, Plaintiffs have, but continue to withhold, a blockchain analysis and related materials (the "Analysis") that the Amended Complaint relies on and that Plaintiffs have repeatedly asserted establish the requisite nexus between Binance.com transactions, Defendants' alleged conduct, and each attack. Proceeding without Defendants or the Court having access to this information risks selecting bellwether attacks that are not representative of the claims at issue, do not encompass the relevant causation or liability theories, and provide no useful insight into categories of Plaintiffs' claims or available defenses. That is precisely what courts caution against in a bellwether process. Bellwether selection "cannot be made in a vacuum," and must be grounded in "verifiable" information that identifies meaningful common issues and representative groupings. *See Meranus v. Gangel*, 1991 WL 120484, at 1-2 (S.D.N.Y. June 26, 1991); *Adams v.*

*Deva Concepts, LLC*, Nos. 1:20-cv-9717-GHW, 1:20-cv-9056-GHW, 2023 WL 6518771, at *1-6 (S.D.N.Y. Oct. 4, 2023).

**Third**, Plaintiffs' withholding of the Analysis creates an asymmetry that allows the Plaintiffs to cherry-pick attacks that appear most favorable to their theory of liability. The Court itself has expressed concern with this approach, noting that Defendants "raise strong points about whether or not these attacks have been cherry-picked. . . . [W]e want it to be representative. . . . What is the evidence linking a specific attack to the defendants, right? . . . That is the analysis that [Plaintiffs] put forward in the [Amended] [C]omplaint." (LaVigne Decl. Ex. 5 (August 26, 2025 Hearing Transcript ("Aug. Tr.")) 65:6-21.)

**Finally**, the Court has also acknowledged that the bellwether process, as currently structured, would only "narrow the scope of discovery that [P]laintiffs would produce," and would not "narrow in any meaningful way the [D]efendants' discovery, which is a large bulk of what we're talking about here." (LaVigne Decl. Ex. 7 (December 15, 2025 Hearing Transcript ("Dec. Tr.")) 16:5-17.) Proceeding with bellwether selection now therefore creates asymmetry without efficiency: Plaintiffs would benefit from immediate reductions in their obligations, while Defendants continue to prepare extensive productions without any limitations. This is precisely the type of imbalance the bellwether process is designed to avoid.[2]

---

[2] To the extent the Court expressed concerns at the December 15, 2025, conference regarding discovery into Plaintiffs' alleged injuries and damages before the selection of bellwether attacks, Defendants are willing to agree that if they are granted the requested relief in this Motion, they will not seek the production of Plaintiffs' medical records or the deposition of any Plaintiffs until Defendants' requested stay is lifted and bellwether selection is resumed or rendered unnecessary by the Court's ruling on the Motions to Dismiss.

For these reasons, and to promote the efficiency the bellwether process is intended to serve, Defendants seek a stay of the bellwether selection process until the Court issues its decisions on Defendants' Motions to Dismiss and the Motion to Compel the production of the Analysis.

## RELEVANT FACTUAL BACKGROUND

### A.    Plaintiffs' Amended Complaint Does Not Allege a Concrete Nexus Between Defendants' Conduct and the Attacks

Plaintiffs filed their Amended Complaint on November 23, 2024 (Dkt. 24) naming over 500 alleged victims (or their representatives) of over 60 acts of terrorism (the "Attacks"). (AC ¶ 2.) Plaintiffs seek to hold Defendants liable for the physical and emotional harm they suffered from the Attacks, and assert five causes of action under the Anti-Terrorism Act ("ATA") and the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. §§ 2333(a) and 2333(d)(2), respectively, for: (1) providing material support to cyber-terrorism group, "Wizard Spider"; (2) aiding-and-abetting designated FTOs in carrying out acts of international terrorism; (3) conspiring with Iran-affiliated FTOs to evade U.S. sanctions; (4) conspiring with Iran-affiliated FTOs by allowing them to access payments used in connection with acts of international terrorism; and (5) conspiring with ISIS to provide material support for its acts of international terrorism. (AC ¶¶ 1-2, 3041-187.) In their Amended Complaint, Plaintiffs extensively rely on the Analysis that allegedly supports their claims by connecting certain financial transfers, Defendants' activity, and the Attacks. (*See, e.g.*, *id.* ¶¶ 17, 765, 767-68, 778, 1153, 1263, 1266.)

All three Defendants moved to dismiss the Amended Complaint, explaining why Plaintiffs' claims fail as a matter of law, including on the grounds that, among other deficiencies, the Amended Complaint contains no allegations establishing a discernable nexus between Defendants' conduct and any Attack, which is required for liability. (*See* Dkt. 34-36, 61-62, 76-78, 79-80, 111-12, 128.) Plaintiffs could not articulate such a nexus, and instead relied on their willful blindness

4

theory, which the Court stated does not meet the standard set out in *Twitter* and its progeny. (*See* Nov. Tr. 50:5-51:15.)

**B.** **Plaintiffs Refuse to Produce Information Necessary for Meaningful Bellwether Selection**

On May 21, 2025, the Parties appeared for a status conference and Plaintiffs proposed that the parties select "bellwether plaintiffs" to reduce "in-depth discovery" on all Plaintiffs. (LaVigne Decl. Ex. 3 (May 21, 2025 Hearing Transcript ("May Tr.")) 8:13-9:16.) Defendants objected, stating that they lacked necessary information from Plaintiffs for bellwether selection. (*Id.* 10:25-11:21; 16:18-20.) The Court noted each side's position and stated that "depending on whether we have a bellwether, what the bellwether looks like, that could affect the discovery ***that is taken of the defendants as well***, at least in the short term." (*Id.* 17:9-12 (emphasis added).) The Court then instructed the parties to meet and confer to discuss "how this case should proceed, including whether discovery in this matter should be staged; whether the selection of [bellwether] plaintiffs would be appropriate, and if so a protocol for the selection of such plaintiffs; and if [bellwether] plaintiffs are selected, how that would affect discovery deadlines in this matter." (Dkt. 100.)

On June 11, 2025, Defendants sent Plaintiffs a proposed questionnaire seeking information sufficient to identify relevant factors for bellwether plaintiff selection. (Dkt. 116 at 1.) As Defendants noted, in one of the very few ATA cases that has proceeded to trial—*Linde et al. v. Arab Bank, PLC*, No. 04 Civ. 2799 (E.D.N.Y.)—Magistrate Judge Pohorelsky and Judge Gershon ordered the use of a similar questionnaire. (*Id.* at 2.) In response, Plaintiffs switched their approach and proposed that instead of focusing on a representative sample of ***Plaintiffs***, the parties select a list of representative ***Attacks***. (*Id.*)

In subsequent meet-and-confers, Plaintiffs explained that their proposed bellwether attacks would encompass a wide cross-section of Attacks and time periods and, as such, their proposed

bellwether process would not limit discovery sought from Defendants. (*See, e.g.*, LaVigne Decl. Ex. 2 (August 8, 2025 meet and confer email).) Defendants explained to Plaintiffs that they could not agree to the proposal if it would not meaningfully streamline discovery. (Dkt. 121 at 6.) Defendants also explained that it was unreasonable for Defendants to commit to any bellwether procedure, attack-based or otherwise, without additional information from Plaintiffs. (*Id.*)

Plaintiffs responded that the Amended Complaint contained all of the information that Defendants needed, and that if Defendants want more they should conduct their own investigation without further information from Plaintiffs. (*Id.*) But as set forth in the Motions to Dismiss and Motion to Compel, the Amended Complaint does not allege any facts connecting Defendants' conduct, or any transactions on Binance.com, to any particular Attack. (*See* BHL's Motion to Dismiss the Amended Complaint (Dkt. 35) at 20-21; Motion to Compel at 5.) Accordingly, Defendants informed Plaintiffs that the Amended Complaint is wholly inadequate to assist Defendants or the Court in selecting representative bellwether attacks. Further, it is illogical to suggest, as Plaintiffs' do, that Defendants conduct their own investigation into a purported nexus that Defendants maintain does not exist.

Defendants reiterated their demand for production of Plaintiffs' Analysis cited in the Amended Complaint (which Defendant BHL had previously requested in its December 2, 2024, Requests for Production of Documents from Plaintiffs). (Dkt. 136-5 (Defendants' August 20, 2025 Letter to Plaintiffs) at 2, 9-10; LaVigne Decl. Ex. 1 (BHL's Requests for Production of Documents dated December 2, 2024) Request Nos. 20-21, 26-27, 30-32; Motion to Compel at 6-9.) But Plaintiffs again refused to produce the Analysis.

The parties appeared for another conference on July 14, 2025, at which time the Court stated that Defendants' proposed questionnaire was premature, but recognized that "[c]ertainly

more information needs to be provided to the defendants so that a true discussion about representativeness on the bellwether issue can be had. Simply referring [Defendants] to the complaint is not sufficient." (July Tr. 45:9-11.) The Court therefore told Plaintiffs: "[Y]ou do have to provide [Defendants] with more information than you have. What you have provided so far is not sufficient. I saw your response that the information is in [the] complaint, [but] not with any degree of specificity that informs this discussion." (*Id.* 46:19-23.)

In August 2025, the parties continued to meet and confer, and Defendants proposed a preliminary discovery period for the parties to take certain steps, consistent with those identified by other courts contemplating the use of bellwethers, to ascertain the issues and facts needed to make a reasoned decision on how a bellwether process could best work in this case. (Dkt. 134 at 4.) At the August 26, 2025, conference before the Court, Defendants again sought production of the Analysis, particularly as it would be relevant to bellwether selection. (Aug. Tr. 52:9-53:8.) Plaintiffs argued that producing the Analysis would "blow up the case" and do discovery "backwards," which the Court immediately rejected. (*Id.* 53:15-20.) The Court again recognized that a key factor relevant to bellwether selection is "the evidence linking a specific attack to the defendants." (*Id.* 65:18-19.) However, Plaintiffs continued to resist Defendants' efforts to obtain basic information about Plaintiffs and about the nexus between Defendants' purported conduct and the Attacks, including the Analysis.

On October 10, 2025, the parties filed a joint letter to update the Court on the status of their meet-and-confers concerning the Analysis and bellwether selection. (*See* Dkt. 146.) Defendants noted that "Plaintiffs' refusal to produce, or even to meaningfully discuss, the Analysis has brought bellwether-related discussions to a complete halt, frustrating the Court's directive for the parties

to engage in meaningful discussions about what kinds of information about bellwether attacks can be exchanged." (*Id.* at 8.)

C. **Following Months of Meet-and-Confers, Plaintiffs Still Refuse to Provide Their Blockchain Analysis While Using It to Support Their Claims**

While Plaintiffs withhold any information concerning the Analysis, they have continued to invoke it to support their claims, seek expansive discovery from Defendants, and likely rely upon it to select their proposed bellwether attacks. On November 10, 2025, the Court set a hearing and ordered that Plaintiffs:

> outline the specific allegations in the Amended Complaint that demonstrate the requisite nexus between Defendants' alleged misconduct and each of the terrorist attacks at issue in the Amended Complaint . . . . on an attack-by-attack basis, pointing to allegations pertaining to the nature of the specific assistance the Defendants provided to the terrorist organization that perpetrated such attack, when such assistance was provided, and how close in time to the attack such assistance was provided.

(Dkt. 157.) During that argument, Plaintiffs represented that the Analysis establishes the specific nexus and assistance provided by Defendants to FTOs. (LaVigne Decl. Ex. 6 (November 25, 2025, Hearing Transcript ("Nov. Tr.")) 38:7-14 ("We have conducted this blockchain analysis, [which shows] about $56 million in volume through Binance relating to Hamas wallets.").) Plaintiffs further represented to the Court that "based on [their] analysis, the defendants knew that there was at least $2.9 million and 27 distinct wallet addresses involved" with ISIS addresses (*id.* 47:20-22), and that "through [their] blockchain [A]nalysis, [Plaintiffs] identify at least $1.8 million flowing through 90 distinct Al Qaeda wallets from 2017 to 2024." (*Id.* at 53:13-15.) Plaintiffs acknowledged their reliance on the Analysis to show purported connections between transactions, Defendants' conduct, and the Attacks. Yet, Plaintiffs continue to refuse to produce that same Analysis to Defendants. The Court does not need to review the Analysis in order to grant the Motions to Dismiss, because even with the allegations concerning the Analysis the Amended

Complaint does not set forth legally sufficient claims under the ATA or JASTA. (Nov. Tr. 50:5-51:15.)

During a subsequent status conference on December 15, 2025, the Court questioned whether it is still worth pursuing this "bellwether discovery" issue and acknowledged that while it will "narrow the scope of discovery that plaintiffs would produce," it will not "narrow in any meaningful way the defendants' discovery, which is a large bulk of what we're talking about here." (Dec. Tr. 16:5-17.) Nonetheless, the Court reversed course and indicated that Defendants did "not need the blockchain analysis to discuss the [b]ellwether" selection process, because, hypothetically, if "the blockchain analysis focused on one terrorist group, [the parties and the Court were] not going to pick six attacks that involve one terrorist group on a limited timeframe and a limited geography." (*Id.* 23:4-17.) The Court issued an order directing the parties to submit a joint letter containing each parties' six proposed representative bellwether attacks, from which the Court would make a final selection, by January 14, 2026. (Dkt. 168.) The parties have done so. (Dkt. 171.) During the December 15, 2025, conference, the Court instructed Defendants to move to compel with respect to the Analysis. (*See* Dec. Tr. 26:12-14.) BHL has done so. (Dkt. 173-75.)

## **ARGUMENT**

### A.    **There is Good Cause for the Requested Stay of Bellwether Selection**

"[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 683 (1997). Here, good cause exists for the Court to exercise its discretion and to stay the bellwether selection process because (1) a decision on Defendants' Motions to Dismiss could dispose of the case entirely, particularly given Plaintiffs' admission that the Amended Complaint alleges only willful blindness by Defendants, rather than the required allegations of a nexus between Defendants' conduct and the Attacks under JASTA, or narrow the scope of Plaintiffs' claims against Defendants, rendering selection of some

9

or all Attacks moot; (2) the bellwether process is premature as neither Defendants nor the Court have sufficient information regarding any nexus between Defendants' alleged conduct and any Attack to select representative bellwether attacks; and (3) the bellwether process as currently structured is fundamentally one-sided and would not reduce the discovery burden on the parties—and particularly not on Defendants—which is one of the main goals of any bellwether process.

**B.      The Court's Decision on Defendants' Pending Motions to Dismiss Will Significantly Impact the Scope and Structure of Any Bellwether Process**

The Court should stay the bellwether selection process until it rules on Defendants' Motions to Dismiss because the Court's ruling may dismiss this action in its entirety or substantially narrow the claims and Attacks that remain at issue. Any such narrowing would necessarily transform, or even eliminate, the bellwether process.

As set out in Defendants' Motions to Dismiss briefing (*see, e.g.*, BHL's Motion to Dismiss (Dkt. 35) at 17-22; BAM's Motion to Dismiss (Dkt. 62) at 9-20; Changpeng Zhao's Motion to Dismiss (Dkt. 112) at 14-23; Changpeng Zhao's Reply in Support of His Motion to Dismiss (Dkt. 128) at 5-12), *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025), and the cases decided in their wake require Plaintiffs to allege (1) a concrete nexus between a defendant's activity and the Attacks, or (2) a defendant's pervasive, systemic and culpable assistance of the FTOs. *See, e.g., Ashley*, 144 F.4th 420 at 444-45; *Fraenkel v. Standard Chartered Bank*, 2025 WL 2773251, at *9 (S.D.N.Y. Sept. 26, 2025).

Plaintiffs do not meet this pleading standard for any Attack. The Court directed Plaintiffs to articulate "the specific allegations in the Amended Complaint that demonstrate the requisite nexus between Defendants' alleged misconduct and each of the terrorist attacks at issue in the Amended Complaint." (Dkt. 157.) Plaintiffs discussed their allegations regarding the Attacks

perpetrated by specific FTOs (*see* Nov. Tr. 36:20-40:19 (Hamas and PIJ); 41:19-46:9 (Hezbollah); 46:13-52:23 (ISIS); 53:5-55:12 (Al-Qaeda)), but Plaintiffs could not articulate any basis for their claims that Defendants were aware of, were connected to, or intended to support those Attacks and, instead, set out their willful blindness theory, which the Court stated does not meet the standard set out in *Twitter* and its progeny. (*See id.* at 50:5-51:15.)

Accordingly, should the Court hold that the allegations as to some or all of the Attacks or FTOs are insufficient to survive dismissal, selecting bellwether attacks representing those Attacks or FTOs will be unnecessary and inefficient. Staying the bellwether process while the Motions to Dismiss are pending will prevent unnecessary discovery and additional bellwether selections if claims regarding certain Attacks are dismissed.

### C.    Neither the Court nor Defendants Have Information Necessary to Select Representative Bellwether Attacks

Bellwether selection should also be stayed because Defendants and the Court currently do not have sufficient information regarding the purported nexus (if any) between Defendants' alleged conduct and any of the Attacks to be able to meaningfully select bellwether attacks.

"A bellwether trial designed to achieve its value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the universe of claimants has as a core element representativeness." *In re Chevron U.S.A.*, 109 F.3d 1016, 1019 (5th Cir. 1997). Bellwether selection "cannot be made in a vacuum." *Meranus*, 1991 WL 120484, at *1-2 (ordering limited interrogatory discovery and document productions to determine whether a bellwether was appropriate). Selection should only occur after verifiable information is available to identify common issues and representative plaintiffs. *See Adams*, 2023 WL 6518771, at *1-6 (deferring decision on bellwether and ordering further discovery where there was only "unverified or dubiously verified" information); *see also In re Repetitive Stress Inj. Litig.*, 11 F.3d 368, 373-

74 (2d Cir. 1993) (a consolidated process must not veer "too far in the interests of expediency and sacrifice basic fairness in the process").

Bellwether selection requires sufficient information on variables regarding the claims brought and *the availability of certain defenses*. *See Adams*, 2023 WL 6518771, at *4-5. Unverified information, including sworn questionnaires and the Amended Complaint, does not suffice. *Id.* After the necessary information is gathered, courts should: *first*, catalogue all claims and cases into categories based on prominent variables; *second*, pool representative cases and determine test cases that (a) reflect the individual categories of the overall cases, (b) "illustrate their likelihood of success and measure of damages," and (c) illuminate challenges of presenting certain types of cases; and *third*, establish a method for selecting a predetermined number of individual cases for trial. *Id.* at *3.

Here, none of these steps has been nor can be taken yet, as Defendants—and the Court—lack the information needed to begin this process. An important variable in this case is the type of connection between transactions, Defendants' conduct, and Attacks. This variable goes directly to the issues of nexus and what activity constitutes "assistance," necessary to evaluate the claims and defenses in this case. However, Defendants and the Court lack the information Plaintiffs purportedly possess identifying the activity (if any) that serves as culpable "assistance" and how that activity is connected (if at all) to particular Attacks. This is particularly essential in this case where Plaintiffs have admitted on the record that their Amended Complaint does not allege culpable assistance of FTOs by Defendants, but merely willful blindness by Defendants—a position that, as noted above, clearly fails to meet the high bar required for JASTA liability and therefore mandates dismissal. Without this information, Attacks cannot be selected that reflect representative categories of Plaintiffs' overall claims. Meanwhile, the variables that can be

identified for bellwether selection from the Amended Complaint alone, such as geography or timing, fail to address common causation or liability issues. For example, that one Attack happened in Afghanistan does not mean that trying claims that arise from that Attack will address common liability or causation issues of claims arising from another Attack in Afghanistan, that occurred at a *different* time, by a *different* terrorist group, based on a *different*, more or less attenuated, nexus.

The Court has recognized Defendants lack the basic information needed to engage in a fair or informed selection process, explaining that Plaintiffs' Amended Complaint is "not sufficient" and lacks "any degree of specificity that informs this [bellwether] selection." (July Tr. 46:19-23). The Court further stated that "more information needs to be provided to the [D]efendants so that a true discussion about representativeness on the bellwether issue can be had. Simply referring [Defendants] to the [Amended] [C]omplaint is not sufficient." (*Id.* 45:9-11.) The Court was specifically referring to Plaintiffs' Analysis, which is the most immediately available information that would shed further light on the requisite nexus between Defendants and any specific attack. (*See* Aug. Tr. 65:18-19.) This Analysis is necessary to determine "whether there are unique defenses with respect to particular attacks or the strength and weaknesses of a liability claim based on a specific attack." (*Id.* at 52:2-5); *Adams*, 2023 WL 6518771, at *4-5.

Indeed, multiple district courts handling mass-plaintiff-mass-attack ATA cases have declined to commence the bellwether process before discovery has begun or while preliminary discovery is proceeding. *See, e.g.*, *Moses v. BNP Paribas, S.A.*, No. 1:24-cv-04938 (S.D.N.Y.) (operative complaint filed November 2024 and no bellwether process initiated in 250-plus plaintiff, 63-attack ATA case while motion to dismiss was pending); *Cabrera v. Black and Veatch Special Projects Corp.*, No. 1:19-cv-03833-EGS (D.D.C.) (operative complaint filed March 2024, no bellwether process initiated in 700-plus plaintiff, 197-attack ATA case); *Schmitz v. Ericsson*

*Inc.*, No. 1:22-cv-02317 (D.D.C.) (operative complaint filed December 2022, no bellwether process initiated in 1300-plus plaintiff, 250-plus-attack ATA case); *Bartlett v. Societe Generale de Banque au Liban SAL et al*, No. 1:19-cv-00007 (E.D.N.Y.) (operative complaint filed August 2024, motion to dismiss denied, discovery ongoing, no bellwether process initiated in 1100-plus plaintiff, 267-attack ATA case); *Zobay v. MTN Grp. Ltd.*, No. 1:21-cv-03503 (E.D.N.Y.) (operative complaint filed November 2023, discovery commenced as of March 2024, no bellwether process initiated in 300-plus plaintiff, 12-attack ATA case).

Proceeding without adequate information risks selecting bellwether attacks that are not representative of the claims at issue, do not encompass the relevant causation or liability theories, and provide no useful insight into categories of Plaintiffs' claims or available defenses. Staying the selection of the bellwether attacks until the Analysis has been produced and Defendants and the Court have access to such information aligns with the Court's recognition that meaningful selection is impossible until Plaintiffs provide the information they uniquely possess and that serves the bellwether process' purpose.

**D.** **The Bellwether Process, as Currently Structured, Is Fundamentally One-Sided and Improperly Favors Plaintiffs**

    *i.*   *Plaintiffs Alone Possess Information Critical to Their Nexus Allegations and Can Cherry-Pick Attacks Based on It*

Although Plaintiffs have repeatedly refused to produce the Analysis, they continue to rely on that same Analysis to seek extensive discovery from Defendants. And Plaintiffs have the unfair advantage of benefitting from the Analysis when choosing attacks for their January 14, 2026 attack proposal, and were able to submit bellwether attacks most favorable to their liability theory.

The Court has already expressed concern with this dynamic, noting that Defendants "raise strong points about whether or not these attacks have been cherry-picked. . . . [W]e want it to be

representative. . . . What is the evidence linking a specific attack to the defendants, right? . . . That is the analysis that [Plaintiffs] put forward in the [amended] complaint." (Aug. Tr. 65:6-21.)

Selecting bellwether attacks while Plaintiffs maintain exclusive control over the core nexus evidence is also irreconcilable with the fundamental premise of a bellwether process, which requires balance, transparency, and representativeness.

      ii.    *The Current Process Limits Only Plaintiffs' Discovery While Leaving Defendants' Broad Discovery Burdens Intact*

A primary objective of any bellwether process is to streamline and reduce the discovery burden on all parties. But conducting a bellwether selection now will not achieve that goal.

While the Court surmised that a bellwether process could reduce the discovery burden on all parties (May Tr. 17:9-12), it is now clear that the current process will not "narrow in any meaningful way the defendants' discovery, which is a large bulk of what we're talking about here." (Dec. Tr. 16:5-17.) Indeed, Defendants are already preparing voluminous document productions with a rigorous data privacy and logging protocol. Meanwhile, the lion's share of discovery on individual Plaintiffs is stalled, while at most, some of Plaintiffs' discovery obligations might be lessened through a bellwether process.

Proceeding with bellwether selection now therefore creates asymmetry without efficiency: Defendants will continue to bear the burden and cost of extensive productions, while Plaintiffs would benefit from immediate reductions in their discovery burden—notwithstanding that they voluntarily assumed this burden by opting to litigate a massive case, with hundreds of plaintiffs and over 60 disparate Attacks.

A stay cures that imbalance. It ensures that any eventual bellwether process serves its actual purpose: to streamline discovery for ***both*** sides and to narrow issues for trial based on complete and representative information available to ***all***.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court issue an order staying the bellwether process in its entirety until the Court issues its decisions on both Defendants' Motions to Dismiss and the Motion to Compel Plaintiffs to Produce the Blockchain Analysis.

Dated: January 16, 2026                                 Respectfully submitted,
     New York, New York

**BAKER HOSTETLER LLP**                          **WITHERS BERGMAN LLP**

By: */s/ Joanna F. Wasick*                               By: */s/ Christopher N. LaVigne*
Joanna F. Wasick                                         Christopher N. LaVigne
Marco Molina                                             Joseph E. Gallo
45 Rockefeller Plaza                                     Alexander C. Haden
New York, NY 10111                                       430 Park Avenue, 10th Floor
Tel: (212) 589-4200                                      New York, NY 10022
jwasick@bakerlaw.com                                     Tel: (212) 848-9800
mmolina@bakerlaw.com                                     Christopher.LaVigne@withersworldwide.com
                                                         Joseph.Gallo@withersworldwide.com
Teresa Goody Guillén (*pro hac vice*)                    Alex.Haden@withersworldwide.com
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.                              *Counsel for Defendant*
Washington, D.C. 20036                                   *Binance Holdings Limited*
Tel: (202) 861-1500
tgoodyguillen@bakerlaw.com                               **WINSTON & STRAWN LLP**

*Counsel for Defendant Changpeng Zhao*                   By: */s/ Thania Charmani*
                                                         Thania Charmani
                                                         Daniel T. Stabile
                                                         MetLife Building
                                                         200 Park Avenue
                                                         New York, NY 10166
                                                         Tel: (212) 294-6700
                                                         ACharmani@winston.com
                                                         DStabile@winston.com

                                                         *Counsel for Defendant BAM Trading Services*
                                                         *Inc.*

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to Individual Rules and Practices in Civil Cases of Honorable Jeanette A. Vargas, Rule 5(A), I hereby certify that the above Defendants' Memorandum of Law in Support of Their Motion to Stay Bellwether Selection contains 4,683 words, excluding caption, table of contents, table of authorities, signature blocks and appended certificates and is therefore compliant with the word count limitations.

Dated: January 16, 2026

*/s/ Christopher N. LaVigne*
Christopher N. LaVigne
