**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOCELYN TROELL, individually and for the estate of STEPHEN TROELL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BINANCE HOLDINGS LIMITED d/b/a BINANCE and BINANCE.COM, *et al.*, <br><br> Defendants. | Case No.: 1:24-cv-7136 (JAV) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
BINANCE HOLDINGS LIMITED'S MOTION TO COMPEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ....................................................................................................................3

I.      FACTUAL BACKGROUND ...................................................................................3

II.     PROCEDURAL BACKGROUND..........................................................................5

ARGUMENT ........................................................................................................................8

I.      Rule 26(b)(4)(D) Protects Plaintiffs' Pre-Filing Blockchain Analysis From
        Compelled Disclosure ...................................................................................................8

        A.      The Purposes of Rule 26(b)(4)(D) Strongly Support Plaintiffs' Position...............9

        B.      Binance Cannot Show "Exceptional Circumstances" That Could Justify
                Compelled Disclosure ...................................................................................9

                1.      Binance Waived Any Argument That "Exceptional
                        Circumstances" Exist. .................................................................9

                2.      "Exceptional Circumstances" Imposes a High Bar that Binance
                        Cannot Meet..............................................................................10

                3.      Binance's Arguments on Work-Product Are Unavailing Here. ................11

        C.      Plaintiffs Have Not Waived the Protections of Rule 26(b)(4)(D) ........................14

                1.      Rule 26(b)(4)(D) Is Not Waivable. ...............................................14

                2.      Binance Cannot Show Waiver. ....................................................16

II.     Opinion Work Product Protections Entirely Shield Plaintiffs' Pre-Filing
        Blockchain Analysis From Compelled Disclosure ...........................................................22

III.    Ordinary Work Product Protections Also Shield Plaintiffs' Pre-Filing Blockchain
        Analysis From Compelled Disclosure ...........................................................................23

        A.      Binance Has Not Shown That There Was a Waiver....................................................24

        B.      Work Product Cannot be Overcome Here ..........................................................25

                1.      No Substantial Need. ...................................................................25

                2.      No Undue Hardship. ....................................................................26

IV.     Binance's Threatened "Motion to Strike" Fails to Persuade ............................................27

CONCLUSION.................................................................................................................27

## **TABLE OF AUTHORITIES**

**Cases**                                                                                               **Page(s)**

*Adinolfe v. United Techs. Corp.*,
    2015 WL 11254706 (S.D. Fla. Sept. 17, 2015) .................................................................. *passim*

*Aim High Inv. Grp., LLC v. Spectrum Labs., LLC*,
    2022 WL 16859974 (C.D. Cal. Oct. 20, 2022) ........................................................................ 15

*Ambac Assur. Corp. v. DLJ Mortg. Cap., Inc.*,
    939 N.Y.S.2d 333 (1st Dep't 2012) .................................................................................. 16, 18

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    1994 WL 510043 (S.D.N.Y. Sept. 16, 1994) ........................................................................ 26

*Berk v. Choy*,
    2026 WL 135974 (Jan. 20, 2026) ............................................................................ 18, 20, 27

*Clubside, Inc. v. Valentin*,
    468 F.3d 144 (2d Cir. 2006) ................................................................................................ 10

*Deangelis v. Corzine*,
    2016 WL 93862 (S.D.N.Y. Jan 7, 2016) .............................................................................. 23

*Dover v. Brit. Airways, PLC (UK)*,
    2014 WL 5090021 (E.D.N.Y. Oct. 9, 2014) ........................................................................ 17

*Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*,
    296 F.R.D. 3 (D.D.C. 2013) ................................................................................................ 14

*Farmer v. United States*,
    2017 WL 3448014 (S.D.N.Y. Aug. 10, 2017) ...................................................................... 10

*Favors v. Cuomo*,
    285 F.R.D. 187 (E.D.N.Y. 2012) ........................................................................................ 23

*Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*,
    485 F. Supp. 3d 419 (S.D.N.Y. 2020) ...................................................................... 11, 15, 19

*Financial Guaranty Insurance Co. v. Putnam Advisory Co., LLC*
    314 F.R.D. 85 (S.D.N.Y. 2016) ............................................................................... 15, 18, 19

*Gen. Motors LLC v. Ashton*,
  2022 WL 16817711 (D.N.J. Nov. 7, 2022) .......................................................... 16

*Gerber Sci. Int'l, Inc. v. Roland DGA Corp.*,
  2010 WL 3803206 (D. Conn. Sept. 20, 2010) ....................................................... 10

*Granite Partners v. Bear, Stearns & Co*
  184 F.R.D. 49 (S.D.N.Y. 1999) .................................................................... 24, 25

*Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*,
  154 F.R.D. 202 (N.D. Ind. 1993) ..................................................................... 13

*Hickman v. Taylor*,
  329 U.S. 495 (1947)..................................................................................... 22

*In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*,
  2019 WL 13046984 (S.D.N.Y. Feb. 25, 2019) ....................................................... 21

*In re Grand Jury Proc.*,
  219 F.3d 175 (2d Cir. 2000)............................................................................ 24

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  293 F.R.D. 568 (S.D.N.Y. 2013) ..................................................................... 22

*In re Nat. Gas Commodities Litig.*,
  232 F.R.D. 208 (S.D.N.Y. 2005) ..................................................................... 26

*In re PolyMedica Corp. Sec. Litig.*,
  235 F.R.D. 28 (D. Mass. 2006)........................................................................ 11

*John Doe Co. v. United States*,
  350 F.3d 299 (2d Cir. 2003)........................................................................... 24

*Larson v. Davidson Trucking, Inc.*,
  2024 WL 2764457 (N.D. Ind. May 29, 2024) ................................................... 10, 12

*Ludwig v. Pilkington N. Am., Inc.*,
  2003 WL 22242224 (N.D. Ill. Sept. 29, 2003) ..................................................... 14

*Madanes v. Madanes*,
  199 F.R.D. 135 (S.D.N.Y. 2001) ..................................................................... 22

*Massachusetts Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  293 F.R.D. 244 (D. Mass. 2013) ............................................................. 16, 17, 25

*Mateo v. Bristow*,
2013 WL 3863865 (S.D.N.Y. July 16, 2013) ................................................................. 9

*New York Times Co. v. United States Dep't of Just.*,
939 F.3d 479 (2d Cir. 2019)................................................................... *passim*

*Pine Top Ins. Co., v. Alexander & Alexander Servs., Inc.*,
1991 WL 221061 (S.D.N.Y. Oct. 7, 1991) ............................................................. 26

*Precision of New Hampton, Inc. v. Tri Component Prods. Corp.*,
2013 WL 2444047 (N.D. Iowa June 5, 2013)........................................ 9, 10, 12, 27

*Republic of Ecuador v. Mackay*,
742 F.3d 860 (9th Cir. 2014) ............................................................. 23

*SEC v. Roberts*,
254 F.R.D. 371 (N.D. Cal. 2008)................................................................. 23

*Strobl v. Werner Enters., Inc.*,
577 F. Supp. 3d 960 (S.D. Iowa 2022) ............................................................. 12

*United States v. Adlman*,
134 F.3d 1194 (2d Cir. 1998)................................................................. 22

*United States v. Dentsply Int'l, Inc.*,
2000 WL 654378 (D. Del. May 10, 2000)............................................................. 8

*United States v. Nobles*,
422 U.S. 225 (1975)................................................................. 23

*Vanguard Sav. & Loan Ass'n, VSL Serv. Corp. v. Banks*,
1995 WL 71293 (E.D. Pa. Feb. 17, 1995) ....................................................... 14, 15

*von Kahle v. Cargill, Inc.*,
599 F. Supp. 3d 181 (S.D.N.Y. 2022)............................................................. 26

*Worley v. Avanquest N. Am. Inc.*,
2013 WL 6576732, (N.D. Cal. Dec. 13, 2013) ......................................... 15, 20, 21

*Zeiger v. WellPet LLC*,
2018 WL 10151156 (N.D. Cal. Apr. 10, 2018) ......................................... 15, 20, 21

**Other Authorities**

Wright & Miller,
    Federal Practice & Procedure § 2032 (3d ed. 2025)............................................................... 9, 14

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) .............................................................................................. 25

Fed. R. Civ. P. 26(b)(4)(D) .......................................................................................... *passim*

## PRELIMINARY STATEMENT

Before filing the initial complaint, Plaintiffs retained a consulting expert who conducted a preliminary analysis of open-source data and immutable public blockchains in connection with just one piece of the many detailed allegations.  Binance's motion seeking to compel premature disclosure of that preliminary analysis should be denied.  Instead of meaningfully addressing the relevant governing legal standards to demonstrate that it can overcome the strong protections afforded these materials, Binance uses this motion as yet another vehicle to relitigate the same argument that the Court squarely rejected at the December 15 conference: that receiving the blockchain analysis now is necessary to select bellwether attacks.  But the Court has recently reaffirmed its rejection of this argument, and because Binance cannot come up with any alternate reason why it needs the materials *now*, far in advance of expert discovery, its motion falls flat.

*First*, Binance's position runs headlong into Federal Rule of Civil Procedure 26(b)(4)(D), which protects non-testifying expert materials from disclosure absent a showing of "***exceptional circumstances***."  Astonishingly, Binance's brief does not even mention this stringent requirement, much less attempt to explain why the present circumstances qualify for that narrow exception.  Courts routinely reject motions to compel under this standard when a party could hire its own experts to do their own analysis, as Binance could here.

Unable to clear the "exceptional circumstances" hurdle, Binance declines to even try to do so, and instead rests its entire position on the argument that Plaintiffs waived the protections afforded by Rule 26(b)(4)(D).  This argument cannot support the weight Binance places on it.  Most courts reaching the issue have persuasively concluded that Rule 26(b)(4)(D) protections *are not waivable at all*.  That alone could decide the issue.  Instead of addressing the split in authority and explaining why the Court should adopt the minority view, Binance elides this fundamental problem entirely.  But even were the Court to adopt the minority view, the facts here cannot support

a finding of waiver under any standard that might apply. Courts nationwide have consistently recognized that referencing a consulting expert's analysis in a complaint does not expose that analysis to early discovery. And for good reason—as the substantial weight of authority explains, premature compelled disclosure would punish diligent plaintiffs for fulfilling their Rule 11 obligations and run counter to the purposes of that Rule and Rule 26(b)(4)(D).

*Second*, Plaintiffs' blockchain analysis is independently protected from disclosure by the work product doctrine. To begin, the analysis is inextricably intertwined with attorney opinion work product, and thus is afforded near absolute immunity from compelled disclosure. But even were only "ordinary" work product protection applicable, Binance's motion would still fail.

Regarding work product waiver, Binance again fails to analyze the controlling standard. In 2019, the Second Circuit clarified the standard courts had previously applied to at-issue waiver and emphatically rejected the use of "broad language in describing [the at-issue waiver] doctrine," including "sword" and "shield" analogies, holding that "waiver of the work product privilege based on the 'fairness' or 'at-issue' doctrine ***is not nearly so broad***" and requires "***specific instances of unfairness that undermine the adversarial process***." *New York Times Co. v. United States Dep't of Just.*, 939 F.3d 479, 496 (2d Cir. 2019) (cleaned up) (emphasis added). Instead of addressing this standard, Binance simply recycles old cases—including some of the very cases the Second Circuit rejected—and never attempts to make the required showing of "specific instances of unfairness that undermine the adversarial process." Nor could Binance make such a showing: expert discovery in the ordinary course will provide Binance all it needs to challenge Plaintiffs' claims during summary judgement and at trial.

Likewise, Binance cannot meet the "substantial need" and "undue hardship" tests required to overcome "ordinary" work product protections in the absence of waiver. Binance has one

argument: cost.  But neither the facts nor the law support Binance's cost argument.  Binance—the largest and wealthiest cryptocurrency exchange in the world—could certainly replicate Plaintiffs' preliminary pre-filing blockchain analysis without incurring undue hardship, especially because Binance has in-house blockchain expertise, superior knowledge of the relevant blockchain expert market, and vast financial resources.  Moreover, there is no reason why Binance needs to use its resources now to review preliminary blockchain analysis anyway; it will receive a full expert report in the ordinary course of expert discovery.  In any event, courts in this District have persuasively held that cost alone does not constitute undue hardship.

## **BACKGROUND**

### I.    FACTUAL BACKGROUND

Before filing the complaint, Plaintiffs retained James P. Brennan, a forensic accountant who specializes in accounting, forensic investigations, blockchain analysis, and disputes involving complex financial transactions.  Declaration of James P. Brennan ("Brennan Decl."), at ¶¶ 7-12; *see also* Declaration of Matthew Fisher ("Fisher Decl."), at ¶ 3.  At Plaintiffs' counsel's direction, Mr. Brennan focused on "analyzing public blockchain data to identify, assess, and quantify transactions between cryptocurrency wallets owned, operated, or controlled by Binance and external cryptocurrency wallets likely owned by, controlled by, or associated with specific designated terrorists."  Brennan Decl. ¶ 12; *see also* Fisher Decl. ¶ 4.

"At all times, Counsel for Plaintiffs directed the nature and scope of the investigation," Fisher Decl. ¶ 6, and Mr. Brennan's work was "part of an ongoing, iterative process that involved continuous consultation with Counsel," Brennan Decl. ¶ 14.  The analysis was refined "over the course of several months . . . in response to questions posed and priorities identified by Counsel," *id.*, and "as more public data regarding Defendants' misconduct . . . became public or was discovered by counsel for Plaintiffs or the Blockchain Analysis Firm," Fisher Decl. ¶ 7.  For that

reason, the requested "blockchain analysis" does not exist as a single report. Rather, it is dispersed across "multiple versions of various documents, email communications, and spreadsheets that, together, were attorney-directed assessments undertaken for the purposes of pre-filing diligence." Brennan Decl. ¶ 15; *see also* Fisher Decl. ¶ 8.

Mr. Brennan used "publicly available on-chain data and proprietary blockchain analytic solutions" to conduct his analysis. Brennan Decl. ¶ 18. The pre-filing work "relied on wallets for which the attribution had been made public." *Id.* ¶ 20. To identify wallets for Binance's counterparties, Mr. Brennan "relied on attributions from public sources to which Binance would have had direct access," *id.* ¶ 25, including "U.S. sanctions . . . on terrorist-owned or -affiliated wallets, which are included on the Lists of Specially Designated Nationals and Blocked Persons maintained and published by the Treasury Department's Office of Foreign Asset Control," "lists of terrorist-owned or -affiliated wallet addresses published by Israel's National Bureau for Counter Terror Financing ('NBCTF')," and "forfeiture proceedings pursued by the U.S. government, that identified terrorist-owned or -affiliated wallet addresses," *id.* ¶ 26. Mr. Brennan also applied "industry-standard" anti-money laundering and countering the financing of terrorism ("AML/CFT") techniques such as "clustering," which examines transaction patterns suggesting common ownership or affiliation. *Id.* ¶¶ 28-29. "For example, if a wallet that is designated as owned by Hamas-affiliated terrorists regularly transfers smaller amounts of cryptocurrency to the same ten wallets within one week of receiving larger transfers of cryptocurrency over an extended period of time, the ten wallets may be subjected to further analysis because they, too, may well be Hamas-owned or -affiliated." *Id.* ¶ 29.

Mr. Brennan's blockchain analysis "was preliminary due to the need to exclusively rely on public blockchain data." *Id.* ¶ 31. He examined Binance omnibus wallets and "hot" wallets. *Id.*

4

¶ 21.  Outgoing transactions from "hot" wallets are recorded on public blockchains; by contrast, "a large volume of cryptocurrency transactions between Binance customers' accounts occurs within a relative 'black box,' as such activity can only be seen by Binance and the specific Binance customers that own or otherwise control the accounts that are parties to each such transactions." *Id.* ¶ 24.

For that reason, any final expert analysis will require "analysis of Binance's internal ledger data, user account data, and trade logs covering specific user accounts, as well as expanding a public blockchain analysis to include the full inventory of wallets tied to the platform, including Binance's omnibus wallets (including hot wallets) and operational accounts." *Id.* ¶ 31.  "These materials—all in Binance's possession—are necessary to definitively determine wallet ownership, trace movements across internal infrastructure, and match on-chain activity to underlying customer accounts in a way no outside investigator, lacking this privileged visibility, could replicate." *Id.*

Because the blockchain data used to perform the blockchain analysis is public, "Binance would be capable of performing the same wallet-tracing and transactional analyses." *Id.* ¶ 30.  The sources relied upon for wallet attributions are "public as well, or otherwise available to Binance," and Binance "certainly has the ability to retain outside consultants . . . to perform and apply the same clustering analysis and other techniques" Mr. Brennan used.  *Id.*  Finally, "every single wallet address" Mr. Brennan analyzed "was included in the long list of wallet addresses that Counsel served on Binance as part of Plaintiffs' initial document requests." *Id.*

## II.    PROCEDURAL BACKGROUND

Binance quotes several prior conditional statements made by the Court that work product protection for Plaintiffs' blockchain analysis *might* be overcome *if* the blockchain analysis were necessary for bellwether attack selection.  For example, Binance repeatedly relies on the Court's comment at the August 26 conference that, in the bellwether selection context, if there is a "need

for defendants to have it, they are going to get it."  Aug. Tr. at 66:3-4; *see* ECF No. 174 ("BHL's Mem."), at 3, 17.  But the Court prefaced that comment by stating that the issue needed to be "briefed to the Court from both parties, because it is going to be a work product issue that [Plaintiffs] want to assert."  Aug. Tr. at 65:23-25.  And, after further discussion, the Court followed that comment by stating:

> And *if* liability is one of the issues that . . . we should take into account, we will. ***Perhaps there's not going to be enough information and that's one of the things that representative samples we'll just let play out***.  Some may be stronger, some may be weaker.  We may not be able to assess that at the outset. . . .  [T]he inquiry that we're doing right now . . . is ***can we assess liability strength at the outset***.  ***And if we can't, we can't***.  We're certainly not going down the path of months of expert discovery to determine bellwethers. That is not what we're doing here. That's not going to be a thing.

*Id.* at 69:10-70:3 (emphasis added).

The Court later directed the parties to file a submission on the issue of whether the Court and the parties should use blockchain analysis to select bellwether attacks, which the parties provided.  *See* ECF No. 146 (Joint Letter, Oct. 10, 2025).  Plaintiffs explained that "[a]ttack selection should be driven by representativeness among geography, attack type, timeframe, and terrorist group—consistent with the Court's guidance that representative attacks should include 'different types of attacks' and 'different terrorist groups,'" and explained that using the blockchain analysis to select bellwether attacks based on early views of relative liability strength would actually *distort* representativeness, cause delay, and impose early expert costs.  *Id.* at 1-2.

Further, Plaintiffs noted that because the vast quantity of relevant materials are in Defendants' sole possession, it is very "likely that the relative nexus strength of attacks will be different after full fact and expert discovery, reinforcing the need to base attack-representativeness determinations on attributes that are unconnected" to liability strength.  *Id.* at 2 & n.2.

At the December 15, 2025 conference, after considering the parties' submissions on whether blockchain analysis should be used to select bellwether attacks and in light of the motion to dismiss argument, the Court squarely rejected Defendants' position that blockchain analysis should be used as part of the bellwether attack selection process:

> THE COURT: You do not need the blockchain analysis to discuss the Bellwether. The issues are the timeframes, who the terrorist groups are, the number of plaintiffs. We're trying to find representative samples.
>
> MS. WASICK: But what about --
>
> THE COURT: I understand you think the blockchain is important to that. I disagree. As I think [was] very astutely pointed out, the issue right now is the sufficiency of the allegations in the complaint, . . . Let's say the blockchain analysis focused on one terrorist group, we're not going to pick six attacks that involve one terrorist group on a limited timeframe and a limited geography. We would still need to pick a sample of them. Now, maybe their evidence as to one or the other will be stronger or not as strong based on the blockchain, based on other evidence. But that's why we're picking a sample that spans the terrorist groups, that spans geography, that spans attack type. That's what we're going to do.

Dec. 15 Tr. at 22:11-23:22; *see also id.* at 24:24-27:3 (further rejecting Defendants' position).

While Binance implies that the Court prejudged these issues in Defendants' favor at prior conferences, that is plainly incorrect. The Court not only rejected Defendants' argument that blockchain analysis would be used to select bellwether attacks, but also gave Plaintiffs a full opportunity to brief their work product and Rule 26(b)(4)(D) protections—which the Court correctly noted had not been properly briefed independent of the bellwether selection process.

The Court recently reaffirmed that blockchain analysis would not play a role in selecting bellwether attacks in denying a "motion to stay" bellwether attack selection: "Defendants essentially seek reconsideration of the Court's prior directions with respect to this issue, raising arguments that the Court has already considered and rejected." ECF No. 183 (Feb. 4, 2026 Order at 1).

## ARGUMENT

Binance's attempt to compel disclosure of Plaintiffs' preliminary blockchain analysis from their consulting expert falls far short of satisfying the onerous requirements a party must meet to overcome the significant protections afforded by Rule 26(b)(4)(D) and the attorney work product doctrine.

### I. Rule 26(b)(4)(D) Protects Plaintiffs' Pre-Filing Blockchain Analysis From Compelled Disclosure

Rule 26(b)(4)(D) provides that a party may not "discover facts known or opinions held by an expert who has been retained . . . in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial," except upon "showing *exceptional circumstances*." Binance recognizes, as it must,[1] that Rule 26(b)(4)(D) governs the analysis: it admits that "to the extent there is any expert-type analysis at issue, it is that of a consulting expert," BHL's Mem. 18, and only argues against applying the protections for draft expert reports provided by Rule 26(b)(4)(B), *id.* at 19.

Accordingly, compelled disclosure of Plaintiffs' blockchain analysis is permissible only under "exceptional circumstances." Binance makes no attempt to satisfy that requirement—indeed, the words "exceptional circumstances" are entirely absent from Binance's brief—and instead pivots to arguing waiver. But Binance's reliance on waiver is unavailing. *First*, most courts hold that Rule 26(b)(4)(D) protections *cannot* be waived. *Second*, even if waiver principles applied, courts analyzing similar situations involving pre-complaint expert work have declined to

---

[1] Rule 26(b)(4)(D) governs the analysis here as "Plaintiffs have not yet designated [the expert] as an expert who will testify at trial." *Adinolfe v. United Techs. Corp.*, 2015 WL 11254706, at *2 (S.D. Fla. Sept. 17, 2015); *see United States v. Dentsply Int'l, Inc.*, 2000 WL 654378, at *5 (D. Del. May 10, 2000); *see also* Fisher Decl. ¶ 9.

find waiver.  *Third*, Binance's cursory waiver analysis relies on inapposite and out-of-circuit cases that are both unpersuasive and in conflict with controlling Second Circuit precedent.

### A.    The Purposes of Rule 26(b)(4)(D) Strongly Support Plaintiffs' Position

The rationales underpinning Rule 26(b)(4)(D) show why premature disclosure of a consulting expert's work product is heavily disfavored.  Courts "have often refused applications for discovery" because "a number of considerations counsel caution in allowing discovery of information possessed by nontestifying experts," including the concern that permitting discovery would "tend to deter thorough preparation of the case and reward those whose adversaries were most enterprising."  8A Wright & Miller, Federal Practice & Procedure § 2032 (3d ed. 2025)*.

Another "purpose of Rule 26(b)(4)(D)" is to "promote fairness by precluding a party from using an opponent's expert to build his own case" and "prevent a party from benefitting from the effort expended and costs incurred by the opposing party while preparing for litigation."  *Precision of New Hampton, Inc. v. Tri Component Prods. Corp.*, 2013 WL 2444047, at *3 (N.D. Iowa June 5, 2013).  "The rule also protects an important interest in allowing counsel to obtain the expert advice they need . . .  without fear that every consultation with an expert may yield grist for the adversary's mill."  *Id.* (cleaned up).

### B.    Binance Cannot Show "Exceptional Circumstances" That Could Justify Compelled Disclosure

Binance does not come close to meeting its burden of showing that "exceptional circumstances" exist.

#### 1.    Binance Waived Any Argument That "Exceptional Circumstances" Exist.

Strikingly, Binance did not even attempt to argue that "exceptional circumstances" exist, relying only on waiver to attempt to bypass the protections afforded by Rule 26(b)(4)(D).  *See* BHL's Mem. 18-19.  Binance should not be permitted to make new arguments on reply.  *See Mateo*

9

*v. Bristow*, 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) ("It is well established, however, that a court should not 'consider arguments that are raised for the first time in a reply brief.' (citing *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006))); *see also Farmer v. United States*, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived.") (collecting cases). This rule applies here with particular force because this issue was expressly raised in the parties' previous joint letter on this issue, *see* ECF No. 146.

2.    "Exceptional Circumstances" Imposes a High Bar that Binance Cannot Meet.

Binance likely omitted any attempt at showing exceptional circumstances because any such argument would be unsuccessful. "The party seeking the discovery bears the burden" of showing "exceptional circumstances." *Gerber Sci. Int'l, Inc. v. Roland DGA Corp.*, 2010 WL 3803206, at *6 (D. Conn. Sept. 20, 2010). "As one might imagine, showing 'exceptional circumstances' is a steep climb." *Larson v. Davidson Trucking, Inc.*, 2024 WL 2764457, at *8-9 (N.D. Ind. May 29, 2024), *reconsideration denied*, (N.D. Ind. Nov. 1, 2024).

In light of this high bar, "[c]ourts have interpreted exceptional circumstances to mean that the party cannot obtain equivalent information from another source" and denied motions to compel when the moving party "could obtain the same information by using their own experts." *Precision of New Hampton, Inc.*, 2013 WL 2444047, at *3; *see also Adinolfe*, 2015 WL 11254706, at *2 (cleaned up) (collecting cases) (noting that courts limit "exceptional circumstances" to extraordinarily unique situations such as when "one party's experts had the exclusive opportunity to observe or test a particular condition or object at a point in time critical to the litigation, such as immediately after an environmental disaster or the collapse of a man-made structure"). This result

remains the same even if the "costs of hiring an expert to replicate the work" would be "astronomical." *In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 33 (D. Mass. 2006).

Here, Plaintiffs' expert relied on open-source information, including immutable public blockchains, to which Defendants have equal access. Nothing prevents Defendants—with their vast resources (and in-house blockchain expertise)—from replicating that analysis. Therefore, "[t]here are no exceptional circumstances shown to exempt this case from the Rule which exactly applies to it," because Defendants have access to all the open-source "data underlying the study" and "had, and still ha[ve], ample time to gather experts' advice on the subject." *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 485 F. Supp. 3d 419, 422 (S.D.N.Y. 2020). Under such circumstances, "[t]here is no basis or need for an intrusion" into Plaintiffs' expert's "preparation of facts and opinions in this case." *Id.*

> 3.    Binance's Arguments on Work-Product Are Unavailing Here.

As noted above, Binance does not mention or engage with the "exceptional circumstances" test or the applicable caselaw interpreting it. To the extent Binance makes arguments in the context of work product related to substantial need, *see* BHL's Mem. 16-18, those arguments are especially unavailing under the "exceptional circumstances" standard.

Binance primarily argues that the blockchain analysis must be produced now—long before expert discovery begins—in order to select bellwether attacks. *Id.* at 17. The Court repeatedly and correctly rejected that argument at the December 15 conference and recently reaffirmed that conclusion. *See* ECF No. 183.

Without the foundation of a pressing need to receive the blockchain analysis to select bellwether attacks, Binance's motion to compel cannot succeed. There is simply no reason why Defendants need that analysis *now*, especially because Defendants will receive the full report Plaintiffs intend to use at trial during expert discovery. To the extent Binance seeks to determine

"the strength and weaknesses of a liability claim based on a specific attack," BHL's Mem. 17, it will be able to analyze and rebut any expert testimony proffered by Plaintiffs on that subject during expert discovery, on summary judgment and through *Daubert* motions, and at trial.

Indeed, Binance's remaining arguments—that the analysis would be helpful to Defendants and that replicating it would be costly—actually cut *against* compelling disclosure (especially prematurely) when applying the "purpose of Rule 26(b)(4)(D)," which is to "promote fairness by precluding a party from using an opponent's expert to build his own case" and "prevent a party from benefitting from the effort expended and costs incurred by the opposing party while preparing for litigation." *Precision of New Hampton, Inc.*, 2013 WL 2444047, at *3.

Courts have firmly and repeatedly rejected arguments that parties should be able to bypass Rule 26(b)(4)(D) because "doing so would be helpful" to them or save them money, as that logic "flips Rule 26(b)(4)(D) on its head." *Larson*, 2024 WL 2764457, at *8-9 (cleaned up). In fact, to the extent that an expert's work is "vital to the Defendants' case," that is a reason for *rejecting* a motion to compel in light of Rule 26(b)(4)(D), because requiring disclosure "would cause the purpose of the rule to become a basis for defeating it." *Strobl v. Werner Enters., Inc.*, 577 F. Supp. 3d 960, 969 (S.D. Iowa 2022); *see also In re Shell Oil Refinery*, 132 F.R.D. 437, 442 (E.D. La.), *opinion clarified*, 134 F.R.D. 148 (E.D. La. 1990) (rejecting as insufficient to show exceptional circumstances an affidavit from the moving party attesting that the cost—in 1990 dollars—"to duplicate the investigation and testing performed by Shell would be in the range of $230,000 to $315,000"). "At bottom, what [Binance is] really suggesting is that they ought to have [Plaintiffs' blockchain analysis] so they can avoid the expense of doing their own factual review and expert analysis. This is contrary to the intent of the Rule which is to prevent one party from having a free

ride at the expense of the other party." *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202, 210 (N.D. Ind. 1993) (cleaned up).

Regardless, Binance's cost arguments are baseless. As an initial matter, there is no need for Binance to spend any money to replicate Plaintiffs' pre-complaint blockchain analysis at this (or any) stage of the litigation. It will receive the relevant analysis in the form of an expert report during expert discovery, at which point it will likely retain its own expert anyway to rebut Plaintiffs' expert at the same expense (and with the benefit of the relevant disclosures from Plaintiffs during expert discovery). And were Binance intent on replicating Plaintiffs' pre-filing analysis now, it could do so at comparatively minimal costs to the scale of the case. *See* Brennan Decl. ¶¶ 30-31. Binance's only purported evidence regarding replication costs are remarks made by Plaintiffs' counsel that are clearly taken out of context,[2] and regardless, would not establish undue hardship even if applicable.

Finally, were there a case that justified bending Rule 26(b)(4)(D), it is not this one: Binance's purported need to piggy-back off Plaintiffs' expert expenditures is plainly meritless in light of the obvious financial disparity between the parties.

---

[2] Binance relies solely on Plaintiffs' supposed admission that "forcing Defendants to recreate the Analysis would require a 'huge amount of expert work,' and 'hundreds of thousands of dollars on expert analysis.'" BHL's Mem. 17 (quoting Aug. Tr. 54:22-55:6). But Binance's characterization of Plaintiffs' statements is deeply misleading and cannot support a finding of undue hardship. The discussion at the August conference concerned further expert work for bellwether selection. Plaintiffs explained that determining the "liability strength of each attack" would require "expert analysis of Binance's internal blockchain ledger" in combination with Plaintiffs' open-source analysis—an undertaking that would be "incredibly burdensome." Aug. Tr. 54:20-55:7. That observation addressed the work required to create a polished and comprehensive expert report evaluating each attack and *analyzing data from Binance's voluminous internal ledger*—it has no bearing on the work required for Defendants to conduct their own analysis of public blockchain data.

C.     **Plaintiffs Have Not Waived the Protections of Rule 26(b)(4)(D)**

This Court should not order disclosure of Plaintiffs' consulting expert's preliminary blockchain analysis based on an "at-issue" waiver theory for two reasons. *First*, the majority of courts to consider the issue have concluded that the protections of Rule 26(b)(4)(D) are not waivable at all. *Second*, even if the Court sides with the minority view on whether Rule 26(b)(4)(D) protections are waivable, Binance clearly fails to make the required showing to justify a finding of waiver.

1.     Rule 26(b)(4)(D) Is Not Waivable.

The majority of courts to consider the issue have concluded that, unlike the work-product doctrine generally, Rule 26(b)(4)(D)'s robust protections of a non-testifying expert's materials are not waivable at all. Surveying the field, one court noted that "while it is unclear whether Rule 26(b)(4)(D) is even subject to waiver, the general trend in other districts has been to find that it is not." *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 7 (D.D.C. 2013); *see also Ludwig v. Pilkington N. Am., Inc.*, 2003 WL 22242224, at *3 (N.D. Ill. Sept. 29, 2003) ("[W]here information enjoys protection under the rule, that protection is not subject to waiver.").

Courts have convincingly explained that the rule "protects discovery of information held by non-testifying experts for reasons entirely independent of the work product doctrine. Therefore, defendants' claim that plaintiff waived its work product privilege is wholly irrelevant and totally unpersuasive." *Vanguard Sav. & Loan Ass'n, VSL Serv. Corp. v. Banks*, 1995 WL 71293, at *2 (E.D. Pa. Feb. 17, 1995).[3] As one court in this district held, "familiar broad [fairness and work

---

[3] *Vanguard* and other pre-December 2010 cases refer to the applicable rule as Rule 26(b)(4)(B) because "former Rule 26(b)(4)(B) was renumbered Rule 26(b)(4)(D)" in 2010. 8A Wright & Miller, Federal Practice & Procedure § 2032 (3d ed. 2025)). However, "cases interpreting former Rule 26(b)(4)(B) should be just as pertinent because the content of the provision has not been changed; only the numbering has changed." *Id.*

product waiver] principles . . . are less useful in the special case, which is particularly addressed by Rule 26(b)(4)(D)." *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 485 F. Supp. 3d 419, 421 (S.D.N.Y. 2020).  Judge Stanton instead applied only the exceptional circumstances test and concluded that because "[t]here are no exceptional circumstances shown to exempt this case *from the Rule which exactly applies to it*," the motion to compel must be denied.  *Id.* at 422 (emphasis added).

In explaining that "[f]ew courts have found . . . that partial disclosure of a non-testifying expert[']s report waives all Rule 26(b)(4)(D) protection," one court noted the minority view held by some courts in the Northern District of California.  *Aim High Inv. Grp., LLC v. Spectrum Labs., LLC*, 2022 WL 16859974, at *2-3 (C.D. Cal. Oct. 20, 2022).  In contrast to that outlier authority, a "significant number of courts have more recently found . . . that partial disclosure of non-testifying expert information does not justify waiving all Rule 26(b)(4)(D) protections, even when non-testifying expert information was disclosed in a judicial proceeding."  *Id.*  Notably, Binance only cites three cases—one of them being a case in this district that did not mention Rule 26(b)(4)(D) at all and thus cannot possibly be authority for finding Rule 26(b)(4)(D) protections waivable (*Financial Guaranty*), and the other two of which are outlier cases from the Northern District of California (*Worley* and *Zeiger*).  Binance's argument would require the Court to endorse an outlier position that other courts have found "totally unpersuasive."  *Vanguard*, 1995 WL 71293, at *2.

However, the Court can, if it desires, simply avoid the split and deny Binance's motion to compel on the grounds that Binance fails to show waiver under any conceivably applicable standard.

2.    Binance Cannot Show Waiver.

Plaintiffs have not waived Rule 26(b)(4)(D) protections by referencing the analysis in the Amended Complaint.  Even courts assuming arguendo that the protections afforded by Rule 26(b)(4)(D) can be waived agree that detailing the "results [of expert work] in [Plaintiffs'] Amended Complaint" does not waive Rule 26(b)(4)(D) protections.  *Adinolfe*, 2015 WL 11254706, at *3*; see also Gen. Motors LLC v. Ashton*, 2022 WL 16817711, at *3 (D.N.J. Nov. 7, 2022) (holding that a complaint "simply alleging facts uncovered in an investigation does not put the investigation 'at issue'"); *Ambac Assur. Corp. v. DLJ Mortg. Cap., Inc.*, 939 N.Y.S.2d 333, 335 (1st Dep't 2012) (no at-issue waiver by discussing in complaint third-party consultant's review of loans).

Consider the closest on-point case.  In a securities case, the complaint repeatedly cited an analysis "conducted by an outside consultant at the direction of plaintiff's litigation counsel." *Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 246-47 (D. Mass. 2013).  There, the importance of the analysis was greater than the blockchain analysis here, as it was "a substantial basis upon which the allegations of the complaint were made" and "cited in over thirty separate paragraphs" of the complaint.  *Id.*  After the defendants moved to compel, the plaintiff opposed in the context of a very similar factual and procedural posture, arguing:

> [The analysis was] conducted by counsel and an undisclosed consultant prior to filing the Complaint using limited information available . . . from public and proprietary sources.  [Plaintiff] did not yet have access to the evidence it will use to prove its claims—the loan files and other documents that are in the possession, custody, or control of Defendants and third parties. . . .  Because Defendants will have full discovery of that evidence and any related expert testimony, discovery regarding [Plaintiff's] irrelevant pre-filing forensic analysis would be a wasteful, burdensome detour, and there is no basis for overriding the privileges and work product protections afforded the analysis conducted by [Plaintiff's] counsel and consultants.

16

Pl.'s Opp'n to Cross-Mot. to Compel at 1-2, *Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:11-CV-30285, ECF No. 93 (D. Mass. Oct. 30, 2012).

The court agreed with the plaintiff's logic, which distinguished between pre-filing analysis supporting a complaint's allegations and evidence used to support claims on summary judgment. The court's reasoning persuasively refutes Binance's wholly unsupported assertion that "Plaintiffs face a Rule 11 problem." BHL's Mem. 20. First, the court held that the plaintiff's distinction "makes good sense from a practical point of view" and "enables counsel, without fear of waiving the attorney-client privilege, to do that pre-filing work which is necessary to comply with the duty set forth in Rule 11(b)(3)." 293 F.R.D. at 253. "Second, it enables counsel, without fear of waiving the attorney-client privilege, to undertake whatever investigation is necessary so that any complaint complies with the 'plausibility' requirement" required to overcome a motion to dismiss. *Id.* Therefore, the court actually *lauded* the fact the plaintiff "relied on its forensic review to meet the '*Twombly* and *Iqbal* standard' to survive motions to dismiss its complaint," instead of finding it a basis for waiver. *Id.* Third, the court explained that this approach "has the advantage of lending a degree of certainty in defining the parameters of the privilege," *id.*, because "[d]rawing the line by what will be used as 'evidence' to prove a claim or defense seems the best way to achieve the desired degree of certainty." *Id.* at 254.

Other courts have similarly recognized that subjecting pre-complaint investigatory work to premature disclosure would *undermine* the purposes of Rule 11, not support it. *See Dover v. Brit. Airways, PLC (UK)*, 2014 WL 5090021, at *2 (E.D.N.Y. Oct. 9, 2014) (no at-issue waiver of material underlying statistical analysis cited in complaint; such result "makes good sense" to "enable[] counsel, without fear of waiving work product protection, to do the pre-filing investigation necessary to comply with the duty set forth in Rule 11(b)(3)"); *Ambac Assur. Corp.*

*v. DLJ Mortg. Cap., Inc.*, 939 N.Y.S.2d 333, 335 (1st Dep't 2012) (third-party consultant's analysis referenced in complaint supplied "good-faith basis for the allegations made" and did not waive protections).

Just last month, the Supreme Court rejected Binance's approach to Rule 11 and affirmed the distinction between allegations and evidence at the pleading stage. "By requiring no more than a statement of the claim, Rule 8 establishes implicitly, but with unmistakable clarity, that evidence of the claim is *not* required." *Berk v. Choy*, 607 U.S. ---, 2026 WL 135974, at *1 (Jan. 20, 2026) (cleaned up). "When evaluating whether a plaintiff has stated a claim, the court . . . asks only whether the complaint's factual allegations, if taken as true, state a claim to relief that is plausible on its face." *Id.* at *4 (cleaned up). "By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery—even for claims that are likely to fail." *Id.*

Therefore, under the Federal Rules, there can be no "free-floating evidentiary requirement that can serve as the basis for an early dismissal." *Id.* at *5. The "problem" with Binance's argument "is that the Federal Rules already prescribe a mechanism for putting a plaintiff to his proof: a motion for summary judgment." *Id.* at *6. Therefore, a complaint cannot be dismissed because it "was not accompanied by an expert affidavit" supporting the allegations. *Id.* at *3. Nor does Rule 11 "contain a loophole" to the contrary—it only "requires the attorney or *pro se* party to certify, after 'reasonable' inquiry, that the legal and factual representations made to the court are warranted." *Id.* at *6.

The cases Binance relies upon are inapposite and unpersuasive. *First*, Binance's lead case, *Financial Guaranty Insurance Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85 (S.D.N.Y. 2016), is obviously inapposite because it does not mention Rule 26(b)(4)(D) at all, and only discusses ordinary work-product protections. To the extent the Court seeks a persuasive opinion from this

district actually applying Rule 26(b)(4)(D), it should look to Judge Stanton's decision explaining why "familiar broad [fairness and work product waiver] principles . . . are less useful in the special case, which is particularly addressed by Rule 26(b)(4)(D)." *Fed. Trade Comm'n*, 485 F. Supp. 3d at 421 (S.D.N.Y. 2020).

*Second*, the reasoning of *Financial Guaranty* does not support Binance's position. *Financial Guaranty* accepted that "the reference to the analysis in [the plaintiff's] complaint, standing alone, does not constitute a waiver," and reasoned that only further references in appellate briefing that were critical to the Second Circuit's decision to reverse the district court were sufficient to find waiver.  314 F.R.D. at 90.  Here—as was made clear during the November 2025 argument on the motion to dismiss—Plaintiffs' motion-to-dismiss opposition does not turn solely, or even primarily, on Plaintiffs' blockchain analysis.  The core of Plaintiffs' allegations come from the government investigations and the ensuing criminal guilty pleas and civil resolutions.  While the blockchain analysis lends additional support to Plaintiffs' allegations, so too do investigations by Reuters and reports from other sources (cited throughout the complaint) that substantiate the plausibility of Plaintiffs' allegations.

*Third*, in any event, the work product approach taken by the court in *Financial Guaranty* was superseded three years later by the Second Circuit's controlling decision in *New York Times*. There, the Second Circuit held: "As the plaintiffs-appellees note, we have sometimes used broad language in describing [this] doctrine, such as generalizing about the incompatibility of using . . . assertions as a 'sword' while using privileges attaching to related matter as a 'shield.'  We have subsequently clarified, however, that implied waiver of the work product privilege based on the 'fairness' or 'at-issue' doctrine *is not nearly so broad*.  To find implied waiver, we look for ***specific instances of unfairness that undermine the adversarial process***, and this is inherently a case-by-

19

case determination." 939 F.3d at 496 (emphasis added) (internal citations and quotation marks omitted).

Binance cannot prevail under that standard. Here, there are no fairness concerns—and certainly none that rise to the level of "undermin[ing] the adversarial process," because proper disclosure of the expert materials will occur in the ordinary course of expert discovery. *Id.*; *see Adinolfe*, 2015 WL 11254706, at *3 ("In the event Plaintiffs eventually disclose [their expert] as a testifying expert and his test results take on the form of a sword, Defendant will be entitled to a complete expert disclosure.").

Moreover, the proper testing of claims through the adversarial process occurs during summary judgment and at trial, not through a motion to dismiss. As the Supreme Court recently explained, to the extent Defendants wish to challenge evidence supporting connections between its misconduct and specific attacks, they will have opportunity to do so at summary judgment. *See Berk*, 2026 WL 135974, at *6. The adversarial process will not be unfairly undermined if the Court proceeds with expert discovery and summary judgment in the ordinary course.

And even were the Court persuaded that *sometimes* there may be specific instances of unfairness that undermine the adversarial process when pre-filing materials are not disclosed—such as where the complaint is solely based on undisclosed expert analysis and there are also serious concerns that Plaintiffs have misrepresented that analysis—that would not lead to a finding of waiver here. The Second Circuit has admonished that this is "inherently a case-by-case determination," *New York Times*, 939 F.3d at 496, and Binance's brief entirely fails to point to specific instances of unfairness undermining the adversarial process *here*.

Finally, Binance cites two unpersuasive Northern District of California cases (*Worley* and *Zeiger*). *First*, as noted above, that district is an outlier on this issue, and it is telling that the only

two cases Binance musters actually citing Rule 26(b)(4)(D) are from that district. Even were the Court to depart from the persuasive majority of courts that have concluded that Rule 26(b)(4)(D) is not waivable, *Adinolfe* and other cases provide more persuasive reasoning in light of the purposes of Rule 26(b)(4)(D) that waiver is not called for on the present facts.

*Second*, even were the Court to follow Binance's approach and apply the generic work product standard for waiver, the analysis in these two outlier cases is inapposite because those out-of-circuit cases did not apply the relevant (and stricter) standard governing waiver of work product protections clarified by the Second Circuit in *New York Times*. Under that standard, it is not enough to show that Plaintiffs put the expert materials "at issue" or assert that Plaintiffs used the materials as both a "sword" and a "shield"; Binance must instead show "specific instances of unfairness that undermine the adversarial process." 939 F.3d at 496. As previously explained, Binance does not, and cannot, do so here.

*Third*, the two Northern District of California cases that Binance cites both involve factually distinguishable situations where the plaintiffs' complaint turned on the expert analysis, whereas here, the blockchain analysis is only one brick in the wall of allegations. *Cf. Zeiger v. WellPet LLC*, 2018 WL 10151156, at *1 (N.D. Cal. Apr. 10, 2018) ("These allegations are central to plaintiffs' fraud and warranty claims, and indeed were important to my decision denying WellPet's motion to dismiss those claims."); *Worley v. Avanquest N. Am. Inc.*, 2013 WL 6576732, at *4 (N.D. Cal. Dec. 13, 2013) (plaintiffs "rel[ied] on those allegations to defeat its motion to dismiss").[4]

---

[4] Binance previously cited another case that it omitted here after Plaintiffs noted that it was inapposite. *First*, there the parties did not "dispute that Plaintiffs waived work-product protection as to the analyses specifically referred to in the complaints, as evidenced by Plaintiffs' willingness to produce those analyses and their supporting documents." *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2019 WL 13046984, at *2 (S.D.N.Y. Feb. 25, 2019). Of course,

*(footnote continued on next page)*

## II.    Opinion Work Product Protections Entirely Shield Plaintiffs' Pre-Filing Blockchain Analysis From Compelled Disclosure

"[O]pinion work product enjoys a near absolute immunity and can be discovered only in very rare and extraordinary cases . . . where weighty consideration of public policy and proper administration of justice would militate against nondiscovery." *Madanes v. Madanes*, 199 F.R.D. 135, 150 (S.D.N.Y. 2001) (internal quotation marks and citations omitted); *see also United States v. Adlman*, 134 F.3d 1194, 1204 (2d Cir. 1998). Here, even any limited materials that might typically only receive ordinary work product protections are inextricably intertwined with attorney judgment and mental impressions, and therefore all materials sought by Binance as part of Plaintiffs' "blockchain analysis" are protected by this doctrine.

Prior to the 2010 Amendment to Rule 26, some courts interpreted the rule to require disclosure of all "data or other information" provided to testifying experts, including attorney opinion work product. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. 568, 576 (S.D.N.Y. 2013). The 2010 Amendment expressly rejected that approach, and restored the work-product doctrine's core purpose: "protecting the 'orderly prosecution and defense of legal claims' by preventing 'unwarranted inquiries into the files and the mental impressions of attorneys.'" *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). As multiple courts have recognized, "the driving purpose of the 2010 amendments" to Rule 26 was to protect "attorney mental impressions, conclusions, opinions, or legal theories" from discovery; "[t]he

---

Plaintiffs here did not produce any analyses and supporting documents, nor did they waive any objections. *Second*, there the expert analysis was "critical to [the] Court's determination that Plaintiffs plausibly (but barely) stated a claim of price manipulation," and there, Plaintiffs had "undisclosed, uncited analyses that do not support the allegations in the [Complaint], and may affirmatively undermine it." *Id.* at *1, *3. Those unique concerns about "selective disclosure" of an analysis that "was central to the Court's [motion to dismiss] decision" simply do not apply here. *Id.* at *3.

protections for . . . attorney-expert communications were targeted at the areas most vulnerable to the disclosure of opinion work product." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 (9th Cir. 2014); *see also Deangelis v. Corzine*, 2016 WL 93862, at *2 (S.D.N.Y. Jan 7, 2016) (discussing history of 2010 amendments and noting that the prior disclosure rules had the "undesirable" effect of chilling communication between counsel and the expert).

Binance cannot skirt this problem by limiting production to "facts."  Because the analysis was iterative and attorney-directed, the factual materials cannot be separated from counsel's mental impressions and legal strategy.  Courts recognize that even facially factual work "may fall within the rubric of 'opinion' work product if it is the result of the 'selective judgment' of counsel." *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012); *see also SEC v. Roberts*, 254 F.R.D. 371, 383 (N.D. Cal. 2008) (disclosure of even "purely factual" assertions "may reveal the questions asked and therefore the attorneys' mental impressions and conclusions").  Here, the pre-filing blockchain analysis must all be protected as opinion work product because all the analysis was "undertaken at Counsel's direction and was part of an ongoing, iterative process that involved continuous consultation with Counsel," with the analysis "refined . . . in response to questions posed and priorities identified by Counsel."  Brennan Decl. ¶ 14.

## III.    Ordinary Work Product Protections Also Shield Plaintiffs' Pre-Filing Blockchain Analysis From Compelled Disclosure

Ordinary work product protections also protect Plaintiffs' blockchain analysis from disclosure.  It is well settled that attorney work product doctrine protects "material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).  As the Supreme Court has held, "the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system" in which "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials"

and, therefore, "disclosure during pretrial discovery . . . could disrupt the orderly development and presentation of [the] case." *Id.* Just so here. Binance's assertion that Plaintiffs have not provided sufficient information to show that work product protections apply is unpersuasive in light of the fact that the Court provided Plaintiffs the opportunity to submit declarations in response to any motion to compel, which Plaintiffs now have.

A.    **Binance Has Not Shown That There Was a Waiver**

Binance's waiver analysis fails to meaningfully grapple with the Second Circuit's clear admonition that while courts have "have sometimes used broad language in describing [this] doctrine, such as . . . a 'sword' . . . [and] 'shield[,]'" "[w]e have subsequently clarified, however, that implied waiver of the work product privilege based on the 'fairness' or 'at-issue' doctrine is not nearly so broad" and requires "specific instances of unfairness that undermine the adversarial process." *New York Times*, 939 F.3d at 496 (cleaned up). Binance cites only to pre-2019 cases that use the broad language the Second Circuit firmly rejected. In fact, *Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49 (S.D.N.Y. 1999)—relied upon by Binance five times in its brief— was also the lead case relied upon by the New York Times in their unsuccessful brief concerning waiver before the Second Circuit (*see* 2019 WL 3893007, at *7).

It is notable that even the other two older Second Circuit cases cited by Binance (apparently for language Binance prefers over the controlling *New York Times* opinion that clarified and superseded any prior broad language) did not find waiver. *See John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003) ("We recognize that the standard of review of such decisions is highly deferential. . . . Nonetheless we conclude that, as in *von Bulow,* the district court's order of disclosure must be vacated. Doe did not place the matter *at issue*."); *In re Grand Jury Proc.*, 219 F.3d 175, 191 (2d Cir. 2000) ("The government . . . argues that because Witness testified about subjects on which Doe Corp.'s counsel prepared reports or letters, Doe Corp. 'put at issue' its

24

counsel's legal opinion and therefore necessarily waived the work-product privilege. We do not agree.").

Moreover, none of Binance's waiver cases arise in the context of pre-filing expert analysis referenced in a complaint. The Court should look to the far more persuasive and on-point cases cited by Plaintiffs—such as *Mass. Mutual* and *Adinolfe*—which are in the precise context here of consulting expert materials supposedly placed "at issue" by being referenced in a complaint.

**B.    Work Product Cannot be Overcome Here**

As explained, Binance plainly cannot show "extraordinary circumstances," which alone is enough to deny Binance's motion. But Binance also does not meet the high bar of showing both "substantial need" for the materials and that they "cannot, without undue hardship, obtain [the] substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

1.    No Substantial Need.

Binance simply cannot demonstrate it has a substantial need for the blockchain analysis before expert discovery, especially after the Court foreclosed Binance's argument that Defendants need the analysis for selecting bellwether attacks. To the extent that Defendants need the analysis to determine "unique defenses" or evaluate "strengths and weaknesses" of any particular attack, BHL's Mem. 17, that will occur during expert discovery. It is hard to imagine a reason why Defendants need the analysis *now*—and Binance does not provide one.

Binance's reliance on *Granite Partners* is also misplaced in the substantial need context. There, the defendants sought materials gathered and created by the plaintiffs' bankruptcy trustee in a prior proceeding, including interview notes and data used to reconstruct deviations from benchmark prices. 184 F.R.D. at 51. In granting the motion to compel, the court found "substantial need" because defendants had "no alternative means to obtain the information." *Id.* at 56. That is not the case here. Defendants in this case indisputably have alternative means of accessing the

underlying information: Plaintiffs' pre-filing blockchain analysis relies on inputs derived exclusively from public sources or tools equally available to Binance and the other Defendants, and Binance itself possesses internal ledger data far more detailed and comprehensive than anything available to Plaintiffs.  *See* Brennan Decl. ¶¶ 30-31.  Indeed, courts in this circuit have rejected claims of substantial need in precisely these circumstances—where the moving party "already has the underlying factual information" and can retain "its own . . . experts to perform the analysis."  *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1994 WL 510043, at *11 (S.D.N.Y. Sept. 16, 1994); *see also In re Nat. Gas Commodities Litig.*, 232 F.R.D. 208, 212 (S.D.N.Y. 2005) (plaintiffs could simply "perform their own analysis of the trading data").

### 2.    No Undue Hardship.

As explained above and in the supporting declarations, Defendants can relatively easily replicate the analysis—especially given their financial resources, in-house blockchain expertise, and the fact that Plaintiffs' analysis relies on the immutable public blockchain.  Binance cites no basis for undue hardship except cost.  But, as detailed above, *see supra* 13 & n.2, Binance lacks a sufficient factual basis to support a cost argument.

Binance's cost argument also fails here because cost alone is not sufficient to meet Binance's burden to show "undue hardship."  Courts in this district have consistently held that "[t]he undue hardship test is generally not satisfied merely by the expense of obtaining the materials."  *Pine Top Ins. Co., v. Alexander & Alexander Servs., Inc.*, 1991 WL 221061, at *2 (S.D.N.Y. Oct. 7, 1991); *see also von Kahle v. Cargill, Inc.*, 599 F. Supp. 3d 181, 187 (S.D.N.Y. 2022) ("The fact that [the party seeking discovery] could save time and money if it had access to [the information sought] does not satisfy the undue hardship requirement of Rule 26(b)(3).");

*Garrett v. Metro. Life Ins. Co.*, 1996 WL 325725, at *7 (S.D.N.Y. June 12, 1996) ("Mere inconvenience or expense, however, does not amount to undue hardship.").

## IV.    Binance's Threatened "Motion to Strike" Fails to Persuade

Binance raises one other issue: apparently now speaking for all Defendants, it postures that if the Court rejects the motion to compel, "Defendants will move to strike all allegations based on any undisclosed Analysis." BHL's Mem. 4. But this ham-fisted attempt to force the Court's hand only demonstrates why courts are so reluctant to turn consulting expert materials into "grist for the adversary's mill." *Precision of New Hampton, Inc.*, 2013 WL 2444047, at *3. Binance's statement further underscores that if the Court were to grant Binance's request to compel premature disclosures of otherwise protected expert material, Defendants would spend their time generating baseless challenges to Plaintiffs' preliminary blockchain analysis, and then gin up a motion to strike the amended complaint and a motion for reconsideration of any adverse motion to dismiss decision. This would waste the Court's and the parties' time and resources. To be sure, Defendants will be able to challenge the evidence underlying Plaintiffs' allegations—but at the appropriate time, when discovery closes. Any further challenges should be made at the appropriate time for doing so: after the close of discovery. As the Supreme Court recently held: "the Federal Rules already prescribe a mechanism for putting a plaintiff to his proof: a motion for summary judgment." *Berk*, 2026 WL 135974, at *6.

## CONCLUSION

For the foregoing reasons, Binance's motion to compel should be denied.

Dated: February 10, 2026

Respectfully submitted,

**HOLWELL SHUSTER & GOLDBERG LLP**

By:  */s/ Ian Miller*
Ian Miller
Vincent Levy
Christopher Kim
425 Lexington Avenue
New York, NY 10017
(646) 837-5151
imiller@hsgllp.com
vlevy@hsgllp.com
ckim@hsgllp.com

**SPARACINO PLLC**

Matthew J. Fisher (pro hac vice)
Adam J. Goldstein
1920 L Street, NW, Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
matt.fisher@sparacinopllc.com
adam.goldstein@sparacinopllc.com

*Counsel for Plaintiffs*

## **<u>WORD COUNT CERTIFICATION</u>**

Pursuant to Rule 5(A) of the Court's Individual Rules and Practices in Civil Cases of Honorable Jeanette A. Vargas, I hereby certify that the above Memorandum contains 8,673 words, excluding caption, table of contents, table of authorities, signature blocks and appended certificates and is therefore compliant with the word count limitations set forth in Rule 5(A).

Dated: February 10, 2026

*/s/ Ian Miller*
Ian Miller
