February 26, 2026

**VIA ECF**

Hon. Jeannette A. Vargas, U.S.D.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 703
New York, NY  10007

      RE:    <u>*Troell et al. v. Binance Holdings Ltd. et al.*, No. 1:24-cv-07136 (S.D.N.Y.)</u>

Dear Judge Vargas:

      BAM Trading Services, Inc. d/b/a Binance.US ("BAM") seeks yet another unwarranted stay of this case after this Court repeatedly declined to enter stays of discovery, and in contravention of the Court's directives to Defendants to "get discovery on this on track," and specifically, "between now and March . . . to have rolling productions on the defendants' side." 12/15/2025 Tr. at 31:13-17.  BAM's latest salvo should be rejected and discovery should proceed, as the Court already ordered, "forthwith." *Id.* at 31:21; *see* ECF No. 84 (April 2025 Order rejecting stay of discovery pending motions to dismiss); ECF No. 183 (rejecting Defendants'—including BAM's—motion to stay bellwether selection as "essentially seek[ing] reconsideration of the Court's prior directions").

      BAM's motive for seeking yet another stay in this case is unmistakable: it aims to withhold relevant documents—specifically, another set of "handover" documents already reviewed by BAM and produced to the DOJ—that corroborate Plaintiffs' allegations.  That is after producing a small initial tranche of materials from BAM's first DOJ production, a production that undercuts BAM's reliance on "unrefuted declarations" (which, in any event, the Court cannot credit at the motion to dismiss stage) that supposedly "foreclose any finding of alter ego [by] establishing that BAM is a separate, independent" entity distinct from Binance Holdings Ltd. ("Binance").  ECF No. 190 ("Mot.") at 4.



---

[1] Samuel Lim, who paid $1.5 million in penalties for substantial misconduct related to the present matter, stated in chats that "there is no fking way in hell i am signing off as the cco for the ofac shit" and recognized that Binance's customer support was "teaching ppl how to circumvent sanctions."  Ex. 2, *Sec. & Exch. Comm'n v. Binance Holdings Ltd., et al.*, No. 1:23-cv-01599 (D.D.C. June 6, 2023), ECF No. 17-5, at 8, 10.

1

## ARGUMENT

The Court should deny BAM's untimely and meritless motion for reconsideration of this Court's rulings denying stays and ordering discovery to proceed "forthwith"—with "rolling productions on the defendants' side." 12/15/2025 Tr. at 31:13-21.

No matter how parties attempt to style efforts to obtain reconsideration of a prior ruling, courts in this Circuit routinely reject them unless they are timely and meet the stringent standard for reconsideration. *See JLM Couture, Inc. v. Gutman*, 2023 WL 2499581, at *3 (S.D.N.Y. Mar. 14, 2023) (holding that a motion was in sum and substance a motion for reconsideration of a prior ruling, and denying the motion both as untimely under the 14-day deadline for reconsideration motions set by Local Civil Rule 6.3, and as meritless because reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources" (cleaned up)); *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 101 (2d Cir. 2024) (affirming the district court's order and emphasizing that "[w]hen a court has ruled on an issue, that decision should generally be adhered to by that court."); *see also* ECF Nos. 179, 181 (Plaintiffs' previous letters collecting reconsideration cases in response to Defendants' bid to stay bellwether selection).

Courts have good reason to apply this strict standard: any other standard would encourage parties to drain judicial and party resources by filing repeated bids asking the court to reverse course—exactly as Defendants have done. To date, Binance has not produced a *single* document in this litigation, instead ignoring the Court's orders and filing meritless motions to reconsider. BAM, apparently emboldened by its co-defendant's flouting of clear court directives without consequence, now joins that noncompliance by seeking delays despite the Court's prior rulings.[2]

BAM's motion is untimely, and it fails to meet the stringent standard for reconsideration. It also omits critical context that further undercuts its meritless bid. BAM's sudden refusal to produce the documents at issue reverses a months-old agreement: BAM had agreed to produce the additional set of DOJ handover documents after running search terms the government had used for Binance, with the parties to discuss in good faith a few additional search terms. Ex. 3, 9/30/2025 Email from I. Miller to T. Charmani (proposing additional search terms to run against the second BAM DOJ production); 10/6/2025 Email from I. Miller to T. Charmani (reiterating request); 1/11/2026 Email from I. Miller to T. Charmani (again requesting the second DOJ production with additional search terms); 2/5/2026 Email from I. Miller to T. Charmani (same); 2/6/2026 Email from T. Charmani to I. Miller (requesting a meet-and-confer more than four months after the initial agreement). After stalling for months on Plaintiffs' request, BAM's counsel abruptly notified Plaintiffs that BAM intended to seek a stay—instead of fulfilling its promise.

BAM's only stated basis for seeking a stay now is its baseless belief that it will soon be dismissed from the case. That sort of subjective belief is not a proper basis to seek reconsideration, to ignore court directives, or to renege on discovery agreements. BAM (or Zhao) may be concerned by the inculpatory documents BAM would turn over, but that is no basis for relitigation.

In any event, even were Defendants permitted to periodically relitigate the Court's orders and the issue was evaluated *de novo*, each of the three factors relevant to "good cause"[3] support

---

[2] In addition to being untimely, BAM's letter-motion also exceeds the Court's four-page limit for discovery-related letter-motions, in contravention of the Court's Individual Rules and Practices.

[3] Under Rule 26(c)(1), "good cause" is assessed through three factors: "(1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery

Plaintiffs' position, not BAM's.  And given that the burden falls on BAM, *see Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018), the outcome is even more clear.

***First***, BAM cannot make a "strong showing" that Plaintiffs' claims lack merit.  It rehashes the same arguments raised in its motion to dismiss, including its jurisdictional challenge.  But Plaintiffs allege substantial U.S. contacts by Binance and Zhao—including through U.S. customers, partners, and banks—and explain why those contacts should be attributed to BAM.  Also, the facts supporting Plaintiffs' alter-ego allegations are overwhelming:  BAM was owned and controlled by Zhao, ECF No. 27 ("Am. Compl.") ¶¶ 32-34; Zhao and Binance controlled BAM's bank accounts, cryptocurrency assets, data, and business transactions, *id.* ¶¶ 693-96; and BAM's CEOs testified that the company was controlled not by them, but by Binance and Zhao, *id.* ¶ 697.  These allegations readily establish BAM as an alter ego.

BAM's assertion that it "occupies only an ancillary role in this case," Mot. at 2, fares no better.  In light of the alter-ego allegations, the mere fact that many paragraphs of the Amended Complaint do not mention it by name is unpersuasive.  Moreover, the Amended Complaint contains extensive allegations detailing BAM's role, including that BAM was created to influence U.S. regulators and divert scrutiny away from Binance's unlawful activities, Am. Compl. ¶¶ 1579-81; served as a feeder for high-volume U.S. customers migrating to Binance.com, *id.* ¶ 514; and facilitated Binance's ability to retain U.S. users while avoiding U.S. regulations, including AML/CFT and KYC requirements, other FinCEN regulations, sanctions laws, and the Bank Secrecy Act, *id.* ¶¶ 31, 683-85.  "[W]hen an assessment of the merits of a plaintiff's case involves a fact-intensive analysis . . . courts have declined to conclude that a plaintiff's claims are unmeritorious."  *Bennett v. Cuomo*, 2023 WL 2021560, at *2 (S.D.N.Y. Feb. 15, 2023).  Just so here.

Finally, additional allegations from the SEC's 2024 amended complaint and further proceedings against Binance, Zhao, and BAM independently corroborate the alter-ego relationship, and would also support amendments needed to cure any defect (though the present pleading alleges more than enough).  *See, e.g.*, Ex. 4, *Sec. & Exch. Comm'n v. Binance Holdings Ltd., et al.*, No. 1:23-cv-01599 (D.D.C. Oct. 16, 2024), ECF No. 282 ¶ 154 (Binance consultant warned that linking BAM to Binance.com would reveal the entities were "alter egos . . . coordinating the work"); *id.* ¶¶ 203-04 (BAM's CEO testified under oath that he did not know which Binance entity controlled BAM's servers but knew it was not BAM).

At a very minimum, BAM's arguments are "in sharp dispute and do[] not . . . make a strong showing that [Plaintiffs'] claims lack merit."  *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 1616872, at *1 (S.D.N.Y. June 6, 2025) (Vargas, J.) (cleaned up).

***Second***, the discovery that BAM seeks to stay is narrow, and any burden on BAM is minimal, particularly as it reflects BAM's agreement with Plaintiffs over already produced documents.  BAM argues that the requested discovery would impose a "disproportionate burden," Mot. at 4, but that assertion lacks factual support.  BAM has made only a single production in this case, and the requested materials originate from a small DOJ handover production—roughly 5,000

---

and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay."  *Dobbs v. Bank of New York Mellon*, 2025 WL 2382318, at *1 (S.D.N.Y. July 21, 2025) (Vargas, J.) (cleaned up).

documents, according to BAM—that it already collected, reviewed, and produced to the DOJ. The only reason these documents are not yet produced is that BAM did not initially make Plaintiffs aware of a second DOJ handover production and then sat on its hands.

BAM has failed to "sufficiently address the breadth of discovery or the burdens of responding to such discovery for a company as large and sophisticated as itself." *Dobbs*, 2025 WL 2382318, at *1. The requested discovery bears no resemblance to the "voluminous" or "extensive" discovery at issue in the cases BAM cites. *See, e.g.*, *Goldstein v. City Univ. of New York*, 2025 WL 3471131, at *2 (S.D.N.Y. Dec. 3, 2025) (Vargas, J.). Despite BAM's attempt to diminish the relevance of the documents as "dubious" with "negligible incremental benefit," Mot. at 4, the materials Plaintiffs seek—which BAM previously agreed to produce and this Court ordered produced—are narrow, targeted, and central to Plaintiffs' allegations, including that BAM operated as an alter ego of Binance and Zhao. BAM's only remaining challenge is to the search term "CZ"—but that term goes precisely to the alter-ego allegations, and the fact that "CZ" shows up in a significant number of BAM's documents only supports Plaintiffs' alter-ego allegations.

Nor has BAM "convincingly demonstrated why discovery would be overly burdensome." *Berkley Ins. Co. v. Weddle L. PLLC*, 2025 WL 2198063, at *1 (S.D.N.Y. Aug. 1, 2025) (Vargas, J.). Indeed, as this Court has recognized, "some burden exists in all discovery," and BAM has offered no "specific facts as to burden." *Marsh & McLennan Agency*, 2025 WL 1616872, at *1 (cleaned up). BAM's ipse dixit assertions are plainly insufficient. *See, e.g.*, *Bennett v. Cuomo*, 2023 WL 2021560, at *4 (S.D.N.Y. Feb. 15, 2023) (denying a stay where defendants failed to state "how long they expect discovery to take" or "the costs associated with discovery" or "any other indicator that might demonstrate why discovery will be burdensome").

**Third**, Plaintiffs have already suffered prejudice by Defendants' repeated delays, and BAM's gamesmanship will only compound it. "A stay of discovery is the exception and not the rule." *Marsh & McLennan Agency*, 2025 WL 1616872, at *1 (cleaned up). Defendants' repeated bids for delay have pushed this case far past what other courts in this District have found unacceptable. *See Jones v. Uris Sales Corp.*, 373 F.2d 644, 646-48 (2d Cir. 1967) (affirming a district court's severe sanctions after "[n]early a year had been consumed in discovery, with constant evasions and objections . . . yet the essential documents listed in the subpoena, some of which were admitted to be available, were still unproduced").

BAM's suggestion that "any stay would last briefly" is unpersuasive. Mot. at 5. If the motion to dismiss is denied, as Plaintiffs submit it should be, BAM will have to produce the documents, and discovery will have been delayed for no reason. If the motion to dismiss is granted, Plaintiffs would replead while also seeking discovery from BAM as a third party, and the documents will be produced—except that BAM will have slowed down proper discovery and further wasted judicial and party resources. In addition, BAM's argument that Plaintiffs should simply wait for a motion-to-dismiss decision cannot be reconciled with the fact that its co-defendant just recently filed another bid to delay the case (and the issuance of a motion-to-dismiss decision) by filing a meritless motion to strike allegations in the Amended Complaint.

Respectfully,

/s/ Ian Miller
*Counsel for Plaintiffs*